USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/09/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION        14-MD-2543 (JMF)

*This Document Relates To:*        OPINION AND ORDER
*Synott v. General Motors LLC, 17-CV-4150 (JMF)*

------------------------------------------------------------------------x

JESSE M. FURMAN, United States District Judge:

**[Regarding Amber Synott's Motion to Remand to State Court]**

The present case — brought by Amber Synott against General Motors L.L.C. ("New GM") and A Better Way Wholesale Autos, Inc. ("A Better Way") — is part of the multidistrict litigation ("MDL") proceedings, general familiarity with which is assumed, relating to defects in the ignition switches and other features of certain General Motors vehicles and associated product recalls. Plaintiff originally filed suit in Connecticut state court; thereafter, New GM removed the case to the United States District Court for the District of Connecticut, from which it was transferred to this Court as part of the MDL proceedings. Plaintiff now moves to remand, arguing alternatively that the Court lacks subject-matter jurisdiction or should abstain from exercising jurisdiction. The Court agrees that mandatory abstention applies. Accordingly, and for the reasons that follow, Plaintiff's motion is granted.

**BACKGROUND**

After New GM's disclosure of the ignition switch defect in early 2014, many plaintiffs filed claims against New GM alleging personal injuries and wrongful deaths. In 2014, New GM filed motions before the Bankruptcy Court in this District alleging that many of those claims were barred by the 2009 Sale Order pursuant to which New GM assumed many of the assets and

some of the liabilities of General Motors Corporation ("Old GM"). In April 2015, the Honorable Robert E. Gerber, former United States Bankruptcy Judge for the Southern District of New York, ruled that many of the claims against New GM were in fact barred by the 2009 Sale Order. *See In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015). He determined that New GM could be held liable only for certain assumed liabilities of Old GM (namely, products liability claims that were included in the Sale Agreement) and for "claims based solely on any wrongful conduct on its own part." *Id.* at 583. In November 2015, Judge Gerber ruled that claims for punitive damages could be based only "on New GM knowledge and conduct alone" because New GM did not assume liability for punitive damages under the Sale Agreement. *In re Motors Liquidation Co.*, 541 B.R. 104, 108 (Bankr. S.D.N.Y. 2015). The following year, the United States Court of Appeals for the Second Circuit held that the 2009 Sale Order did not bar plaintiffs whose accidents occurred before the Order, such as Synott, from bringing personal injury claims against New GM. *See In re Motors Liquidation Co.*, 829 F.3d 135, 163 (2d Cir. 2016). The Second Circuit's ruling did not affect Judge Gerber's ruling on punitive damages.

On September 29, 2008, Amber Synott, a citizen of Connecticut, purchased a 2005 Saturn Ion, which had been manufactured by Old GM, from A Better Way, a Connecticut car dealership. (17-CV-4150, Docket No. 1 Ex. D ¶¶ 9-10). On the morning of December 19, 2008, Synott was driving the Ion on an interstate highway in Connecticut when the vehicle lost power and veered off the road and into a tree, causing her serious injury. (*Id.* ¶¶ 33-34, 39). On December 21, 2016, Synott filed the action that is the subject of this motion in Connecticut Superior Court. In her complaint, Synott alleges that the Ion lost power and its airbags did not deploy because the car's ignition switch moved out of the "run" position. (*See id*. ¶¶ 34-35). She seeks both compensatory and punitive damages. New GM removed the case to federal court

on January 23, 2017.  (*See* 17-CV-4150, Docket No. 1 ("Notice of Removal")).  New GM asserted — and continues to assert — that removal was proper pursuant to Title 28, United States Code, Section 1334(b).  Specifically, New GM contends that Synott's action "is a civil proceeding that (i) arises under 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"); (ii) arises in a case under the Bankruptcy Code; and/or (iii) is related to a case under the Bankruptcy Code."  (*Id*. ¶ 7).  On February 7, 2017, Synott filed a motion to remand the case back to state court.  (17-CV-4150, Docket No. 17).  On May 31, the Judicial Panel of Multidistrict Litigation ("JPML") transferred the case to this Court, including it as part of the MDL.  (17-CV-4150, Docket No. 27).  Thereafter, Synott renewed her motion for remand here.  (14-MD-2543, Docket No. 4425).

## DISCUSSION

It is axiomatic that "federal courts are courts of limited jurisdiction and, as such, lack the power to disregard such limits as have been imposed by the Constitution or Congress."  *Purdue Pharma L.P. v. Kentucky,* 704 F.3d 208, 213 (2d Cir. 2013) (internal quotation marks omitted).  As a general matter, Congress has granted federal district courts original jurisdiction over cases "arising under" federal law, 28 U.S.C. § 1331, and certain cases between citizens of different States, *see* 28 U.S.C. § 1332.  *See generally In re Standard & Poor's Rating Agency Litig.,* 23 F. Supp. 3d 378, 391–92 (S.D.N.Y. 2014).  Here, however, neither basis for jurisdiction exists, as Synott's claims arise solely under state law and both she and A Better Way are citizens of Connecticut.  Instead, New GM relied for the case's removal — and relies here in arguing against remand — on Title 28, United States Code, Section 1334(b), which vests federal district courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11 [of the Bankruptcy Code], or arising in or related to cases under title 11 [of the Bankruptcy Code]."  28 U.S.C. § 1334(b); *see also* 28 U.S.C. § 1452 (providing, in relevant part, that "[a]

party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title").

Synott argues that her case does not fall within the scope of Section 1334(b). (*See* 14-MD-2543, Docket No. 4426 ("Pl. Remand Mem."), at 5-11). Alternatively, she contends that the Court should remand the case to state court under the doctrines of mandatory or voluntary abstention. (*See id.* 11-14). Mandatory abstention is a creature of Section 1334(c)(2), which provides as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Thus, a district court must abstain from hearing a case that originated in state court when the proceeding is based on state law and does not fall within either "arising under" or "arising in" jurisdiction. *See Baker v. Simpson*, 613 F.3d 346, 350 (2d Cir. 2010). In other words, if Synott's claims are merely "related to" the 2009 Sale Order, mandatory abstention may be appropriate. *See In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir. 2008).

As an initial matter, there is no serious argument that Synott's case falls within the Court's "arising under" jurisdiction. Proceedings "arise under" the Bankruptcy Code where they "clearly invoke substantive rights created by federal bankruptcy law." *In re Robert Plan Corp.*, 777 F.3d 594, 596 (2d Cir. 2015) (citing *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108-09 (2d Cir. 2006)). Synott's claims, however, are creatures exclusively of state law. She does not invoke "substantive rights created by federal bankruptcy law" and, thus, her case does not "arise under" the Bankruptcy Code. *See, e.g.*, *Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*,

4

487 B.R. 158, 162 (S.D.N.Y. 2013) ("'Arising under' jurisdiction plainly does not exist in this case: none of plaintiffs' causes of action are asserted under a provision of Title 11 of the Bankruptcy Code."); *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 675 (S.D.N.Y. 2011) (finding that independent substantive rights created by state or foreign legislatures did not "arise under" Title 11 of the Bankruptcy Code); *Winstar Holdings, LLC v. Blackstone Grp. L.P.*, No. 07-CV4634 (GEL), 2007 WL 4323003, at *2 (S.D.N.Y. Dec. 10, 2007) (holding that plaintiffs' state tort law claims implicated no provision of the Bankruptcy Code and were therefore "in no sense 'created' by title 11 of the United States Code").

The case for "arising in" jurisdiction is closer, if only because the parameters of the category are less clear. *See, e.g.*, *In re Motors Liquidation Co.*, 829 F.3d at 153 ("The meaning of the statutory language 'arising in' may not be entirely clear." (internal quotation marks and brackets omitted)). "At a minimum," the Second Circuit has held, "'arising in' jurisdiction includes claims that are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.* (internal quotation marks and brackets omitted). The "no existence outside of the bankruptcy" formulation refers to "proceedings that by their nature cannot exist outside of bankruptcy, and not merely to actions that, as a factual matter, have their origins in events occurring during a bankruptcy proceeding." *Winstar Holdings*, 2007 WL 4323003, at *3.[1] Factors to consider in determining whether a dispute falls within that category include whether "1) the dispute was based on the rights established in a sale order issued by the bankruptcy court; 2) the dispute involved interpretation of the bankruptcy court's orders; and, 3) the dispute was already before the bankruptcy court as part of one of the

---

[1] Thus, the fact that New GM would not exist but for the 2009 Sale Order does not suffice to establish that Synott's proceeding would have "no existence" outside of the bankruptcy.

5

party's claims against the estate." *Lothian Cassidy, LLC*, 487 B.R. at 162(citing *In re Petrie Retail, Inc.*, 304 F.3d 223, 229-231 (2d Cir. 2002)).

Synott's claims do not fall within the "arising in" category. In arguing otherwise, New GM relies on cases holding that a suit qualifies as a "core" bankruptcy proceeding if it requires the interpretation and enforcement of a prior bankruptcy order. (14-MD-2543, Docket No. 4469 ("New GM Opp'n"), at 5-6 (citing cases)). In each of the cases cited by New GM, however, the claims at issue were directly related to a prior order of the Bankruptcy Court or required the Bankruptcy Court to interpret its prior orders. *See In re Allegheny Health Educ. & Research Found.*, 383 F.3d 169, 173-76 (3d Cir. 2004) (affirming that the bankruptcy court had core bankruptcy jurisdiction where it was called on to interpret the scope of the asset purchaser's assumed liabilities under the asset purchase agreement); *In re Petrie*, 304 F.3d at 229-31 (determining that a post-petition dispute over a pre-petition lease arose under core bankruptcy jurisdiction in part because it involved the interpretation of a lease in the context of the sale order); *In re Motors Liquidation Co.*, 514 B.R. 377, 381-82 (Bankr. S.D.N.Y. 2014) (finding the court had "arising in" jurisdiction where a complaint sought the construction of the 2009 Sales Order as applied to plaintiffs' claims); *In re Ciena Capital LLC*, No. 08-13783 (AJG), 2009 WL 2905759, at *4-5 (Bankr. S.D.N.Y. July 28, 2009) (holding that the court had core jurisdiction in part because the dispute required an interpretation of its own order to determine whether a landlord's attornment notice was timely). By contrast, there is no need in this case to interpret any prior order of the Bankruptcy Court. The Second Circuit settled the question of whether Synott can proceed with her claims despite the "free and clear" provisions of the Sale Order: She may. *See In Matter of Motors Liquidation Co.*, 829 F.3d at 166. And the Bankruptcy Court settled the question (on two occasions, no less) of whether Synott can pursue punitive damages:

She may not. *See In re Motors Liquidation Co.*, 541 B.R. at 108; *In re Motors Liquidation Co.*, 2017 WL 2963374, at *7 (Bankr. S.D.N.Y. July 12, 2017).[2] The Bankruptcy Court's rulings may have to be applied to Synott's case, but the mere need for such implementation (particularly given Synott's representation that she will amend her complaint to remove the request for punitive damages promptly upon her return to state court) does not transform the case into a "core" proceeding. *See also, e.g.*, *In re Residential Capital, LLC*, 519 B.R. 593, 601 (S.D.N.Y. 2014) (declining to find that "any proceeding that may involve a bankruptcy court's order is a core proceeding"); *In re Brooks Mays Music Co.*, 363 B.R. 801, 810 (Bankr. N.D. Tex. 2007) ("[W]hile a court always has the inherent power to enforce its own orders, this cannot serve as an independent basis for federal jurisdiction.").[3]

That leaves only "related to" jurisdiction as a potential basis for New GM's removal here. The Court need not decide whether this case falls within that category, however, because remand is required either way.[4] As noted, Section 1334(c)(2) requires a federal court to abstain from

---

[2] The Bankruptcy Court's July 2017 ruling with respect to punitive damages is the subject of a pending appeal, but that does not affect the Court's analysis or conclusion. (*See* New GM Opp'n 4 n.3). The Bankruptcy Court's November 9, 2015 ruling on punitive damages was not appealed.

[3] In any event, "arising in" jurisdiction would seem inapplicable here for a second, independent reason, albeit one not raised by Synott in her briefing. The issue of how the 2009 Sales Order applies to Synott's claims was first raised by New GM as an affirmative defense. (17-CV-4150, Docket No. 16, at 23). Under the "well-pleaded complaint rule," however, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998) (internal quotation marks omitted) (holding that the respondents could not remove a case from state to federal court on the defensive plea that the case was precluded by prior bankruptcy court orders); *see In re Brooks Mays Music Co.*, 363 B.R. at 811 (declining to find bankruptcy jurisdiction where the question of whether a bankruptcy order barred the plaintiffs' "quintessentially state law claims" was raised only as an affirmative defense).

[4] In general, a federal court must "resolve questions of Article III jurisdiction before reaching the merits of a plaintiff's claim." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003) (citing *Steel Co. v. Citizens for a Better Environment*,

hearing "a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11" if the proceeding was "commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2). For such mandatory abstention to apply, six conditions must be met:

> (1) a 'timely' motion for abstention must have been brought; (2) the action must be based upon a state law claim; (3) the action must be 'related to' a bankruptcy proceeding, as opposed to 'arising under' the Bankruptcy Code or 'arising in' a case under the Bankruptcy Code; (4) the sole federal jurisdictional basis for the action must be Section 1334; (5) the action must have been 'commenced' in state court; and (6) the action must be capable of being 'timely adjudicated' in state court.

*Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 512 (S.D.N.Y. 2015); *see Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446 (2d Cir. 2005).

Assuming that Synott's case is "related to" the bankruptcy proceeding, all of these conditions are plainly met. (In fact, New GM all but concedes as much by limiting its argument to the assertion that Synott's action "arises under" the Bankruptcy Code or "arises in" a case under the Bankruptcy Code (New GM Opp'n 10) — an assertion that the Court rejected above.) The only condition that even requires discussion is the sixth, given that the MDL has (largely) managed to efficiently resolve hundreds, if not thousands, of claims like Synott's. The Second Circuit has explained that four factors should be considered in evaluating the sixth condition for mandatory abstention: "(1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum;

---

523 U.S. 83 (1998)). In the circumstances here, however, the Court concludes that it may remand on the basis of mandatory abstention without deciding whether Synott's case is, in fact, "related to" a case under the Bankruptcy Code. *See, e.g.*, *id.* at 74 (holding that a court may decide whether Younger abstention is proper without deciding whether a plaintiff has demonstrated Article III standing); *In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 66, 66 n.1 (1st Cir. 2002) (holding that a court may decide a case on "discretionary abstention grounds before" reaching the issue of subject-matter jurisdiction).

8

(3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 266 (2d Cir. 2012) (internal quotation marks omitted). Weighing those factors here, the Court easily finds that action is capable of being "timely adjudicated" in state court. First, the Court cannot say that the adjudication of Synott's claim would more swiftly occur in this federal forum than in the Connecticut state courts, given that it would be stayed for an indefinite period of time if it remained here, and there is no allegation in the record that the Connecticut courts are "backlogged." *See id*. Second, given that the availability (or lack thereof) of punitive damages has been settled by the Bankruptcy Court, the law to be applied is exclusively state law, as to which the Connecticut courts have greater expertise. And there is no evidence that Synott's claim would have any effect on, let alone prolong, the administration of the estate.

## CONCLUSION

For the foregoing reasons, the Court concludes that this case must be remanded to the Superior Court for the Judicial District of Waterbury, Connecticut.[5] The Court recognizes that that conclusion comes at a cost. As this Court has observed, "[p]utting aside the natural temptation to find federal jurisdiction every time a [high] dollar case with national implications arrives at the doorstep of a federal court, . . . the federal courts undoubtedly have advantages over their state counterparts when it comes to managing a set of substantial cases filed in jurisdictions throughout the country." *Standard & Poor's*, 23 F. Supp. 3d. at 413 (internal quotation marks, citations, and brackets omitted). The present MDL illustrates many of those

---

[5] Given the Court's conclusion that mandatory abstention applies if there is "related to" jurisdiction, the Court need not and does not reach Synott's argument for permissive abstention.

9

advantages, as the Court has largely been able to manage and oversee the claims of several thousand plaintiffs in a manner that promotes efficiency and minimizes the risks of inconsistent rulings and unnecessary duplication of effort. Nevertheless, as the Court has made clear, it also has tools to promote coordination with related cases pending in state court through communication with the judges presiding over those cases. (*See* 14–MD–2543, Docket No. 315 (Order No. 15) (establishing procedures for coordinated discovery in this MDL and related state court proceedings)). "[I]n any event, as any student of the Constitution knows, efficiency is not the only interest served by this country's federalist system of state and federal courts." *Standard & Poor's,* 23 F. Supp. 3d at 413.

The Clerk of Court is directed to terminate 14-MD-2543 Docket No. 4425 and 17-CV-4150 Docket No. 42, to remand 17-CV-4150 back to the Superior Court for the Judicial District of Waterbury, Connecticut, and to then close 17-CV-4150.

SO ORDERED.

Date: November 9, 2017
New York, New York

JESSE M. FURMAN
United States District Judge