UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To All Actions*

------------------------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/19/2017

14-MD-2543 (JMF)
14-MC-2543 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

**[Regarding New GM's Motion for Partial Summary Judgment on Successor Liability]**

This multidistrict litigation ("MDL") arose from the February 2014 recall by General

Motors LLC ("New GM") of vehicles that had been manufactured by New GM's predecessor,

General Motors Company ("Old GM"), with a defective ignition switch. Plaintiffs seek recovery

on behalf of putative classes of GM car owners and lessors whose vehicles were subject to those

recalls, arguing that they were harmed by, among other things, a drop in the value of their

vehicles due to the ignition switch defect and other defects. Late last year, New GM moved,

pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment on

"successor liability" claims brought by a subset of Plaintiffs — namely, "[a]ll persons who

bought or leased a Delta Ignition Switch Vehicle on or before July 9, 2009" (Docket No. 3356,

¶ 973) — in sixteen jurisdictions that had been the focus of other prior opinions. (Docket No.

3519). In a prior opinion, familiarity with which is assumed, the Court held that Delaware law

applied in seven of those sixteen jurisdictions and that, under Delaware law, Plaintiffs' successor

liability claims failed as a matter of law. *See In re Gen. Motors LLC Ignition Switch Litig.*, No.

14-MC-2543 (JMF), 2017 WL 3382071, at *1 (S.D.N.Y. Aug. 3, 2017) ("*Prior Successor

Liability Op.*"). With respect to each of the other nine jurisdictions — Alabama, Illinois,

Maryland, Michigan, Missouri, Oklahoma, Pennsylvania, Texas, and Virginia — the Court

1

engaged in a choice-of-law analysis to determine the applicable substantive law, but deferred a decision on the merits pending supplemental briefing from the parties. *See id.* at *19.

The Court has reviewed the parties' supplemental submissions and now picks up where it left off. For the reasons discussed below, the Court concludes that Plaintiffs' successor liability claims fail as a matter of law under Maryland law, which applies a strict test to claims that a successor corporation is a "mere continuation" of a predecessor corporation (so strict that no plaintiff appears to have succeeded in bringing a successor liability claim on that basis). By and large, the applicable law in the other eight jurisdictions, however, is more forgiving and less amenable to resolution on summary judgment, as it involves the application of fact-intensive multi-factor tests. Applying those tests, the Court concludes that summary judgment cannot be granted as to Plaintiffs' claims from the other eight jurisdictions still at issue.

## DISCUSSION

In its prior opinion, the Court determined that the substantive law of seven jurisdictions applied in the nine jurisdictions at issue. Specifically, the Court held that Alabama, Maryland, Michigan, Missouri, Oklahoma, and Pennsylvania would each apply its own law to the claims of Plaintiffs from those jurisdictions; that Illinois would apply Michigan law; and that Texas and Virginia would each apply New York law. *See id.* Although there are similarities between and among the laws at issue, the Court addresses each of the seven jurisdictions in turn.

### A. Alabama

Alabama recognizes four exceptions to the general rule against successor liability, two of which are relevant here: (1) the *de facto* merger exception (where "the transaction amounts to a De facto merger or consolidation of the two companies"); and (2) the mere-continuation exception (where "the transferee corporation is a mere continuation of the transferor"). *Andrews*

*v. John E. Smith's Sons Co.*, 369 So. 2d 781, 785 (Ala. 1979).[1]  It is not entirely clear whether there is an appreciable difference, under Alabama law, between the *de facto* merger and mere-continuation exceptions.  *See, e.g.*, *Clardy v. Sanders*, 551 So. 2d 1057, 1061 (Ala. 1989) (treating "these two exceptions" analogously (internal quotation and citation omitted)); *Matrix-Churchill v. Springsteen*, 461 So. 2d 782, 786 (Ala. 1984) (same).  Moreover, Plaintiffs concede that there is little daylight between the two.  (Pls' Br. 4).  Accordingly, the Court addresses only the mere continuation exception under Alabama law.

Under the mere-continuation exception, liability may be found where a successor "uses the assets it acquires to substantially continue its predecessor's business activities."  *Lopez v. Delta Int'l Mach. Corp.*, 15-CV-0193 (JOB), 2017 WL 3142028, at *33 (D.N.M. July 24, 2017).  Alabama courts apply "a four-factor test" to determine if a purchasing corporation is a mere continuation.  *Asher v. KCS Int'l, Inc.*, 659 So. 2d 598, 599 (Ala. 1995).  The four factors are: (1) where there "was basic continuity of the enterprise of the seller corporation, including, apparently, a retention of key personnel, assets, general business operations and even the [seller's] name"; (2) whether "[t]he seller corporation ceased ordinary business operations, liquidated, and dissolved soon after distribution of consideration received from the buying corporation"; (3) whether "[t]he purchasing corporation assumed those liabilities and obligations of the seller ordinarily necessary for the continuation of the normal business operations of the seller corporation"; and (4) whether "[t]he purchasing corporation held itself out to the world as the effective continuation of the seller corporation."  *Turner v. Wean United, Inc.*, 531 So. 2d

---

[1]    Plaintiffs also invoke the "continuity-of-enterprise" exception (Docket No. 4451 ("Pls' Br."), at 3), but the Alabama Supreme Court has held that the mere-continuation exception and the continuity-of-enterprise exceptions are synonymous.  *See Brown v. Econ. Baler Co.*, 599 So. 2d 1, 3 (Ala. 1992) (noting that Alabama courts also refer to the "mere continuation of the transferor" exception as the "continuity of the enterprise test").

827, 830 (Ala. 1988) (internal citation and quotation marks omitted). Although the Alabama Supreme Court has described the first factor as "arguably the most important," *id.* at 830, to prevail on a successor liability claim, a plaintiff must produce "substantial evidence of *each* of the four factors," *Asher*, 659 So.2d at 599; *accord Prattville Mem'l Chapel v. Parker*, 10 So. 3d 546, 558 (Ala. 2008); *see also, e.g.*, *Brown*, 599 So. 2d at 3 (affirming summary judgment for the defendant where the plaintiff did not provide substantial evidence of two factors).

Applying those standards here, the Court concludes that New GM's motion for summary judgment must be denied as to claims under Alabama law. In particular, Plaintiffs proffer substantial evidence of each factor. First, there is no dispute that New GM continued Old GM's business and operations by, *inter alia*, assuming franchise agreements, maintaining contracts with suppliers, retaining their principal executive offices, and continuing to produce Old GM's automobiles. (Docket No. 3618 ("PSUF"), at ¶¶ 44-54). Second, pursuant to a liquidation plan, Old GM dissolved nine months after New GM acquired the bulk of its assets. (PSUF ¶¶ 24-27). Third, New GM assumed critical liabilities, including product liability, warrant, and recall obligations, as well as responsibilities under employee benefit plans, in order to continue normal business operations. (PSUF ¶ 12). And finally, after the sale of Old GM, New GM held itself out as the continuation of Old GM by, for example, maintaining the logos of well-known automobile brands. (PSUF ¶¶ 53-54). At a minimum, Plaintiffs demonstrate that there are genuine issues of material fact with respect to each of the factors in Alabama's multi-factor test.

Notably, New GM does not seriously argue otherwise. Instead, it claims that Plaintiffs fail to show that they were "*deprived* by the asset transaction of an effective remedy." (Docket No. 4453 ("Def.'s Br."), at 20 (quoting *Santa Maria v. Owens-Illinois, Inc.*, 808 F.2d 848, 859 (1st Cir. 1986)). But New GM does not cite (and the Court has not found) any Alabama precedent suggesting that such a requirement supersedes the four-factor test discussed above.

New GM also argues that Plaintiffs cannot meet the third factor — that the predecessor corporation ceased ordinary business operations, liquidated, and dissolved soon after receiving consideration for the sale — because Old GM "and its liquidating trust have existed for eight years after the Sale." (Def.'s Br. 23). But that argument is premised on treating the liquidating trust — the MLC General Unsecured Creditors Trust (the "GUC Trust") — as the relevant predecessor to New GM.[2] Under Alabama law, however, the predecessor for purposes of the third factor is the "seller corporation." *See Parrett Trucking, Inc. v. Telecom Sols., Inc.*, 989 So. 2d 513, 521 (Ala. 2008); *see also Brown*, 599 So. 2d at 3 (stating that the second factor concerns the "seller corporation"). Here, the GUC Trust was not the "seller corporation"; Old GM was. (PSUF ¶ 2). Indeed, the GUC Trust did not even exist until the sale of Old GM to New GM was consummated. (PSUF ¶ 29). Accordingly, drawing all inferences in favor of Plaintiffs, as the nonmoving parties, the Court cannot say as a matter of law that New GM is entitled to summary judgment on Plaintiffs' successor liability claims under Alabama law.

## B. Maryland

By contrast, the Court concludes that New GM is entitled to summary judgment with respect to Plaintiffs' claims under Maryland law. Maryland recognizes four exceptions to the general principle against successor liability, *see, e.g.*, *Martin v. TWP Enters. Inc.*, 227 Md. App. 33, 50 (2016), of which Plaintiffs rely on only one: the "mere-continuation" exception. (Pls' Br.

---

[2]     Whether the GUC Trust is a "predecessor corporation" to New GM is a difficult question that potentially affects the analysis in multiple states. With the exception of Alabama, the law of the states at issue here provides little insight into whether the GUC Trust would be considered a predecessor to New GM in those states. And the GUC Trust's amicus brief (*see* Docket No. 3588 ("GUC Trust Amicus")), while providing helpful background information, does not offer an answer to that question. For the reasons that follow, however, the Court need not decide at the present time how each of the jurisdictions at issue would treat the GUC Trust.

6).[3]  That exception permits successor liability where "[t]he successor entity is a mere continuation or reincarnation of the predecessor entity." *Nissen Corp. v. Miller*, 323 Md. 613, 617 (1991) (quoting 1 *American Law of Products Liability* 3d § 7:1, at 10-12 (Travers, rev. ed. 1990)).  Maryland courts look to various "indications of continuation" in determining whether the exception applies: "(1) any change in ownership and management, (2) the continued existence of the selling corporation, (3) the adequacy of consideration, (4) the transfer of any instrumental employees from the predecessor to the successor, and (5) the purpose of the asset sale." *Martin*, 227 Md. App. at 60 (internal citations and quotation marks omitted).  Maryland law holds that these factors are to "be weighed in the balance." *Id.* at 59 (internal citation omitted).  As the Maryland Court of Appeals has explained, the "gravamen of the traditional 'mere continuation' exception is the continuation of the *corporate entity* rather than continuation of the business operation." *Nissen Corp.*, 323 Md. at 620; *cf. Prior Successor Liability Op.*, 2017 WL 3382071, at *18 (noting that under Delaware law, the "test is not the continuation of the business *operation* . . . .  Instead, the test is the continuation of the corporate *entity*." (internal citations and quotation marks omitted)).  On the whole, the exception is "designed to prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of reach of the predecessor's creditors." *Balt. Luggage Co. v. Holtzman*, 80 Md. App. 282, 297 (1989).  Further, the exception is applied stringently in Maryland.  In fact, to the Court's knowledge, no Maryland court has applied the mere-continuation exception in a plaintiff's favor.  *See Martin*, 277 Md. App. at 54 ("In none [of the cases applying the exception] did the Court conclude that the successor corporation was a mere continuation of the predecessor corporation.").

---

[3]  Although Plaintiffs invoked the "*de facto* merger" exception under Maryland law in earlier briefing (*see* Docket No. 3617, at 57), they do so no longer.  Accordingly, the Court deems that argument waived.  *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived.").

In this case, Plaintiffs do not dispute that two of the relevant considerations — the adequacy of consideration and the purpose of the asset sale — cut against a finding of successor liability. (*See* Pls' Br. at 7 n.5). *See also Prior Successor Liability Op.*, 2017 WL 3382071, at *18 ("[I]t is undisputed that the sale of certain of Old GM's assets to the new corporate entity sponsored principally by the U.S. Treasury was an arm's-length transaction involving fair consideration."). In light of Maryland precedent, the other factors weigh against them as well. First, applying a strict test with respect to change in ownership and management, Maryland courts have held that some overlap is insufficient. *See Martin*, 227 Md. App. at 62-63 (rejecting the mere-continuation exception because "[a]lthough there was overlap, ownership and management . . . also changed following the asset sale"). Here, "it is undisputed that the Old GM was issued only 10% of New GM's common stock (and warrants to purchase up to 15%)" and that "the majority of the new company was owned by the U.S. government." *Prior Successor Liability Op.*, 2017 WL 3382071, at *18. And with only six of New GM's thirteen board members having previously served as board members of Old GM, *id.*, this cannot be described as a case where "the purchasing corporation maintains the same or similar management and ownership but wears a 'new hat.'" *Nissen Corp.*, 323 Md. at 618 (quoting *Balt. Luggage Co.*, 80 Md. App. at 297). Second, with respect to the dissolution of the predecessor corporation, although there is no dispute that Old GM dissolved after the sale, the dissolution of the predecessor corporation, by itself, does not trigger successor liability. *See Martin*, 227 Md. App. at 62-63 (declining to apply the exception where the predecessor corporation sold all of its assets to the successor). Finally, and perhaps most importantly, Maryland courts also consider "the underlying purpose of the 'mere continuation' exception." *Id.* at 63. In this case, Plaintiffs do not claim, let alone point to evidence suggesting, that "the *specific purpose of acquiring assets* [was] to place those assets out of reach of the predecessor's creditors." *Id.* at 52-53

7

(quoting *Balt. Luggage*, 80 Md. App. at 297). In sum, Plaintiffs do not proffer sufficient facts, even taken together, to succeed under Maryland's relatively stringent mere-continuation exception. *See, e.g.*, *Progressive Septic, Inc. v. SeptiTech, LLC*, 09-CV-3446 (ELH), 2011 WL 939022, at *14 (D. Md. Mar. 15, 2011) (applying Maryland law and granting summary judgment to the defendant even where the successor corporation "hired former employees of [the predecessor]," "operated from the same plant as [the predecessor]," "adopt[ed] . . . the [predecessor's] name," and "operat[ed] a similar business"). Summary judgment is therefore granted to New GM on Plaintiffs' Maryland claims.

## C. Michigan

Michigan law — which applies to the claims of Plaintiffs from both Illinois and Michigan, *see Prior Successor Liability Op.*, 2017 WL 3382071, at *19 — recognizes "five exceptions" to the traditional rule of successor liability. *See Foster v. Cone-Blanchard Mach. Co.*, 460 Mich. 696, 702 (1999). Plaintiffs here rely on two: the continuity-of-enterprise and mere-continuation exceptions. (Pls' Br. 8). New GM argues that the former applies only to product liability cases (Def.'s Br. 23-24), and there is indeed some support for that proposition. *See, e.g.*, *Starks v. Mich. Welding Specialists, Inc.*, 477 Mich. 922, 922 (2006); *Retail Works Funding LLC v. Tubby's Sub Shops Inc.*, No. 332453, 2017 WL 3798500, at *5 (Mich. Ct. App. Aug. 31, 2017). Ultimately, however, the exception is not so rigidly limited. In *Turner v. Bituminous Cas. Co.*, 397 Mich. 406 (1976), the Michigan Supreme Court applied the exception in the products liability context on the theory that "manufacturers rather than the consumer should bear the brunt of the burden for defective products." *City Mgmt. Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 252 (6th Cir. 1994) (citing *Turner*, 397 Mich. at 881); *see also, e.g.*, *Foster*, 460 Mich. at 705 ("The underlying rationale for the *Turner* Court's decision to disregard traditional corporate law principles was to provide a source of recovery for injured plaintiffs."). In the wake

of that decision, the Sixth Circuit has explained, the "question is whether *Turner*-type policies apply in the given context." *C.T. Charlton & Assocs., Inc. v. Thule, Inc.*, 541 F. App'x 549, 553 (6th Cir. 2013); *see also id.* at 552 (recognizing that the exception "is only meant to apply in products-liability cases (and potentially a few other areas animated by similar public-policy concerns)"). Significantly, the Michigan Supreme Court has held that plaintiffs cannot recover for economic losses in a tort action, *see Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 527-28 (1992), but that principle has been limited to "transactions involving the sale of goods for *commercial purposes*," *Blackward v. Simplex Prod. Div.*, No. 221066, 2001 WL 1255924, at *3 (Mich. Ct. App. Oct. 19, 2001). By contrast, courts have held that the policy reasons identified in *Turner* apply "to transactions involving individual consumers making noncommercial purposes," *id.*, such as those at issue here. Accordingly, the Court concludes that the Michigan Supreme Court would likely apply the continuity-of-enterprise exception to Plaintiffs' economic loss claims.

As it does under Alabama law, the continuity-of-enterprise exception under Michigan law turns on a consideration of whether

> (1) there is continuation of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations of the predecessor corporation; (2) the predecessor corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible . . . (3) the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the selling corporation[;] . . . [and (4)] the purchasing corporation holds itself out to the world as the effective continuation of the seller corporation.

*Id.* at 703-04. Although the test mirrors the test under Alabama law, it is more lenient in at least one significant way: Although Alabama requires each factor to be met, *see Asher*, 659 So. 2d at 599, Michigan courts balance the factors, *see Pelc v. Bendix Mach. Tool Corp.*, 111 Mich. App. 343, 354 (1981) (holding that even where the plaintiff could not meet one factor, that factor was

"but one factor to be balanced and weighed with the other factors" of the continuity-of-enterprise test); *Ammend v. BioPort, Inc.*, 322 F. Supp. 2d 848, 866 (W.D. Mich. 2004) (discussing "the overall balancing orientation of the *Turner* analysis").

Given that Plaintiffs' claims survive under the more rigorous Alabama test, it follows that they survive under the Michigan test too. That is, there are plainly disputes of material fact with respect to each of the four factors. Notably, New GM does not really argue otherwise. Instead, it claims that the Michigan continuity-of-enterprise claims fail because "'the fact that a predecessor remains a viable source for recourse' is 'fatal' to any continuity-of-enterprise claim." (Def.'s Br. 21 (quoting *Foster*, 460 Mich. at 706)). But Michigan permits the continuity-of-enterprise exception "where the predecessor continues as a shell or is otherwise underfunded." *Foster*, 460 Mich. at 706. Here, whether or not the GUC Trust is a "predecessor" of New GM — that proposition itself is disputed (*see* GUC Trust Amicus) — there is significant doubt about whether Plaintiffs would be able to recover anything from the Trust. (*See* Docket No. 3655, at 24; GUC Trust Amicus 4 (noting that the GUC Trust plans to "vigorously oppose" any of Plaintiffs' requests to recover from the GUC Trust)). In other words, whether New GM has a predecessor that is "viable and capable of being sued" is a matter of some uncertainty (and collateral litigation). *Foster*, 460 Mich. at 705. In that sense, the GUC Trust is akin to the "underfunded" predecessor in *Foster* that the Michigan Supreme Court held was not a barrier to the exception. *See id.* at 706. Accordingly, New GM's motion is denied with respect to Plaintiffs' claims under Michigan law.[4]

---

[4]     In light of the foregoing, the Court need not and does not reach Plaintiffs' argument based on the "mere-continuation" exception under Michigan law.

**D. Missouri**

Missouri law recognizes four exceptions to the general rule that when "one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the former." *State ex rel. Family Support Div. v. Steak'm Take'm LLC*, 524 S.W.3d 584, 590 (Mo. Ct. App. 2017) (internal quotation and citation omitted). As with Michigan law, Plaintiffs here rely on two: (1) the "*de facto* merger" exception, which applies when "the transaction amounts to a consolidation or merger"; and (2) the "mere-continuation" exception, which applies when "the purchaser is merely a continuation of the seller." *Edwards v. Black Twig Mktg. & Commc'ns LLC*, 418 S.W.3d 512, 520 (Mo. Ct. App. 2013).

Under the mere-continuation exception, Missouri courts examine several factors, including

> (1) whether there is common identity of officers, directors and stockholders; (2) whether the incorporators of the successor also incorporated the predecessor; (3) whether the business operations are identical; (4) whether the transferee uses the same trucks, equipment, labor force, supervisors and name of the transferor; and (5) whether notice has been given of the transfer to employees or customers.

*Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 804 (8th Cir. 2003) (internal brackets omitted) (citing *Roper Elec. Co. v. Quality Castings, Inc.*, 60 S.W.3d 708, 711-13 (Mo. Ct. App. 2001)). The first factor — continuity of officers, directors, and stockholders — is a "key element to be considered," but "the lack thereof (standing alone)" is not sufficient to defeat a claim of successor liability. *Roper*, 60 S.W.3d at 712-13 (internal quotation marks omitted); *accord Gorsuch v. Formtek Metal Forming, Inc.*, 803 F. Supp. 2d 1016, 1023 (E.D. Mo. 2011). In fact, none of the factors is determinative; instead, courts must balance all four factors to determine if the exception applies. *See, e.g.*, *Med. Shoppe Int'l*, 336 F.3d at 804; *see also Osborn v. Prime Tanning Corp.*, 09-6082-CV (GAF), 2010 WL 1935980, at *9 (W.D. Mo. May

11, 2010) (noting that Missouri "courts have weighed numerous factors" in applying the mere-continuation exception).

Thus, Missouri's balancing test for the mere-continuation exception is materially more forgiving than, for example, Maryland's test, which is discussed above. *See, e.g.*, *Travelers Commercial Cas. Co. v. Sielfleisch Roofing, Inc.*, 12-CV-1550 (DDN), 2014 WL 636204, at *6 (E.D. Mo. Feb. 18, 2014) (applying Missouri law and denying summary judgment to the defendant because "[t]he record contains evidence that the corporations shared officers and stockholders, had a similar but not identical line of work and business name, and used the same equipment and employees"); *Welch v. Coatings & Sys. Integration, Ltd.*, 12-CV-49 (SNLJ), 2013 WL 943559, at *4 (E.D. Mo. Mar. 11, 2013) (applying Missouri law and denying summary judgment to the defendant where "[t]here [was] at least a question of fact . . . as to whether [the successor] is a continuation of and thus liable for the acts of [the predecessor]"). Among other things, Missouri's test does not consider whether the predecessor has dissolved. *See, e.g.*, *Flotte v. United Claims, Inc.*, 657 S.W.2d 387, 389 (Mo. Ct. App. 1983) ("The fact that the old corporation did not formerly dissolve does not in and of itself make it any the less extinct as an active entity."). Nor does it require that the predecessor corporation transfer all of its assets to the successor corporation. *See, e.g.*, *Med. Shoppe Int'l*, 336 F.3d at 803-04.[5]

---

[5] Additionally, New GM's assertion that "the mere continuation exception requires proof of inadequate consideration" (Def.'s Br. 12-13) is unpersuasive. All three cases cited by New GM for this proposition pertained to allegedly fraudulent corporate transfers. *See, e.g.*, *Yellow Mfg. Acceptance Corp. v. Am. Taxicabs*, 344 Mo. 1200, 1215 (1939) (describing the "inadequacy of consideration" as one of several "badges of fraud"). By contrast, the cases cited by Plaintiffs — which are considerably more recent than New GM's authority — make clear that the mere-continuation exception stands apart from a separate exception for transactions "entered into fraudulently in order to escape liability for such debts." *Osborn*, 2010 WL 1935980, at *7 (citing *Brockmann v. O'Neill*, 565 S.W.2d 796, 798 (Mo. Ct. App. 1978). Not surprisingly, then, none of the Missouri cases applying the "mere-continuation" exception cites the adequacy of consideration as a factor to consider. *See, e.g.*, *Roper*, 60 S.W.3d at 711 (elucidating factors to

12

Applying the Missouri balancing test, the Court concludes that New GM's arguments fall short. First, with respect to the continuity of officers, Missouri law does not seem to require complete overlap of ownership (although the issue is admittedly unclear). *See Blando v. Bus. Men's Assur. Co. of Am.*, 12-CV-0559 (SOW), 2012 WL 6631629, at *3 (W.D. Mo. Dec. 19, 2012) (applying Missouri law and assessing, at the first factor, "whether there was a clear line of demarcation separating the corporate structure, organization, and management"). Here, there was at least some continuity in ownership between Old GM and New GM: namely, Old GM was issued 10% of New GM's common stock, and six of New GM's thirteen directors were previously directors of Old GM. *See Prior Successor Liability Op.*, 2017 WL 3382071, at *18; *see also Chem. Design, Inc.*, 847 S.W.2d at 493 (declining to find continuity of ownership where the predecessor corporation's directors merely "rendered advice on two or three occasions over a five year period [to the successor corporation], but were never involved in management decisions"). With respect to the second factor, Plaintiffs do not point to any evidence of common incorporators. Nevertheless, this factor — like the first — is not dispositive. *See Roper*, 60 S.W.3d at 712 ("[A] lack of common incorporators, directors, officer or shareholder is not necessarily dispositive of whether the corporate continuation principles attend.").

Ultimately, it is Plaintiffs' evidence on the third, fourth, and fifth factors, along with Missouri's permissive approach to the mere-continuation exception on summary judgment, that compels denial of New GM's motion for summary judgment. As discussed above, Plaintiffs put forward evidence of overlap in operations, employees, equipment, place of business, and name, sufficient to defeat summary judgment here. *See Roper*, 60 S.W.3d at 713 (affirming application of the mere-continuation exception where the successor corporation, *inter alia*, "took over the

---

consider under the mere continuation exception and omitting adequacy of consideration); *Chem. Design, Inc. v. Am. Standard, Inc.*, 847 S.W.2d 488, 491-92 (Mo. Ct. App. 1993) (same).

works in progress of [the predecessor], collected the accounts receivable, operated in the same location, and had the same phone number as [the predecessor]"); *see also Steak'm Take'm LLC*, 524 S.W.3d at 591 (finding mere continuation where the successor "continued running the restaurant as [the same name as the predecessor] at the same location, with the same equipment, telephone number, menu, key employees, and customers, and neither company notified customers or creditors of the restaurant's change in ownership"). Drawing all inferences in Plaintiffs' favor, that is sufficient to survive summary judgment.[6]

## E. New York

New York law — which applies to the claims of Plaintiffs from Texas and Virginia — recognizes four exceptions pursuant to which a successor may be held liable. *See Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 245 (1983). Once again, Plaintiffs invoke two: the mere-continuation and *de facto* merger exceptions. (Pls' Br. 17). They concede, however, that the two are more or less identical (*see* Pls' Br. 17), and courts agree. *See Lewis v. Blackman Plumbing Supply L.L.C.*, 51 F. Supp. 3d 289, 313 (S.D.N.Y. 2014) (observing that the two exceptions "are so similar that they may be considered a single exception"). Under both exceptions, New York courts generally look to four factors:

> (1) continuity of ownership; (2) cessation of ordinary business operations and the dissolution of the selling corporation as soon as possible after the transaction; (3) the buyer's assumption of the liabilities ordinarily necessary for the uninterrupted continuation of the seller's business; and (4) continuity of management, personnel, physical location, assets and general business operation.

*In re N.Y.C. Asbestos Litig.*, 789 N.Y.S.2d 484, 486 (App. Div. 2005). Plaintiffs do not have to meet all four factors in order to invoke the exception, *id.*, but they "must prove 'continuity of ownership' between the predecessor and the successor corporations," *Lewis*, 51 F. Supp. 3d at

---

[6]     In light of the foregoing, the Court need not and does not reach Plaintiffs' argument based on the "*de facto* merger" exception under Missouri law.

313 (quoting *Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 401 (S.D.N.Y. 2012)).

Significantly, however, the factors "are analyzed in a flexible manner that disregards mere

questions of form and asks whether, in substance, it was the intent of the successor to absorb and

continue the operation of the predecessor." *AT & S Transp., LLC v. Odyssey Logistics & Tech.*

*Corp.*, 803 N.Y.S.2d 118, 120 (App. Div. 2005); *see also New York v. Nat'l Serv. Indus., Inc.*,

460 F.3d 201, 215 n.5 (2d Cir. 2006) (noting that New York courts might "read those standards

flexibly in tort cases and that other indicia of control over or continuing benefit from the sold

assets might not be sufficient to satisfy the continuity of ownership factor"). In sum, "[t]he

successor issue is 'highly fact-specific' and typically cannot be determined as a matter of law."

*Commercial Lubricants, LLC v. Safety-Kleen Sys., Inc.*, 14-CV-7483 (MKB), 2017 WL

3432073, at *21 (E.D.N.Y. Aug. 8, 2017) (quoting *Aguas Lenders Recovery Grp. v. Suez, S.A.*,

585 F.3d 696, 703 (2d Cir. 2009)).

      Given the "highly fact-specific" nature of New York's test, New GM fails to make the

case for summary judgment. With respect to the first factor — continuity of ownership —

"courts have found the . . . requirement satisfied where the shareholders of the selling

corporation retain only an indirect interest in the assets that were sold." *Hayden Capital USA,*

*LLC v. Northstar Agri Indus., LLC*, 11-CV-594 (DAB), 2012 WL 1449257, at *5 (S.D.N.Y. Apr.

23, 2012) (citing cases); *see also, e.g.*, *Miller v. Forge Mench P'ship Ltd.*, 00-CV-4314 (MBM),

2005 WL 267551, at *8 (S.D.N.Y. Feb. 2, 2005) ("[T]he de facto merger test requires *continuity*,

not uniformity, of ownership."). In *Hayden Capital USA*, for example, the factor was satisfied

where shareholders of the predecessor corporation "indirectly own[ed]" only "a 12% interest" in

the successor corporation. 2012 WL 1449257, at *6; *see also Franco v. Jubilee First Ave. Corp.*,

14-CV-7729 (SN), 2016 WL 4487788, at *8 (S.D.N.Y. Aug. 25, 2016) (finding continuity of

ownership where the sole owner of the predecessor corporation held a one-third ownership

interest in the successor corporation). Here, Old GM received "10% of New GM's common stock (and warrants to purchase up to 15%)." *Prior Successor Liability Op.*, 2017 WL 3382071, at *18. Accordingly, a reasonable fact finder could conclude that the first factor cuts in Plaintiffs' favor.

With respect to the third and fourth factors, New GM does not dispute that it absorbed liabilities necessary to continue Old GM's business, and substantially retained personnel, management, physical location, assets, and general business operations. *See Prior Successor Liability Op.*, 2017 WL 3382071, at *18. Plaintiffs have their toughest sell when it comes to the second factor, as it is generally not met where the predecessor corporation continues to exist "as a distinct, albeit meager, entity." *Schumacher*, 59 N.Y.2d at 245; *see also Colon v. Multi-Pak Corp.*, 477 F. Supp. 2d 620, 627 (S.D.N.Y. 2007) (granting summary judgment to the defendant where there was no continuity of ownership and where the predecessor did not dissolve until five years after the successor acquired the predecessor). At the same time, where courts have rejected successor liability on the basis of the second factor, it has generally been because the predecessor corporation was still viable when the decision was rendered. *See, e.g.*, *Schumacher*, 59 N.Y.2d at 245 (denying successor liability where the predecessor corporation "survived the instant purchase agreement"). Here, Old GM co-existed for two years with New GM after the Chapter 11 plan was consummated, but it is now fully dissolved. *See Prior Successor Liability Op.*, 2017 WL 3382071, at *18. Moreover, as discussed above, there is disagreement about whether claims against the GUC Trust are viable. (*See* GUC Trust Amicus 3-6). Given those facts, and given that the other factors point in Plaintiffs' direction, the Court concludes that summary judgment is unwarranted. *See Schumacher*, 59 N.Y.2d at 246 (distinguishing a case relied on by plaintiffs because, in that case, "the dissolution of the prior corporation [came] shortly after the purchase of its equipment and the use by the successor corporation of essentially the same factory, name

and office personnel after the transactions to produce the same product [were] not present in this case"); *Colon*, 477 F. Supp. 2d at 627 (rejecting successor liability because the predecessor continued to exist for five years after its assets were sold to the successor, and because "[p]laintiffs [had] not produced any evidence to support a finding of a common identity of directors or shareholders").

## F. Oklahoma

Next, Oklahoma also recognizes four exceptions to the general rule against successor liability. *See Crutchfield v. Marine Power Engine Co.*, 209 P.3d 295, 300 (Okla. 2009). Plaintiffs invoke only one — mere continuation — here. (Pls' Br. 20). Under that exception, Oklahoma courts look to "whether there is a common identity of directors, officers, and stockholders before and after the sale, whether there was good consideration for the sale, and whether the seller corporation continues to exist in fact." *Crutchfield*, 209 P.3d at 301. Oklahoma courts also consider whether the successor retained employees from the predecessor. *See Boatright Family, LLC v. Reservation Ctr., Inc.*, 13-CV-192 (TDD), 2016 WL 1268307, at *3 (W.D. Okla. Mar. 31, 2016) (applying Oklahoma law, noting that the successor "hired agents previously working for [the predecessor], [and] offered jobs to all employees of [the predecessor]"). Plaintiffs need not make out each factor to defeat summary judgment, *see, e.g.*, *Pulis v. U.S. Elec. Tool Co.*, 561 P.2d 68, 71-72 (Okla. 1977) (denying summary judgment where there was a lack of evidence about whether the predecessor continued to exist after the sale), and Oklahoma's application of the test at the summary judgment stage is lenient, *see id.* at 72 (denying summary judgment because the defendant did not "conclusively negate[] the possibility that the buyer corporation was a mere continuance of the seller corporation"). Ultimately, "the test is not whether there is a continuation of business operations, but whether there is a continuation of the corporate entity." *Crutchfield*, 209 P.3d at 301. Applying these standards

here, summary judgment cannot be granted. As the Court discussed above, Plaintiffs present sufficient evidence to raise a genuine issue of fact as to whether New GM and Old GM shared a common identity of directors, officers, and stockholders. And although Old GM continued to exist for two years after the sale (albeit in significantly different form), Oklahoma law is clear that "[t]he bare *de jure* existence of the seller corporation after the sale" is not sufficient to grant summary judgment for defendants. *Crutchfield*, 209 P.3d at 301. Finally, although Plaintiffs do not dispute that there was good consideration for the sale, *see Prior Successor Liability Op.*, 2017 WL 3382071, at *18, they do not need to prevail on each factor to prevail here. *Pulis*, 561 P.2d at 71.[7] In sum, then, New GM has not "conclusively negated the possibility that the buyer corporation was a mere continuance of the seller corporation." *Id.* at 72.

## G. Pennsylvania

Finally, Plaintiffs rely on two successor liability exceptions under Pennsylvania law: mere continuation and *de facto* merger. (Pls' Br. 22). Neither Plaintiffs nor New GM attempts to distinguish the two exceptions, however, and courts applying Pennsylvania law have also treated the two identically. *See Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 468 (3d Cir. 2006) (applying Pennsylvania law and noting that "courts here . . . treat the exceptions identically"). "In determining whether a transaction is a *de facto* merger or continuation," Pennsylvania courts generally look to four factors:

(1) There is a continuation of the enterprise of the seller corporation, so that there is continuity of management, personnel, physical location, assets, and general business operations.

(2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock

---

[7]    New GM's reliance (*see* Def.'s Br. 17-18) on *Flores v. U.S. Repeating Arms Co.*, 19 F. App'x 795, 798 (10th Cir. 2001), is unpersuasive. Most significantly, in that case, "plaintiffs [never] present[ed] any evidence to the district court indicating that there were common officers or directors at any time following the sale." *Id.* Plaintiffs do so here. (*See* PSUF ¶ 76).

ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.

(3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.

(4) The purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

*Id.* at 468-69.  The Pennsylvania Supreme Court discussed the application of these factors in *Fizzano Brothers Concrete Products, Inc. v. XLN, Inc.*, 615 Pa. 242 (2012), in which the plaintiff sought to hold a successor corporation liable for its predecessor's breach of contract and breach of express warranty.  The Court focused on the second factor, holding that it is "not restricted to mere evidence of an exchange of assets from one corporation for shares in a successor corporation."  *Id.* at 273.  The factor, the Court explained, will "always be subject to the fact-specific nature of the particular underlying corporate realities and will not always be evident from the formalities of the proximal corporate transaction."  *Id.*  In sum, the Court held that "the elements of the *de facto* merger are not a mechanically-applied checklist, but a map to guide a reviewing court to a determination that, under the facts established, for all intents and purposes, a merger has or has not occurred between two or more corporations."  *Id.*[8]

In light of these standards, and the discussions above, New GM's case for summary judgment with respect to claims under Pennsylvania law falls short.  With respect to the first factor, Plaintiffs adduce evidence regarding continuity of management, personnel, physical

---

[8]    New GM is correct that the *Fizzano* Court "limited its holding to breach of contract and express warranty cases."  (Def.'s Br. 18).  If anything, however, the Court strongly signaled that an even more permissive standard would govern tort and product liability cases.  *See Fizzano*, 615 Pa. at 263 (noting that "a relaxed approach to the requirement of continuity of ownership . . . under the *de facto* merger exception [is found in] products liability cases").  Indeed, the Court observed that "[m]any relevant cases from other jurisdictions that have taken a relaxed approach to the requirement of continuity of ownership or an exchange of shares under the *de facto* merger exception are products liability cases."  *Id.*

location, assets, and general business operations that raise, at the very least, disputes of material fact. (*See* PSUF ¶¶ 44-54). The second factor, discussed above, is not to be applied with a "narrow and mechanical view"; courts applying this prong should not "focus[] on the formalities of one piece of the transactional reality." *Fizzano*, 615 Pa. at 275. All that is required is that "[c]ontinuity of ownership or stockholder interest in some form must be shown." *Id.* at 274; *see also, e.g.*, *Lehman Bros. Holdings v. Gateway Funding Diversified Mortg. Servs., L.P.*, 989 F. Supp. 2d 411, 435 (E.D. Pa. 2013) (applying Pennsylvania law, concluding that some "ownership interest" was sufficient to satisfy this prong), *aff'd*, 785 F.3d 96 (3d Cir. 2015). That standard cuts against New GM here, as Old GM shareholders retained a stake in New GM. (*See* PSUF ¶ 25). Pennsylvania also does not rigidly apply the third factor. "The Pennsylvania Supreme Court [has] indicated that the cessation of ordinary business prong might be met if, as a result of the asset purchase agreement, the transferor company essentially ceased operating or had become dormant." *In re Asbestos Prod. Liab. Litig. (No. VI)*, 17-CV-1602 (ECR), 2017 WL 2813230, at *2 (E.D. Pa. June 28, 2017) (citing *Fizzano*, 615 Pa. at 276). Resolving all doubts in favor of Plaintiffs, the Court concludes that this factor supports Plaintiffs: Although Old GM did exist for two years following the sale, it subsequently dissolved, and uncertainty surrounds the GUC Trust. Finally, Plaintiffs also have the better of the argument on the fourth factor, which examines whether the successor corporation assumed obligations, including "the lease of the work premises, payment of salary to the same key employees, servicing the same clients, assuming a debt owed to one of the clients, and taking responsibility for [the predecessors'] accounts receivable." *Fizzano*, 615 Pa. at 278 (internal quotation marks omitted). On that front, Plaintiffs offer sufficient evidence to at least make out a material dispute of fact as to the extent of New GM's assumption of obligations necessary for continued business operations. (*See* PSUF ¶¶ 44-54). In sum, and given that Plaintiffs need not succeed on each prong of

Pennsylvania's test, the Court rejects New GM's summary judgment motion on Plaintiffs' Pennsylvania claims.

**CONCLUSION**

For the reasons stated above, New GM's motion for summary judgment is GRANTED with respect to Plaintiffs' successor liability claims under Maryland law, but DENIED with respect to Plaintiffs' claims under the other laws of the other eight jurisdictions still at issue.

Per Docket No. 4831, the parties shall submit letters regarding the next steps for personal injury cases in the MDL, addressing the implications of this Opinion and Order among other things, by the earlier of (1) one week after the Court's ruling on the pending motions in the Phase Two, Category B cases; or (2) January 3, 2018.

      SO ORDERED.

Date:  December 19, 2017
       New York, New York

                                   JESSE M. FURMAN
                       United States District Judge