USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/29/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To All Actions*

------------------------------------------------------------------------------x

14-MD-2543 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

On December 15, 2017, New GM moved to compel the production of documents relating to Lead Counsel's advertisements with Top Class Actions, LLC ("TCA"), which maintains a website on which Lead Counsel paid to post a questionnaire to attract potential plaintiffs in this litigation. (Docket No. 4875 ("GM Ltr. Mot.")). Two sets of materials remain in dispute: first, the data submitted by putative class members through the questionnaire hosted on TCA's website (the "Questionnaires"), which Lead Counsel contends are subject to the attorney-client privilege; and, second, e-mails between Lead Counsel and TCA regarding the advertising campaign (the "E-mails"), which Lead Counsel contends are protected by the work-product doctrine. (Docket No. 4890 ("Pls.' Opp'n"), at 2-3; Docket No. 4965 ("Pls.' Supp. Ltr."), at 2-3). Upon review of the parties' submissions (GM Ltr. Mot.; Pls.' Opp'n; Pls.' Supp. Ltr.; Docket No. 4966 ("GM Supp. Br.")), including an *in camera* review of the materials at issue, the Court grants New GM's motion with respect to the Questionnaires and denies its motion with respect to the E-mails.

First, the Court concludes that the Questionnaires are not protected by the attorney-client privilege. To establish that the privilege applies, the party asserting it must generally show "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). A prospective client's answers to a lawyer's

questionnaire can, in some circumstances, qualify for such protection. *See, e.g.*, *Schiller v. City of New York*, 245 F.R.D. 112, 115-18 (S.D.N.Y. 2007) (citing cases). But Lead Counsel's assertion of privilege here founders (at a minimum) on the requirement of confidentiality. That is, whether or not the webpage at issue made clear that the submissions were going to a law firm for evaluation (as to which there is some dispute), it did *not* provide any assurance to users of confidentiality. Even more problematic for Lead Counsel's position, the webpage linked to TCA's legal notice, which expressly warned users that any "information" a user provided through the website was "considered *nonconfidential* and *nonproprietary*"; that TCA could disclose it to third parties under various circumstances (beyond what the privilege would allow), and that TCA could not "guarantee that the information you submit to us will not end up in the hands of the company or person that you are complaining about." (GM Supp. Br., Ex. DD, at Ex. B, at 2 (emphasis added)). It follows that Lead Counsel cannot establish that the privilege applies. *Cf., e.g.*, *Schiller*, 245 F.R.D. at 117 (rejecting a claim of privilege where the form merely "*impli*[*ed*]" that "the information would not be held in confidence" (emphasis added)).

In arguing otherwise, Lead Counsel cite the fact that Hagens Berman, the law firm that received the data, maintained the confidentiality of the data. (Pls.' Supp. Ltr. 2). "More important than what the law firm intended," however, "is what the clients thought." *Barton v. U.S. Dist. Court for Cent. Dist. of Cal.*, 410 F.3d 1104, 1107 (9th Cir. 2005). And here, no reasonable prospective client of the firm could have thought that his or her information would be kept confidential when he or she was expressly warned that it might "end up in the hands" of New GM. (GM Supp. Br., Ex. DD, at Ex. B, at 2). Citing the Ninth Circuit's decision in *Barton*, Lead Counsel also contend that "[d]isclaiming language does not automatically render a prospective client questionnaire unprivileged." (Pls.' Supp. Ltr. 2 n.7). That may be true, but *Barton* is easily distinguished from this case, as the disclaiming language there did not clearly

and expressly disclaim confidentiality. *See* 410 F.3d at 1110. As the Ninth Circuit explained: "Neither the word 'confidentiality' nor the substance of a disclaimer of confidentiality can be found in the online questionnaire. . . . [T]he words just do not say . . . that 'confidentiality' was waived." *Id.* Here, by contrast, the disclaiming language said precisely that: that the information provided was "nonconfidential" and might "end up in the hands" of New GM. Having been so warned, those who submitted data through the website cannot now invoke attorney-client privilege to keep that data out of New GM's hands.[1]

The E-mails are a different story. Lead Counsel argue that the E-mails are protected by the work-product doctrine, which "provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) (internal quotation marks omitted). New GM only half-heartedly argues otherwise (GM Ltr. Mot. 3), which is wise as the communications

---

[1] The Court has considered Lead Counsel's other arguments for protection of the Questionnaires and finds them to be without merit. First, Lead Counsel assert that New GM seeks discovery from absent class members, in violation of Order No. 119 (Docket No. 3568), and discovery related to states other than California, Missouri, and Texas, in violation of Order No. 131 (Docket No. 4499). (Pls.' Opp'n 2-3). But New GM does not seek to communicate with, or obtain documents from, absent class members; it merely seeks documents already in Lead Counsel's possession. Further, those documents are relevant to, among other things, the adequacy of counsel, and Order No. 131 places no limitation on New GM's ability to obtain discovery relating to that topic. Second, and related, Lead Counsel contend that requests for production may be served only on "parties" under Rule 34(a) of the Federal Rules of Civil Procedure and that counsel is not a "party." (*Id.* at 3). There is some merit to that contention, but there is little to be gained except delay in making New GM serve a subpoena to Lead Counsel, as it represents that it would do. (Jan. 8, 2018 Status Conf. Tr. 83). Finally, Lead Counsel notes that the Questionnaires have been commingled with submissions that were received directly through the law firm's website. (Pls.' Opp'n 2). But Lead Counsel "cannot avoid disclosure of non-privileged material simply because that material is intermingled with privileged material." *United States v. Chevron Corp.*, No. C-94-1885 SBA, 1996 WL 264769, at *6 (N.D. Cal. Mar. 13, 1996); *cf. In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1973) (Friendly, J.) ("It is difficult to be persuaded that the documents were intended to remain confidential in the light of the fact that they were indiscriminately mingled with the other routine documents of the corporation and that no special effort to preserve them in segregated files with special protections was made." (internal quotation marks omitted)).

were created by Hagens Berman or TCA (at Hagens Berman's request) as part of counsel's efforts to find named plaintiffs "in anticipation of litigation" (Pls.' Supp. Ltr. 3).  Instead, New GM's principal argument is that the protections of the doctrine were waived because there were ninety-four e-mails between TCA and Lead Counsel and TCA disclosed ninety of them to New GM in responding to an earlier subpoena (a response that was allegedly made "[i]n coordination with Lead Counsel").  (GM Supp. Br. 2).  That may well be so, but it is ultimately beside the point because disclosure of some materials results in a subject matter waiver of "related, protected" materials "only in those 'unusual situations in which fairness requires a further disclosure . . . in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary.'"  *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 533 (S.D.N.Y. 2015) (quoting Fed. R. Evid. 502, Committee Notes).  Here, there is no suggestion, let alone evidence, that the partial disclosure — which was made by a third party, not by Plaintiffs or Lead Counsel — was done selectively or strategically so that Plaintiffs might gain an unfair advantage over New GM.  The Court therefore finds that TCA's earlier disclosure does not call for production of the remaining four E-mails.

For the reasons stated above, the Court grants New GM's motion with respect to the Questionnaires and denies its motion with respect to the E-mails.

The Clerk of Court is directed to terminate Docket No. 4875.

SO ORDERED.

Dated: January 29, 2018
New York, New York

JESSE M. FURMAN
United States District Judge