USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  09/12/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x

IN RE:                                                    14-MD-2543 (JMF)
                                                          14-MC-2543 (JMF)
GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

                                                          OPINION AND ORDER
*This Document Relates to All Actions*

--------------------------------------------------------------------x

JESSE M. FURMAN, United States District Judge:

**[Regarding Application of the Court's Prior Rulings on Manifestation,
Incidental Damages (Lost Time), and Unjust Enrichment to All
Remaining Jurisdictions in Dispute (MDL Order No. 131 Issues)]**

INTRODUCTION ........................................................................................ 3

LEGAL STANDARDS ............................................................................... 5

DISCUSSION ............................................................................................. 6

   A.   Manifestation ................................................................................ 6

      1.   State Consumer Protection Laws ........................................... 9

         a.   Broad Remedial Statutes ................................................. 9

            i.   Alaska ...................................................... 9

            ii.   Colorado.................................................. 11

            iii.   Kansas ..................................................... 12

            iv.   Mississippi .............................................. 14

            v.   Montana .................................................. 16

            vi.   Nevada .................................................... 17

            vii.   New Jersey .............................................. 18

            viii.   New Mexico............................................. 21

         b.   "Actual Damages" ........................................................ 22

            i.   Arizona.................................................... 23

            ii.   Connecticut ............................................. 24

            iii.   Iowa........................................................ 25

            iv.   Kentucky ................................................. 27

            v.   Maine ...................................................... 28

            vi.   Nebraska ................................................. 29

vii.    Ohio ................................................................................................ 30

viii.   Oregon ........................................................................................... 31

ix.    Rhode Island ................................................................................. 33

x.    South Dakota ................................................................................. 33

xi.    Tennessee ...................................................................................... 35

xii.   Washington ................................................................................... 36

xiii.   West Virginia ................................................................................ 37

2.    Fraudulent Concealment ...................................................................... 38

i.    Minnesota ...................................................................................... 43

ii.    Mississippi .................................................................................... 46

iii.   New Jersey .................................................................................... 48

iv.   Oregon ........................................................................................... 49

v.    West Virginia ................................................................................ 49

3.    Implied Warranty ................................................................................. 50

i.    Colorado ........................................................................................ 54

ii.    Delaware ........................................................................................ 55

iii.   Ohio ............................................................................................... 56

iv.   West Virginia ................................................................................ 57

B.    Lost Time ................................................................................................. 58

1.    Lost Time as Lost Earnings ................................................................. 62

2.    Lost-Time Damages for Household Work ............................................ 75

3.    States Allowing Recovery for Lost Time Beyond Lost Earnings ............... 82

i.    Colorado ........................................................................................ 82

ii.    New York ....................................................................................... 84

iii.   Ohio ............................................................................................... 86

iv.   Oklahoma ...................................................................................... 88

v.    Utah ............................................................................................... 89

vi.   Virginia .......................................................................................... 90

C. Unjust Enrichment .................................................................................... 91

i.    Arizona .......................................................................................... 92

ii.    Connecticut .................................................................................... 94

iii.   Mississippi .................................................................................... 96

iv.   New Hampshire ............................................................................. 97

v.      New Jersey ..................................................................................................... 99

vi.     New Mexico .................................................................................................. 100

vii.    Oregon.......................................................................................................... 102

viii.   Rhode Island ................................................................................................ 104

ix.     South Carolina ............................................................................................. 105

x.      West Virginia ............................................................................................... 107

CONCLUSION ..................................................................................................... 108

## INTRODUCTION

This multidistrict litigation ("MDL"), familiarity with which is assumed, arose from the recall in February 2014 by General Motors LLC ("New GM") of General Motors ("GM") vehicles that had been manufactured with a defective ignition switch — a switch that could too easily move from the "run" position to the "accessory" and "off" positions, causing moving stalls and disabling critical safety systems (such as the airbag). Following that recall, New GM recalled millions of other vehicles, some for ignition switch-related defects and some for other defects. In this litigation, Plaintiffs seek recovery on behalf of a broad putative class of GM car owners and lessors whose vehicles were subject to those recalls, arguing that they have been harmed by, among other things, a drop in their vehicles' value due to the ignition switch defect and other defects. Their operative complaint — the Fifth Amended Consolidated Complaint or "5ACC" (Docket No. 4838) — exceeds 1700 pages and 7400 paragraphs, and includes claims relating to the ignition-switch defect and various other alleged defects under state law brought by named Plaintiffs in all fifty states and the District of Columbia.

In conjunction with the parties, the Court decided early on not to entertain a motion to dismiss all of the Plaintiffs' economic loss claims at once — given, among other things, the number and scope of those claims; the possibility that the litigation would be materially affected

by parallel proceedings in (and arising out of) bankruptcy court; and the likelihood that the parties could ultimately agree upon how the Court's rulings as to some state law claims would apply to others, saving the need for the parties to brief and the Court to decide the same issues in fifty-one different jurisdictions.  In an Opinion and Order filed on July 15, 2016, with respect to the then-operative Third Amended Consolidated Complaint ("TACC"), the Court ruled on the validity of Plaintiffs' claims in eight jurisdictions.  *See In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2016 WL 3920353 at *36 (S.D.N.Y. July 15, 2016) ("*TACC Op.*").  A little less than one year later, the Court issued another Opinion and Order (later modified), with respect to the then-operative Fourth Amended Consolidated Complaint ("FACC"), addressing the validity of Plaintiffs' claims in another eight jurisdictions.  *See In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 423 (S.D.N.Y. 2017) ("*FACC Op.*"), *modified on reconsideration*, No. 14-MC-2543 (JMF), 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017) ("*FACC Supp. Op.*").  Plaintiffs later filed the Fifth Amended Consolidated Complaint.

In MDL Order No. 131, entered on August 30, 2017, the Court directed the parties to "meet and confer regarding the application of the Court's prior motion to dismiss opinions on the issues of (i) unjust enrichment, (ii) incidental damages, and (iii) manifest defect" to the jurisdictions that had not been the subject of prior rulings by the Court — a total of thirty-five jurisdictions for the issues of unjust enrichment and manifest defect and forty-seven jurisdictions for the issue of incidental damages.  (Docket No. 4499, ¶ 4).  That process yielded agreement, and a stipulation (Docket No. 5099 ("Parties' Stipulation")), with respect to application of the Court's prior opinions to some issues in some of the remaining jurisdictions — albeit many fewer issues in many fewer jurisdictions than the Court had hoped.  Thereafter, the parties submitted lengthy briefs addressing the disputes that remained: (1) whether "manifest defect" is

required for Plaintiffs to recover for their economic losses *under the laws of twenty-seven jurisdictions*; (2) whether Plaintiffs can recover damages for their "lost time" (for example, time lost in repairing their vehicles) *under the laws of forty-seven jurisdictions*; and (3) whether the existence of a contract or an adequate legal remedy bars Plaintiffs' unjust enrichment claims *under the laws of ten jurisdictions*.  (Docket Nos. 5098, 5101, 5191, 5192).

In this Opinion and Order, the Court resolves those disputes — no easy task given the sheer number of issues and jurisdictions in dispute, the fact that the relevant law in many of jurisdictions is unsettled or in conflict, and because "subtle differences in state law can dictate different results for plaintiffs in different jurisdictions." *TACC Op.*, 2016 WL 3920353 at *18. Nevertheless, for the reasons that follow, the Court concludes that manifestation is not required for any of claims and jurisdictions that remain in dispute; that, in all but a few of the jurisdictions that remain in dispute, Plaintiffs cannot recover for lost "free" or "personal" time, but can recover for lost time in the form of lost earnings or wages; and that Plaintiffs in most of the jurisdictions in dispute cannot bring unjust enrichment claims where the subject matter is covered by a valid and enforceable contract or there is an adequate remedy at law.

## LEGAL STANDARDS

In applying the law of a state, the pronouncement of the state's highest court "is to be accepted by federal courts as defining state law."  *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940); *accord Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865, 1874 (2018) ("If the relevant state law is established by a decision of the State's highest court, that decision is binding on the federal courts." (internal quotation marks omitted)).  "Where the high court has not spoken, the best indicators of how it would decide are often the decisions of lower state courts."  *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 850 (2d Cir. 1992) (citing

*Comm'r of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465 (1967)).  Nevertheless, a federal court is not bound by the opinions of a state's lower courts.  *See, e.g.*, *Calvin Klein Ltd. v. Trylon Trucking Corp.*, 892 F.2d 191, 195 (2d Cir. 1989); *see also Estate of Bosch*, 387 U.S. at 465 ("[I]n diversity cases[,] while the decrees of lower state courts should be attributed some weight[,] the decision [is] not controlling where the highest court of the State has not spoken on the point." (internal quotation marks and alterations omitted)).  When faced with an unsettled question of state statutory interpretation, a federal court should consider "the statutory language, pertinent legislative history, the statutory scheme set in historical context, how the statute can be woven into the state law with the least distortion of the total fabric, state decisional law, and federal cases which construe the state statute."  *Bensmiller v. E.I. Dupont de Nemours & Co., State of La.*, 47 F.3d 79, 82 (2d Cir. 1995) (internal quotation marks and alterations omitted).

## DISCUSSION

As noted, the parties have briefed application of the Court's prior Opinions on the issues of (1) manifestation; (2) incidental damages (i.e., lost time); and (3) unjust enrichment to the jurisdictions that have not been the subject of prior motion practice and that remain in dispute. The Court will address each of those issues in turn.

### A.  Manifestation

Putative class actions "alleging neither personal injury nor property damages, but economic loss stemming from purchase of a product" with an unmanifested defect have become increasingly common in the automotive, pharmaceutical, and other industries.  1 McLaughlin on Class Actions § 5:56 (14th ed.).  In its previous Opinions, the Court resolved the question of whether Plaintiffs could pursue economic loss claims for defects if those defects never manifested themselves under the laws of sixteen jurisdictions.  In its Opinion resolving New

GM's motion to dismiss the Fourth Amended Consolidated Complaint, the Court also signaled its agreement with a prominent treatise that the "majority view is that there is no legally cognizable injury in a product defect case, regardless of whether the claim is for fraud, violation of consumer protection statutes, breach of warranty, or any other theory, unless the alleged defect has manifested itself in the product used by the claimant." *FACC Op.*, 257 F. Supp. 3d at 423 (citing 1 McLaughlin on Class Actions § 5:56). But neither this Court's nor the treatise's conclusion was based on a comprehensive analysis of the law of the remaining states.

Having now engaged in such an analysis of the law in twenty-seven states, covering three different kinds of claims (statutory consumer protection, common-law fraud, and implied warranty), the Court can no longer say with confidence that, across the states, the "majority view" is that manifestation is required to state claims for fraud, violations of consumer protection statutes, and breaches of warranty. Indeed, for every disputed claim in every disputed state, the Court concludes that manifestation is *not* a requirement.[1] This is due in part to the Court's determination that, in the absence of state law to the contrary, there is no legal or logical ground to bar Plaintiffs' recovery if they can prove that they suffered economic loss. If Plaintiffs paid *x* for their cars and can prove that their cars are now worth *x* minus *y* as the result of the alleged defects, it is arbitrary to prevent them from recovering the difference between *x* and *y* simply because the defect did not manifest itself in property damage or personal injury. *See* Steven R. Swanson, *The Citadel Survives a Naval Bombardment: A Policy Analysis of the Economic Loss Doctrine* ("*Citadel*"), 12 TUL. MAR. L.J. 135, 140 (1987) ("If the product is not worth what it was rep[r]esented to be, the purchaser has been harmed to the extent of the decrease in value.").

---

[1]     To be fair, the Court's uniform finding may be due to the fact that Plaintiffs conceded in thirty-one cases that manifestation would be required, while New GM conceded in just five cases that it would not. (*See* Parties' Stipulation).

In the Court's view, the courts that have adopted a manifestation requirement often do so as a proxy for proof of actual defect. *See, e.g.*, *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 626 (8th Cir. 1999) ("The Plaintiffs do not allege that the [brake system] is incapable of stopping the vehicles or that [the brake system] has violated any national safety standards."). But while manifestation may be helpful in proving the presence of a defect, it does not follow that recovery for economic loss should turn on whether the defect also caused property or personal damage. *See* Swanson, *Citadel*, 12 TUL. MAR. L.J. at 141. It has also been suggested that, without manifestation, damages for economic loss are too speculative or that consumers did in fact get the benefit of their bargain. *See* Moin A. Yahya, *Can I Sue Without Being Injured?: Why the Benefit of the Bargain Theory for Product Liability Is Bad Law and Bad Economics*, 3 GEO. J.L. & PUB. POL'Y 83, 114 (2005) (casting doubt on the reliability of economic analysis and questioning whether consumers fundamentally alter their view of a product on the knowledge that there is some chance of harm); Sheila B. Scheuerman, *Against Liability for Private Risk-Exposure*, 35 HARV. J.L. & PUB. POL'Y 681, 706 (2012) ("[C]ourts reason that if the product has so far worked as promised, then consumers have received the benefit of their bargain."). But there is no reason to think that the calculation of economic damages is any more reliable when a defect happens also to have caused personal or property damages. *See* Swanson, *Citadel*, 12 TUL. MAR. L.J. at 171. And if a plaintiff can demonstrate that public knowledge of a defect *did* cause the value of her vehicle to drop, and that her vehicle is consequently worth less than what she had bargained for, she has demonstrated that she lost the benefit of her bargain.

In the final analysis, Plaintiffs may not be able to prove that their vehicles contained defects and that those defects actually caused them economic losses. But Plaintiffs allege the existence of defects and that, through expert analyses, they can demonstrate economic losses.

(*See, e.g.*, 5ACC ¶¶ 397, 827-67).  At this stage of the proceedings, the Court accepts the truth of those allegations and assertions, and — absent state law to the contrary — will not impose a manifestation requirement as a proxy for evidence to support them.  With that in mind, the Court proceeds state by state and addresses whether manifestation is required in each substantive area: statutory consumer protection, common-law fraud, and implied warranty.

### 1.  State Consumer Protection Laws

The Court begins with Plaintiffs' claims under state consumer protection laws.  For convenience, the Court divides the applicable states into two categories: first, those that have broad remedial statutes and for which neither New GM nor the Court has found case law suggesting that the state would require manifestation; and, second, those that require a showing of "actual damages."  The Court will address each category in turn.

### a.  Broad Remedial Statutes

First, eight states in dispute have consumer protection statutes that courts have held are remedial nature or must be liberally construed and for which neither New GM nor the Court has found case law suggesting that the state would require manifestation.  The Court concludes that, where those circumstances are present, Plaintiffs need not prove manifestation to state a claim under the state's consumer protection statute.  For each state, the Court will describe the law in general terms and then address the authority on which New GM relies.

### i.  Alaska

Alaska's Unfair Trade Practices and Consumer Protection Act ("Alaska CPA") provides that "[a] person who suffers an ascertainable loss of money or property as a result of [unfair or deceptive acts or practices in the conduct of trade or commerce] may bring a civil action to recover for each unlawful act or practice."  Alaska Stat. § 45.50.531; *see Alaska Interstate*

*Constr., LLC v. Pac. Diversified Invs., Inc.*, 279 P.3d 1156, 1163 (Alaska 2012). The Alaska

Supreme Court has not explicitly decided whether manifestation is required for purposes of an

Alaska CPA claim, but it has affirmed an award of damages under the statute where the plaintiff

alleged that the model year of his motor home had been misrepresented and sought the difference

in value between what was represented and what he received — without demanding allegations

of a malfunction due to the vehicle's actual age. *See Borgen v. A & M Motors, Inc.*, 273 P.3d

575, 585-92 (Alaska 2012). Moreover, the Alaska Supreme Court has held that, "because the

[Alaska CPA] is a remedial statute, its language should be liberally construed." *Alaska Tr., LLC

v. Bachmeier*, 332 P.3d 1, 10 (Alaska 2014). On these bases, the Court concludes that

manifestation is not required for purposes of an Alaska CPA claim.

New GM's argument to the contrary rests almost exclusively on *Jones v. Westbrook,* 379

P.3d 963 (Alaska 2016). There, the plaintiff claimed that an attorney had violated the Alaska

CPA by misrepresenting himself as an attorney with legal expertise in the sales of businesses;

failing to inform the plaintiff that he lacked malpractice insurance; and failing to properly advise

and document the sale of the plaintiff's business. *Id.* at 970. Seven years after the sale of the

plaintiff's business, when tax liens were imposed on the corporation's assets, the plaintiff learned

that his attorney had failed to provide a recorded security interest in the corporation's stock or

buyer's home. In determining when the statute of limitations began to run, the Alaska Supreme

Court held that the plaintiff had not suffered an "ascertainable loss of money or property" until

the tax lien was imposed because, until that point, the plaintiff might have fixed the mistake and

properly secured the buyer's payments. *Id.* New GM argues that *Jones* should be read to mean

that manifestation is required because "the plaintiff had no [Alaska CPA] claim until the defect

in the documents (the absence of a security interest) actually manifested and harmed plaintiff,

even though plaintiff had not received the benefit of his bargain (a sale agreement with a security interest) several years earlier." (Docket No. 5191 ("New GM Resp."), at 12-13).

The Court, however, reads *Jones* differently. This Court previously held that Plaintiffs who sold their vehicles at an allegedly still-inflated value *before* a defect became public did not have valid claims for economic loss because they had suffered no damages. *See FACC Supp. Op.*, 2017 WL 3443623, at *2 ("[A] plaintiff who is *injured* at one point in time by a defendant's conduct does not necessarily suffer cognizable *damages* at that same time for purposes of an economic loss claim."). The Court reads *Jones* to hold something similar — that the plaintiff had no Alaska CPA claim before the tax liens because he had suffered no actual damages until the defect in his sales document became unfixable. *See also Cozzetti v. Madrid*, No. S-15117, 2017 WL 6395736, at *8-9 & nn.53, 55 (Alaska Dec. 13, 2017) (finding that Madrid "suffer[ed] an ascertainable loss of money or property" when "Cozzetti's misrepresentation of Madrid as a renter *damaged* Madrid by leading the district court to improperly grant judgment against him without jurisdiction" but Madrid suffered no "ascertainable loss" where a misrepresentation of ownership had no "impact on Madrid's decision to purchase the mobile home" (alteration in original) (emphasis added)). The Court does not read *Jones* to suggest that the Alaska Supreme Court would adopt a manifestation requirement.

### ii.  Colorado

The Colorado Supreme Court has stated that the Colorado Consumer Protection Act ("Colorado CPA") has a "broad legislative purpose . . . to provide prompt, economical, and readily available remedies against consumer fraud." *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 50-51 (Colo. 2001), *as modified on denial of reh'g* (Jan. 11, 2002). Although the "[Colorado CPA] is silent as to specific injuries for which it intends to provide a remedy,"

*Hall v. Walter*, 969 P.2d 224, 234 (Colo. 1998), at least one federal district court has suggested that a plaintiff would have a cognizable claim under the **Colorado CPA** "to the extent she paid for a product and got something less than what was promised," *Boyd v. Johnson & Johnson Consumer Cos.*, No. 09-CV-3135 (DMC), 2010 WL 2265317, at *7 (D.N.J. May 31, 2010), *reconsideration granted on other grounds*, No. 09-CV-3135 (DMC), 2010 WL 3024845 (D.N.J. Aug. 2, 2010). In light of that decision, and the "broad legislative purpose" of the statute, the Court concludes that manifestation is not required to state a claim under the **Colorado CPA**.

In arguing otherwise, New GM relies on *Edwards v. Zenimax Media Inc.*, No. 12-CV-00411 (WYD), 2012 WL 4378219 (D. Colo. Sept. 25, 2012). (*See* Docket No. 5098 ("New GM Br."), at 12-13). In that case, involving an allegedly defective videogame, the court declined to certify a class on ascertainability grounds, concluding that the proposed class would inevitably include members who had in fact suffered no benefit-of-the-bargain damages. *See id.* at *5. But to the extent relevant here, that was true because the proposed class included those who bought a used copy of the video game and then gave it away, and such a purchaser "would neither have experienced the alleged Defect *nor* suffered from a decreased secondary market value." *Id.* (emphasis added). If anything, therefore, the court suggested that a purchaser who could prove "a decreased secondary market value" — that is, benefit-of-the-bargain damages — would have a viable **Colorado CPA** claim even without "experienc[ing]" (that is, manifesting) a defect.[2]

### iii.    Kansas

The Kansas Consumer Protection Act ("Kansas CPA") provides that a "consumer who is aggrieved by a violation of [the Kansas CPA] may recover . . . damages or a civil penalty." Kan.

---

[2]    In a footnote, New GM asserts that the Colorado CPA does not provide remedies for class members. (*See* New GM Br. 13 n.13). The Court declines to address that argument now, both because it is premature and because it is inadequately briefed by the parties here.

Stat. Ann. § 50-634(b); *see Lowe v. Surpas Res. Corp.*, 253 F. Supp. 2d 1209, 1227 (D. Kan. 2003). According to the Kansas Supreme Court, "[a] party is aggrieved whose legal right is invaded by an act complained of or whose pecuniary interest is directly affected by the order. The term refers to a substantial grievance, a denial of some personal or property right, or the imposition upon a party of some burden or obligation." *Finstad v. Washburn Univ. of Topeka*, 252 Kan. 465, 472, (1993) (internal quotation marks omitted) (citing *Fairfax Drainage Dist. v. Kansas City*, 190 Kan. 308, 308 (1962)). Moreover, the Kansas Supreme Court has described the Kansas CPA as a statute that "expressly provides that it is to be construed liberally in order to protect consumers from suppliers who commit deceptive and unconscionable practices," and explained that "a consumer need not establish measurable monetary damages to qualify as aggrieved." *Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 298 Kan. 503, 519 (2013).

Although the Kansas Supreme Court has not explicitly ruled on the issue, two federal court decisions have allowed Kansas CPA claims to proceed even without proof of a manifested defect. In *Gonzalez v. PepsiCo, Inc.*, 489 F. Supp. 2d 1233 (D. Kan. 2007), for example, the plaintiffs alleged that beverages manufactured or distributed by the defendants "had a tendency to contain benzene" at elevated levels, but did "not allege that any of the beverage products which they purchased and consumed actually contained benzene or that they [had] suffered any personal injuries." *Id.* at 1239. Nevertheless, the court held that the plaintiffs had "alleged a defect in defendants' beverage products which . . . reduced their value so as to cause plaintiffs economic loss" and that such a loss sufficed to state a claim under the Kansas CPA. *Id.* at 1248; *see id.* (noting that "nothing in established case law . . . suggests that a claim under the Kansas CPA cannot be maintained on the basis of economic harm"). Along similar lines, the court in *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600 (D. Kan. 2014), certified a class

alleging "economic damages resulting from the difference between the railing products as warranted and their value in light of . . . allegedly defective brackets," *id.* at 606 — even though the alleged defect "remain[ed] latent for the majority of class members," *id.* at 611-12.[3]

Finstad, upon which New GM principally relies, does not support a contrary conclusion. In that case, a group of students sought damages from the Washburn University of Topeka for falsely stating in its course catalog that it had an accredited program in court reporting. But while "[t]he students claimed that they were aggrieved because they paid tuition for a program that was not accredited, . . . they [did] not claim that they were induced to enroll in the program by the false statement that it was accredited." *Id.* at 467. In fact, they stipulated "that no Plaintiff relied upon defendant's representation of approval/accreditation." *Id.* Faced with those facts, the Kansas Supreme Court held that the students had failed to demonstrate a causal connection between the university's misconduct and their injuries and, thus, were not "aggrieved" within the meaning of the Kansas CPA. *Id.* at 474. Put differently, the Court held that the students could not recover the benefit of a bargain they had never struck; it did not hold that benefit-of-the-bargain damages are unavailable in the absence of a manifested defect.[4]

### iv. Mississippi

Under Mississippi's Consumer Protection Act ("Mississippi CPA"), a plaintiff who "suffers any ascertainable loss of money or property" due to deceptive or unfair trade practices can "recover such loss of money or damages." Miss. Code Ann. § 75-24-15(1); *see In re*

---

[3] Strictly speaking, the *Nieberding* Court addressed the issue in the context of the plaintiff's implied warranty claim, but its logic applied equally to his Kansas CPA claim.

[4] In light of that, the Court declines to follow *Porter v. Merck & Co.*, No. 04-CV-586, 2005 WL 3719630 (Kan. Dist. Ct. Aug. 19, 2005), an unpublished lower court opinion that interpreted *Finstad* to reject benefit-of-the-bargain damages.

*Mississippi Medicaid Pharm. Average Wholesale Price Litig.*, 190 So. 3d 829, 841 (Miss. 2015) (noting that the purpose of the Mississippi CPA is "to protect the citizens of Mississippi from deceptive and unfair trade practices" (internal quotation marks and citations omitted)). At least one case suggests that the Mississippi Supreme Court would be open to allowing a Mississippi CPA claim even without a manifested defect. In *Holman v. Howard Wilson Chrysler Jeep, Inc.*, 972 So. 2d 564 (Miss. 2008), that Court considered a Mississippi CPA claim against a car dealership that had misrepresented as "new" a vehicle that "had been in a wreck and was repaired prior to their purchase." *Id.* at 567. The plaintiffs did not allege that the vehicle had manifested any defect because of the prior accident, and the intermediate appellate court had granted summary judgment to the defendants in part because the plaintiffs had "failed to show any connection with the prior damage to the damages they allegedly suffered." *Id.* at 567-68. The Mississippi Supreme Court reversed, and allowed the plaintiffs' Mississippi CPA claims to go forward. It did not explicitly state that a Mississippi CPA claim did not require manifestation, but it did consider — and implicitly reject — the defendants' argument that "the Holmans suffered no damages due to the [dealership's] failure to disclose." *Id.* at 568.

The federal district court cases upon which New GM relies are irrelevant because they do not pertain to the Mississippi CPA; nor, for that matter, do they cite any Mississippi law to support their conclusions that manifestation is required under the Mississippi CPA. *See Jarman v. United Indus. Corp.*, 98 F. Supp. 2d 757 (S.D. Miss. 2000) (analyzing negligent misrepresentation, breach of implied and express warranties, fraud, and unjust enrichment claims); *Lee v. Gen. Motors Corp.*, 950 F. Supp. 170 (S.D. Miss. 1996) (analyzing negligence, strict liability, implied warranty, and intentional infliction of emotional distress claims). New GM also urges the Court not to "ignore" the Seventh Circuit's decision in *In re*

*Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002).  (New GM Resp. 8).  But the

*Bridgestone/Firestone* Court did not analyze any Mississippi law.  *See In re*

*Bridgestone/Firestone*, 288 F.3d at 1017.  It did suggest that *Briehl*, had analyzed Mississippi

law, *Bridgestone/Firestone*, 288 F.3d at 1017, but *Briehl* merely cites to *Lee v. General Motors*

*Corp.* — which does not analyze the Mississippi CPA.  *See Briehl*, 172 F.3d at 627; *Lee*, 950 F.

Supp. at 172.  Accordingly, the Seventh Circuit's decision does not support the weight that New

GM puts upon it.

### v.    Montana

Montana's Unfair Trade Practices and Consumer Protection Act ("Montana

CPA") provides a remedy for "[a] consumer who suffers any ascertainable loss of money or

property" as the result of "unfair or deceptive act or practices in the conduct of any trade or

commerce."  Mont. Code Ann. §§ 30-14-103, 133(1).  "[A] consumer may sue under the act if he

or she has suffered any ascertainable loss of money or property as the result of an unfair

practice."  *Jacobson v. Bayview Loan Servicing, LLC*, 383 Mont. 257, 272 (2016) (internal

quotation marks and citations omitted).  "[T]he purpose of the [Montana] CPA is to protect the

public from unfair or deceptive practices."  *Tripp v. Jeld-Wen, Inc.*, 327 Mont. 146, 156 (2005)

(internal quotation marks omitted).  "An award of damages may benefit the plaintiffs in a case,

but its remedial nature also serves as notice to all that violations of the [Montana CPA] are

consequential and will not be tolerated."  *Jacobson*, 383 Mont. at 278.  The Montana courts do

not appear to have addressed whether manifestation is required under the Montana CPA.  The

Montana Supreme Court, however, has defined "ascertainable loss" broadly.  *See, e.g.*, *Puryer v.*

*HSBC Bank USA, N.A.*, 391 Mont. 361, 375 (2018) (describing how the Montana Supreme Court

has rejected arguments that an "ascertainable loss of money and property" under the Montana

CPA requires a showing of "actual damages" and finding that lost opportunities to save a home and negative impact to one's credit were both "sufficient to establish a pecuniary loss" under the Montana CPA).  In the absence of any contrary authority, and in light of the statute's broad purpose, the Court predicts that the Montana Supreme Court would not require a manifested defect to state an "ascertainable loss" under the Montana CPA.

### vi.    Nevada

Under the Nevada Deceptive Trade Practices Act ("Nevada DTPA"), "[a]n action may be brought by any person who is a victim of consumer fraud."  Nev. Rev. Stat. § 41.600(1).  If the claimant prevails, the Court shall award that party "[a]ny damages that he has sustained."  *Id.* §§ 41.600(3), (3)(a).  There is a surprising dearth of authority on the Nevada DTPA's breadth and construction.   The Court thus relies on the statute alone, applying Nevada's rules of statutory construction.  *Cf. In re Goldman*, 70 F.3d 1028, 1029 (9th Cir. 1995).  Under Nevada's first rule of statutory interpretation, "if a statute is clear and unambiguous," the court must give "effect to the plain and ordinary meaning of the statute's language, and . . . not resort to the rules of statutory construction."  *HSBC Bank, N.A. v. Stratford Homeowners Ass'n*, No. 15-CV-01259 (JAD), 2016 WL 1555716, at *2 (D. Nev. Apr. 14, 2016).  The Nevada DTPA awards "[a]ny damages that" a person who is a victim of consumer fraud (as defined by the Nevada DTPA) "has sustained."  Nev. Rev. Stat. Ann. § 41.600(3)(a).  The only limitation suggested by the statute's language is that the claimant must have "sustained . . . damages" as the result of "consumer fraud."  *See also Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009) (holding that a private Nevada DTPA claim requires "damage to the plaintiff").  There is nothing in the language of the statute to suggest that a manifested defect should be required.

### vii.    New Jersey

To state a claim under the New Jersey Consumer Fraud Act ("New Jersey CFA"), a plaintiff must demonstrate an "'ascertainable loss of moneys or property, real or personal' as a result of a practice in violation of the [New Jersey CFA]." *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 238, 872 A.2d 783, 786 (2005) (quoting N.J. Stat. Ann. § 56:8-19). To qualify as ascertainable, loss must be "quantifiable or measurable." *Id.* at 248. "In cases involving . . . misrepresentation," however, "either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle." *Id.* That definition aligns with the statute's "broad . . . protection . . . envisioned by the [New Jersey] legislature and . . . recognized by the Supreme Court of New Jersey." *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 502 (D.N.J. 2009) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 604 (1997) ("The history of the [New Jersey CFA] is one of constant expansion of consumer protection."); *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 264 (1997) ("The language of the [New Jersey CFA] evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud.")).

The New Jersey Supreme Court has not spoken directly to the issue of manifestation, but its decision in *Thiedemann* provides some reason to conclude that it would not impose a manifestation requirement. In that case, the plaintiffs brought claims against Mercedes-Benz for the cost of repair for fuel gauges that had manifested a defect, as well as for the possible future diminution in the value of vehicles whose fuel gauges had since been repaired and had exhibited no defects since. *See* 183 N.J. at 244, 252. The New Jersey Supreme Court held that the plaintiffs had failed to plead a [New Jersey CFA] claim for two reasons. First, the plaintiffs' defective fuel gauges had already been repaired "at no cost to the [plaintiffs]" through their

warranty.  *Id.* at 251.  Second, the plaintiffs presented no evidence of a present diminution in value; a "future hypothetical diminution in [the] value" of the plaintiffs' cars "due to a fuel gauge that *at one time* did not read properly a *full* tank of gasoline" was "too speculative" to satisfy the New Jersey CFA's requirement of "a quantifiable or otherwise measureable loss."  *Id.* at 252 (first emphasis added).  Notably, however, the problem with the plaintiffs' "loss in value" claim was *not* the absence of manifestation, but rather the absence of any present diminution in value. *Id.* at 244.  Indeed, the New Jersey Supreme Court noted that if the plaintiffs had presented sufficiently reliable "expert evidence to support an inference of loss in value . . . , *i.e.*, that the resale market for the specific vehicle had been skewed by the 'defect,'" the claim may have gone forward.  *Id.* at 252.

Following *Thiedemann*, courts have generally allowed New Jersey CFA claims to go forward even without a manifested defect.  *See In re Ford Motor Co., Spark Plug & 3-Valve Engine Prod. Liab. Litig.*, No. 1:12-MD-2316, 2014 WL 3778592, at *28, *44 (N.D. Ohio July 30, 2014) (discussing *Thiedemann* and permitting a New Jersey CFA claim to go forward where the plaintiffs alleged a defect causing some, but not all, spark plugs in certain Ford models to break); *Strzakowlski v. Gen. Motors Corp.*, No. CIV.A. 04-4740, 2005 WL 2001912, at *2, *7 (D.N.J. Aug. 16, 2005) (discussing *Thiedemann* and denying a motion to dismiss class allegations where all members of the class alleged that their cars contained a defect in the form of "a poorly designed plastic manifold-plenum" but not all class members had "experienced a coolant leak" as a result of that defect).  That conclusion is reinforced by the fact that *Thiedemann* itself favorably cited a New Jersey trial court opinion in which the court had explicitly stated that plaintiffs need not plead manifestation under the New Jersey CFA.  *See Thiedemann*, 183 N.J. at 252 n.8 (citing *Talalai v. Cooper Tire & Rubber Co.*, 360 N.J. Super.

547 (Law. Div. 2001), as an example of a case in which "[s]ufficient proof of an ascertainable loss in respect of the 'lost bargain' was present"); *see also Talalai*, 360 N.J. Super. at 564 (rejecting the defendants' contention that "a product defect that has not manifested itself is not a claim for which a court can provide relief" under the New Jersey CFA).

In arguing that the New Jersey CFA requires manifestation, New GM relies primarily on *Perkins v. DaimlerChrysler Corp.*, 383 N.J. Super. 99 (App. Div. 2006), and several federal court opinions that have adopted or expanded its reasoning. (GM Br. 9-10). But *Perkins* is not binding here and, even if it were, the Court concludes that it is inapposite for several reasons. First, *Perkins*'s holding — that a defect that does not manifest itself until after the expiration of warranty cannot support a claim under the New Jersey CFA — does not follow from *Thiedemann*, which held only that defects *already* "addressed by warranty" do not provide a predicate "loss" under the New Jersey CFA. *See Thiedemann*, 183 N.J. at 251; *cf. Asp v. Toshiba Am. Consumer Prods., LLC*, 616 F. Supp. 2d 721, 737 (S.D. Ohio 2008) ("*Thiedemann* does not stand for the proposition . . . that a plaintiff must avail himself of remedies under a limited warranty to have an ascertainable loss under the [New Jersey CFA].""). Second, *Perkins* specifically declined to address cases, such as this one, "in which safety concerns might be implicated." *Perkins*, 383 N.J. Super. at 111-12. And finally, *Perkins* and its progeny rest on the proposition that recognizing New Jersey CFA claims for defects that do not appear before the end of a warranty would "extend the warranty period beyond that to which the parties agreed." *Noble v. Porsche Cars N. Am., Inc.*, 694 F. Supp. 2d 333, 338 (D.N.J. 2010) (internal quotation marks omitted); *see also Perkins*, 383 N.J. Super. at 113. In other words, the courts assumed that consumers receive the benefit of their bargain where no defects arise before the end of the warranty. But when a manufacturer or seller has acted fraudulently, consumers

cannot be said to have gotten the benefit of their bargain "because parties to a contract do not usually treat the chance that they are lying to each other as a subject for their contract to allocate." Restatement (Third) of Torts: Liability for Economic Harm § 9 (Tentative Draft No. 2, 2014); *see also Maniscalco*, 627 F. Supp. 2d at 501-02 (noting that the plaintiff in *Perkins* did not allege that the defendant knew of the alleged product defect and predicting that the New Jersey Supreme Court would not find the New Jersey CFA "categorically inapplicable" were it was "faced with a situation where a manufacturer or seller . . . intentionally concealed [a product defect] from a purchaser, with the purpose of maximizing profit"); *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427 442-43 (D.N.J. 2012) (holding that the warranty coverage of a potential defect does not, as a matter of law, negate a knowing omission claim under the New Jersey CFA); *see also Coba v. Ford Motor Co.*, No. 12-1622 (DRD), 2013 WL 244687, at *9 (D.N.J. Jan. 22, 2013) ("The notion that a manufacturer would be absolved from liability for knowingly omitting a defect because it acknowledges the possibility of defects in its warranty is both illogical and contrary to the spirit of the [New Jersey CFA].").

### viii. New Mexico

New Mexico's Unfair Trade Practices Act ("New Mexico UTPA") provides that "[a]ny person who suffers any loss of money or property," as a result of a statutory violation, may "recover actual damages or the sum of one hundred dollars ($100), whichever is greater." N.M. Stat. Ann. § 57-12-10(B). Because "the [New Mexico UTPA] constitutes remedial legislation," the New Mexico Supreme Court "interpret[s] the provisions of this Act liberally to facilitate and accomplish its purposes and intent." *Truong v. Allstate Ins. Co.*, 147 N.M. 583, 591 (2010) (internal quotation marks omitted). Consistent with that, the New Mexico Supreme Court has held that a party may recover the "diminution of value to [a] vehicle" caused by a violation of the

New Mexico UTPA.  *Hale v. Basin Motor Co.*, 110 N.M. 314, 319 (1990); *see also Lohman v. Daimler-Chrysler Corp.*, 142 N.M. 437, 446 (2007) ("An award of monetary damages may be premised upon [a diminution in value].").  It is true that in *Lohman*, the plaintiffs alleged manifestation, *see Lohman*, 142 N.M. at 446, but nothing in the Court's decision — or any other decision applying New Mexico law — suggests that manifestation is required to recover under the New Mexico UTPA.

### b.  "Actual Damages"

Next, the Court turns to thirteen states in which the consumer protection statute limits recovery to "actual damages."  Invoking this Court's prior conclusion that the Oklahoma Consumer Protection Act ("Oklahoma CPA") requires proof of manifestation, *see TACC Op.*, 2016 WL 3920353 at *36, New GM contends that manifestation should be required if a state's consumer protection statute allows recovery only for "actual damages."  (*See* New GM Br. 19-20).  But New GM puts too much weight on the term "actual damages," which "has often been defined broadly in common-law cases, and in [United States Supreme Court cases], to include all compensatory damages."  *FAA v. Cooper*, 566 U.S. 284, 299 (2012).  More to the point, New GM distorts this Court's prior decision.  The Court's conclusion about the Oklahoma CPA was not based solely on the "actual damages" element of the statute.  It was based also on case law holding that the Oklahoma CPA "require[d] either a manifested defect or damages beyond a failure to receive the benefit of a bargain."  *TACC Op.*, 2016 WL 3920353 at *36.  In the absence of authority suggesting either that the phrase "actual damages" should be read to have a narrower meaning than "compensatory damages" or that manifestation is required, the Court will not impose a manifestation requirement based solely on the term "actual damages."

### i.    Arizona

A private plaintiff's relief under the Arizona Consumer Fraud Act ("Arizona CFA") "is limited to the recovery of actual damages suffered as a result of such unlawful act or practice." *Peery v. Hansen*, 120 Ariz. 266, 270 (Ct. App. 1978).  The Arizona CFA is nonetheless "a broadly drafted remedial provision," *In re Arizona Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1022 (D. Ariz. 2017) (quoting *State ex rel. Woods v. Hameroff*, 180 Ariz. 380 (1994) (internal quotation marks omitted)), which "prohibits fraudulent, deceptive, or misleading conduct in connection with the sale or advertisement of consumer goods and services," *Schellenbach v. GoDaddy.com, LLC*, 321 F.R.D. 613, 619 (D. Ariz. 2017).

The Arizona Supreme Court has not directly addressed manifestation under the Arizona CFA, but at least two recent district court decisions support Plaintiffs' argument that the statute does not require manifestation.  *See Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 820-22, 831 (D. Ariz. 2016) (holding that the plaintiff's allegation that she would not have purchased an allegedly defective wireless security system but for the defendant's misrepresentations was "sufficient to establish the damages element" of an Arizona CFA claim where the plaintiff had not alleged that the defect — lack of encryption or authentication — had manifested in any harm to herself or her home) (citing *Parks v. Macro-Dynamics, Inc.*, 121 Ariz. 517, 521 (Ct. App. 1979)); *In re Arizona Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1028 (D. Ariz. 2017), (analyzing Arizona cases to uphold an Arizona CFA claim where the plaintiffs alleged no injury other than that they "would not have purchased Theranos blood tests if they had known that defendants were using their blood samples for research and product development") *reconsideration granted in part on other grounds*, No. 2:16-CV-2138 (HRH), 2017 WL 4337340 (D. Ariz. Sept. 29, 2017).

New GM's sole argument to the contrary rests on Arizona CFA's "actual damages" requirement. (*See* New GM Br. 19 & n.14 (citing *Peery*, 120 Ariz. 266 at 270; *Rich v. Bank of Am., N.A.*, 666 F. App'x 635, 638-39 (9th Cir. 2016))). As discussed, however, that is not enough to imply a requirement of manifestation. (Indeed, the court in *Peery* used the phrase "actual damages" in order to differentiate the damages owed a private plaintiff from civil penalties that could be sought in an action by the state, not to suggest that manifestation was required. *Peery*, 120 Ariz. at 70.)

### ii. Connecticut

Under the Connecticut Unfair Trade Practices Act ("Connecticut UTPA"), "[a]ny person who suffers any ascertainable loss of money or property" as a result of a violation may "recover actual damages." Conn. Gen. Stat. Ann. § 42-110g. The Connecticut Supreme Case has defined an "ascertainable loss" under the Connecticut UTPA broadly, as "a loss that is capable of being discovered, observed or established . . . . The term 'loss' necessarily encompasses a broader meaning than the term 'damage,' and has been held synonymous with deprivation, detriment and injury." *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 217-18 (2008) (internal quotation marks and brackets omitted) (citing *Hinchliffe v. Am. Motors Corp.*, 184 Conn. 607, 613-14 (1981)). The Connecticut Supreme Court has thus held that "the words 'any ascertainable loss' . . . do not require a plaintiff to prove a specific amount of actual damages in order to make out a prima facie case." *Hinchliffe*, 184 Conn. at 612-13.

*Hinchliffe* itself strongly suggests that the Connecticut Supreme Court does not require manifestation to satisfy the Connecticut UTPA. *See In re Bridgestone\Firestone, Inc. Tires Prods. Liab. Litig.* 155 F. Supp. 2d 1069, 1097 (S.D. Ind. 2001), *rev'd on other grounds*, 288 F.3d 1012 (7th Cir. 2002) (citing *Hinchliffe* as an example of a case holding that a state

24

consumer protection statute does not require manifestation). In *Hinchliffe*, the plaintiffs alleged that the defendant had advertised a vehicle as a "four-wheel drive," when the vehicle actually had "a system for transmitting power to the wheels using a limited slip differential mechanism" that could "under certain circumstances" result in a loss of traction. *Hinchliffe*, 184 Conn. at 611. It is unclear whether the plaintiffs ever experienced the defect. What is clear is that manifestation played no role in the court's holding that the consumer suffered an "ascertainable loss" under the Connecticut UTPA where he "received something other than what he bargained for . . . . To the consumer who wishes to purchase an energy saving subcompact, for example, it is no answer to say that he should be satisfied with a . . . gas guzzler." *Id.* at 614. Meanwhile, *Neighborhood Builders, Inc. v. Town of Madison*, 294 Conn. 651, 656-58 (2010), the one case cited by New GM (*see* New GM Br. 19 n.14), does not suggest that the Connecticut UTPA has a manifestation requirement.

### iii. Iowa

There is relatively little case law addressing Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA"), if only because it was enacted relatively recently. *See* 2009 Iowa Acts 671. Under the Iowa CFA, "[a] consumer who suffers an ascertainable loss of money or property as the result of" a statutory violation may "recover actual damages." Iowa Code Ann. § 714H.5. The Act itself defines "actual damages" as "all compensatory damages proximately caused by the prohibited practice or act that are reasonably ascertainable in amount." Iowa Code Ann. § 714H.2. New GM urges the Court to read "actual damages" to require manifestation based on the Court's decision with respect to Oklahoma. But New GM cites no Iowa case law suggesting such a requirement. New GM points to *McKee v. Isle of Capri Casinos, Inc*. 864 N.W.2d 518, 532-33 (Iowa 2015), in which the Iowa Supreme Court held that the plaintiff —

who won $1.85 using a penny slot machine, but also received an erroneous message from the machine that she was entitled to a "bonus award" of approximately $41 million — had suffered no "ascertainable loss" under the Iowa CFA where she experienced no "out-of-pocket loss." (*See* New GM Br. 19 n.14). But the reason the plaintiff suffered no "ascertainable loss" due to the casino's refusal to pay her the $41 million bonus was because, under the rules of the game, she had no right to a bonus in the first place. *See McKee*, 864 N.W.2d at 532-33. The Court's holding therefore provides little guidance for this Court's purposes.

More guidance, however, may be found in the *McKee* Court's discussion of a Missouri case upholding casino patrons' claims for fraud under a statute that, "much like Iowa's, required the plaintiffs to have suffered an 'ascertainable loss.'" *Id.* at 533. The Missouri court found that casino patrons had suffered "ascertainable loss" where the casino had in fact misrepresented the rules of the game, thus reducing the value of the merchandise the plaintiffs purchased when they dropped a token into a gambling machine. *Raster v. Ameristar Casinos, Inc.*, 280 S.W.3d 120, 130-31 (Mo. Ct. App. 2009). Notably, the Iowa Supreme Court did not reject *Raster*'s reasoning that purchasing a product whose actual value fell short of what was represented would constitute an ascertainable loss under a consumer fraud statute like Iowa's. Instead, the Court held that *Raster* did not apply because, in *McKee*, the casino had *not* misrepresented the rules of the game. *See McKee*, 864 N.W.2d at 533 ("This is not a situation as in *Raster* where the casino changed the rules of the game after the plaintiffs had spent money and accumulated points, which were now devalued by the casino's rule changes . . . . Rather, in this case, the rules of the game did not provide for the bonus in question and McKee therefore did not suffer an 'ascertainable loss' when the casino refused to pay it. *See* Iowa Code § 714H.5(1)."). The Court's consideration of *Raster* suggests that the Iowa Supreme Court is open to the argument that a loss of the benefit of

one's bargain constitutes an "ascertainable loss" under the Iowa CFA.  Also significant is *this* Court's determination, discussed below, that Iowa courts do not require manifestation for purposes of common-law fraud, as the Iowa Supreme Court has stated that Iowa's Consumer Fraud Act, Iowa Code Ann. § 714.16 — for which the Iowa CFA provides a private right of action — "provides *broader* protection to the citizens of Iowa" than common-law fraud.  *State ex rel. Miller v. Hydro Mag, Ltd.*, 436 N.W.2d 617, 622 (Iowa 1989) (emphasis added).

### iv. Kentucky

The Kentucky Consumer Protection Act ("Kentucky CPA") provides that a court may "award actual damages" to an individual who suffers "any ascertainable loss of money or property," as a result of a statutory violation.  Ky. Rev. Stat. Ann. § 367.220.  While the Kentucky courts have not directly addressed what constitutes "ascertainable loss" under the Kentucky CPA, case law suggests that manifestation is not a requirement.  In *Smith v. Gen. Motors Corp.*, 979 S.W.2d 127, 131 (Ky. Ct. App. 1998), for example, the Kentucky Court of Appeals held that a jury could find that it was a violation of the Kentucky CPA to sell a vehicle as "new" and fail to disclose its pre-sale repair history — even though there were no allegations of a manifested defect.  *See also Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897, 905 n.13 (Ky. 2008) (citing *Smith* with approval).  The Sixth Circuit later followed *Smith*'s reasoning in a case involving a plaintiff who purchased a 2004 Ford truck that, unbeknownst to him, contained a 2003 engine with "widely-known problems."  *Corder v. Ford Motor Co.*, 285 F. App'x 226, 229 (6th Cir. 2008).  Although the plaintiff did not allege a manifested defect, the Sixth Circuit held that he may have suffered an "'ascertainable loss of money or property' within the meaning of the [Kentucky CPA]" because the value of the truck with the 2003 engine was less than represented.  *Id.* at 229-30 ("[I]n *Smith*, the Kentucky Court of Appeals reversed a summary

judgment for General Motors, holding that 'a fact finder might reasonably conclude that the sale of the van as "new" without disclosure of its pre-sale history constituted a false, misleading or deceptive act.'").

On top of that, "Kentucky courts construe the [Kentucky CPA] 'broadly to effectuate its purpose of curtail[ing] unfair, false, misleading or deceptive practices in the conduct of commerce.'" *Id.* at 228 (quoting *Commonwealth ex rel. Chandler v. Anthem Ins. Cos.*, 8 S.W.3d 48, 54 (Ky. Ct. App. 1999)) (some internal quotation marks omitted); *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 821 (Ky. 1988) ("[T]he Kentucky legislature created [the Kentucky CPA] which has the broadest application in order to give Kentucky consumers the broadest possible protection for allegedly illegal acts."). New GM does not cite any authority to the contrary. Indeed, all of its cited cases concern common-law tort claims, not the [Kentucky CPA]. (*See* New GM Br. 11 (citing *Line v. Astro Mfg. Co.*, 993 F. Supp. 1033, 1038 (E.D. Ky. 1998); *Wood v. Wyeth-Ayerst Labs.*, 82 S.W.3d 849, 851, 854 (Ky. 2002); *Bridgestone/ Firestone,* 288 F.3d at 1017; *Capital Holding Corp. v. Bailey*, 873 S.W.2d 187, 192 (Ky. 1994))).

### v.    Maine

Under the Maine Unfair Trade Practices Act ("Maine UTPA"), a plaintiff who "suffers any loss of money or property" due to a violation of the statute may bring an action for "actual damages." Me. Rev. Stat. tit. 5, § 213. The Maine Supreme Court has provided a broad rationale for why the Maine legislature required that a plaintiff "suffer[] a loss," explaining that the legislature wanted to ensure that the plaintiff was "personally []affected" by the "misrepresentation of a product or service." *Bartner v. Carter*, 405 A.2d 194, 201-02 (Me. 1979). The Maine courts have made clear that a plaintiff must demonstrate "pecuniary loss,"

*Bowen v. Ditech Fin. LLC*, No. 2:16-CV-00195 (JAW), 2017 WL 4183081, at \*17 (D. Me. Sept. 20, 2017), but New GM does not cite, and the Court has not found, any case law suggesting that the Maine UTPA requires a manifested defect. Accordingly, the Court will not impose one.

> ### vi. Nebraska

Nebraska's Consumer Protection Act ("Nebraska CPA") provides that a plaintiff who has been "injured" by a violation of the statute may recover "actual damages . . . and the court may in its discretion, increase the award of damages to an amount which bears a reasonable relation to the actual damages which have been sustained and which damages are not susceptible of measurement by ordinary pecuniary standards." Neb. Rev. Stat. Ann. § 59-1609. The Nebraska Supreme Court has stated that "the [Nebraska CPA] should be liberally construed to effect its purpose." *Kuntzelman v. Avco Fin. Servs. of Nebraska, Inc.*, 206 Neb. 130, 134 (1980) (quoting *Dick v. Att'y Gen.*, 83 Wash. 2d 684, 688 (1974)); *see also Powers v. Credit Mgmt. Servs., Inc.*, No. 8:11-CV-436, 2012 WL 7798959, at \*4 (D. Neb. Aug. 31, 2012) ("The [Nebraska CPA] . . . is remedial consumer legislation which is to be liberally construed."). The Supreme Court of Nebraska has also noted that "[t]he goal [of the Nebraska CPA] is to establish a uniform standard of conduct so that businesses will know what conduct is permitted and to protect the consumer from illegal conduct." *Arthur v. Microsoft Corp.*, 267 Neb. 586, 598 (2004); *see also Bassett v. Credit Bureau Servs., Inc.*, 309 F. Supp. 3d 733, 738 (D. Neb. 2017). In the absence of any authority suggesting a manifestation requirement, and in light of the Nebraska CPA's broad remedial and deterrent purpose, the Court finds that the Nebraska CPA does not require manifestation.

### vii. Ohio

The Ohio Supreme Court has held that plaintiffs bringing class-action suits under Ohio's Consumer Sales Practices Act ("Ohio CSPA") "must allege and prove that actual damages were proximately caused by the defendant's conduct." *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St. 3d 329, 335 (2015). The Court has defined "actual damages" as "equivalent" to "compensatory damages," which can "consist of both economic and noneconomic damages." *Whitaker v. M.T. Auto., Inc.*, 111 Ohio St. 3d 177, 183 (2006). That definition is in line with the language of the statute, which states that a consumer may recover "actual economic damages" under the Ohio CSPA. Ohio Rev. Code Ann. § 1345.09. Given the Ohio CSPA's overt endorsement of "economic damages," it is perhaps unsurprising that courts interpreting the Ohio CSPA have not required a manifested defect. *See Blankenship v. CFMOTO Powersports, Inc.*, 161 Ohio Misc. 2d 5, 11 (Ohio Ct. Com. Pl. 2011) (finding, in a case involving allegations of an unsafe braking system but not of manifestation, that "the plaintiff and proposed class members need not allege an actual physical injury, but are instead required under the [Ohio CSPA] to allege some type of injury, whether economic or noneconomic"); *Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 832-33, 835 (S.D. Ohio 2003) (allowing Ohio CSPA claims where class members "placed themselves at 'risk' of harm by purchasing the product," and "suffered harm because they paid for a product that differed from what it was represented to be, and thereby incurred a financial injury," and noting that "[t]he plain language of section 1345.09 . . . indicates that it is the financial harm resulting from the unfair or deceptive transaction that the statute was intended to redress").

New GM argues that, in *Felix*, the Ohio Supreme Court incorporated a manifestation requirement into the Ohio CSPA's requirement of "actual damages." (New GM Br. 11). The

Court is unconvinced.  It is true that in listing other state consumer protection statutes that required "actual damages," the *Felix* Court cited a number of cases that had incorporated a manifestation requirement into their definition of "actual damages."  *See Felix*, 145 Ohio St. 3d at 336 (citing *Meyer v. Spring Spectrum L.P.*, 45 Cal. 4th 634, 642-43 (2009); *Wallis v. Ford Motor Co.*, 362 Ark. 317, 327-28 (2005); *Tietsworth v. Harley-Davidson, Inc.*, 270 Wis. 2d 146, 169 (2004); *Frank v. DaimlerChrysler Corp.*, 741 N.Y.S.2d 9, 12-13 (2002); *Yu v. Internat'l Bus. Machs. Corp.*, 314 Ill. App. 3d 892 (2000); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 783-84, 792 (1986)).  But the Ohio Supreme Court also cited *Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 255 (1st Cir. 2010), in which the First Circuit stated that the owner of a car "whose value was now reduced because of the *risk* that the doors might malfunction" had a valid "economic injury" claim.  *Id.* at 255 (emphasis added).  Furthermore, *Felix* did not involve a product defect and did not once mention manifestation; the court discussed "actual damages" only to distinguish them from "[t]reble and statutory damages."  *Felix*, 145 Ohio St. 3d at 334-35.  The Court declines to conclude that the Ohio Supreme Court would, without discussion, incorporate a never-before-discussed requirement into a state statute while deciding a case to which such a requirement would not even be applicable.

### viii.    Oregon

Under Oregon's Unfair Trade Practices Act ("Oregon UTPA"), "a person that suffers an ascertainable loss of money or property, real or personal" as a result of a violation may "recover actual damages or statutory damages of $200, whichever is greater."  Or. Rev. Stat. Ann. § 646.638.  The Oregon Supreme Court has not addressed whether the Oregon UTPA requires a manifested defect, but it has suggested that, upon proper proof, a plaintiff may recover for diminished value.  In *Pearson v. Philip Morris, Inc.*, 358 Or. 88 (2015), a group of plaintiffs

brought an action alleging that, "contrary to defendant's 'lowered tar and nicotine' representation, Marlboro Lights did not deliver lowered tar and nicotine to smokers, but instead delivered the same levels as regular cigarettes," and sought damages for economic loss alone. *Id.* at 95-96. In evaluating the viability of their diminished value claim, the Oregon Supreme Court explained that an "ascertainable loss" under the Oregon UTPA connotes a loss that is "objectively verifiable, much as economic damages in civil actions must be." *Id.* at 117. "As required for their private [Oregon UTPA] action," the plaintiffs had asserted that they "suffered ascertainable losses . . . because they paid for cigarettes they believed were inherently lower in tar and nicotine than defendants' regular cigarettes but received cigarettes that would deliver lowered tar and nicotine only if smoked in particular ways.'" *Id.* at 118 (internal quotation marks omitted). The Supreme Court held, however, that because there was no evidence that Marlboro Lights were priced differently from Marlboro's regular cigarettes, the plaintiffs had not proved diminished value. *Id.* at 119-20. In so holding, the Supreme Court nonetheless implied that such damages *would* be available to plaintiffs upon proper proof. *See also id.* at 144 (Walters, J., concurring) ("When a plaintiff establishes that he or she purchased a product that was not as represented and that he or she suffered diminished value as a result, the purchaser demonstrates ascertainable loss sufficient to permit a claim under the [Oregon UTPA]."). The only cases cited by New GM involved common-law claims and are therefore irrelevant. (*See* New GM Br. 20 (citing *Staley v. Taylor*, 994 P.2d 1220, 1225 (Or. Ct. App. 2000) (discussing common-law fraud); *Lowe v. Philip Morris USA, Inc.*, 183 P.3d 181, 184 (Or. 2008) (discussing common-law negligence))). New GM has not cited, and this Court has not found, any case law suggesting the Oregon UTPA requires a manifested defect.

### ix. Rhode Island

Under Rhode Island's Unfair Trade Practices and Consumer Protection Act ("Rhode Island CPA"), a person who "suffers any ascertainable loss of money or property, real or personal" as the result of a violation may "recover actual damages or two hundred dollars ($200), whichever is greater." R.I. Gen. Laws § 6-13.1-5.2. The Supreme Court of Rhode Island has explained that, in enacting the Rhode Island CPA, "the Legislature intended to declare unlawful a broad variety of activities that are unfair or deceptive, as well as to provide a remedy to consumers who have sustained *financial losses* as a result of such activities." *Long v. Dell, Inc.*, 93 A.3d 988, 1000 (R.I. 2014) (emphasis added) (citing *Park v. Ford Motor Co.*, 844 A.2d 687, 692 (R.I. 2004)). Hence, "the [Rhode Island CPA] is a remedial act and it should be liberally construed." *Id.* (internal quotation marks and citations omitted). Neither the parties nor this Court have found any case law bearing on manifestation under the Rhode Island CPA. Given the absence of any such authority, and the breadth of the statute, the Court will not impose a manifestation requirement on the Rhode Island CPA.

### x. South Dakota

Under South Dakota's Deceptive Trade Practices and Consumer Protection Law ("South Dakota CPL"), "[a]ny person who claims to have been adversely affected" by a violation may "bring a civil action for the recovery of actual damages suffered as a result of such act or practice." S.D. Codified Laws § 37-24-31. No South Dakota Supreme Court or intermediate appellate case points to the parameters of "adversely affected" or "actual damages." Indeed, no case describes whether the provisions of the South Dakota CPL should be interpreted broadly or narrowly. New GM nevertheless insists that the Court should find that South Dakota requires manifestation for South Dakota CPL claims based on *BP Painting, Inc. v. DaimlerChrysler*

*Corp.*, No. 01-350, 2003 WL 26134396 (S.D. Cir. Ct. Mar. 27, 2003), in which the plaintiffs claimed their vehicles were defective because the defendants had not installed "brake shift interlock" ("BSI") devices and the trial court held that the plaintiffs did not have a "legally cognizable tort injury." The Court is not bound by *BP Painting*, however, and there is good reason not to attribute too much weight to the decision, as the court did not specifically analyze the language of the South Dakota CPL or any South Dakota case law involving the statute. Indeed, the only substantive South Dakota authority the court relied on was a case in which the South Dakota Supreme Court had held that "Class Members must present at least one viable method for computing damages on a class-wide basis." *Id.* (quoting *In re S. Dakota Microsoft Antitrust Litig.*, 657 N.W.2d 668, 677 (S.D. 2003)).

In any event, the Court does not read *BP Painting* as broadly as does New GM. (*See* New GM Br. 13-14). It is true that the court relied on *Ziegelmann v. DaimlerChrysler Corp.*, 649 N.W.2d 556 (N.D. 2002), which Plaintiffs concede required a manifested defect, but the trial court did not expressly hold that a manifested defect was required to bring a claim. The court instead adopted *Ziegelmann* for the proposition that a plaintiff has no injury where his or her *only* claim was that a "vehicle might malfunction and cause injury in the future." *BP Painting*, 2003 WL 26134396. In so finding, the trial court pointed to ways in which the plaintiffs might have satisfied an injury requirement: One was a manifested defect, but another was a diminution in the value of the vehicle. Significantly, the plaintiffs there had provided no evidence of diminution in value; in fact, the court pointed out that class representatives who had sold their cars "admit[ted] that there was no diminution in value due to the [alleged defect]." *Id.* Nonetheless, dismissing

plaintiffs' diminution in value claim because of a lack of proof, the court implied that the plaintiffs would have a cognizable injury if they provided evidence of diminished value.[5]

BP Painting is thus aligned with, rather than opposed to, a District of South Dakota case in which the court held that the plaintiffs could seek the cost of replacing pipe that allegedly contained defects making it "subject to premature failure," even though they did not allege that the pipe had in fact failed. *Nw. Pub. Serv. v. Union Carbide Corp.*, 236 F. Supp. 2d 966, 968 (D.S.D. 2002). In light of the South Dakota CPL's relatively expansive language, and the absence of any contrary authority, the Court finds that South Dakota's South Dakota CPL does not require manifestation.

### xi. Tennessee

Under the Tennessee Consumer Protection Act ("Tennessee CPA"), "[a]ny person who suffers an ascertainable loss of money or property," as the result of a violation may "recover actual damages." Tenn. Code Ann. § 47-18-109. The Tennessee Supreme Court has placed certain limits on the type of loss an individual must suffer under the Tennessee CPA: The loss must be "measurable," *Discover Bank v. Morgan*, 363 S.W.3d 479, 496 (Tenn. 2012), and it

---

[5]     Admittedly, one aspect of the *BP Painting* Court's decision could be read to suggest that manifestation is required — namely, its statement, in rejecting the plaintiffs' request for the costs of installing BSI, that while the cost of such installation might be measurable, "this does not establish that there is an 'injury in fact.'" *BP Painting*, 2003 WL 26134396. In the Court's view, however, that statement is better read as a reflection of the court's skepticism that an absence of BSI constituted a defect at all. *See e.g.*, *BP Painting*, 2003 WL 26134396, at n.1 ("In 2001, after the suit was filed, [plaintiffs] purchased a used 2000 Chrysler Voyager minivan. When they purchased the van they were aware that it did not have a BSI. However, they liked some of the van's other features so they purchased it anyway."). Diminution in market value due to the presence of an alleged defect is proof of damage, but the mere allegation that a vehicle requires the installation of BSI is, by itself, evidence of neither defect nor damage. The court seemed unwilling to let plaintiffs recover installation costs absent independent proof that the absence of BSI was in fact a defect. *See id.* ("[T]he cost of installing a BSI in every vehicle, is a calculation of the cost of making a change in every vehicle to include a BSI device, not a cost of repairing any existent damages to the vehicles caused by the lack of a BSI.").

must "have tangible economic value." *Akers v. Prime Succession of Tenn., Inc.*, 387 S.W.3d 495, 509-10 (Tenn. 2012). The Tennessee Supreme Court has thus excluded claims for emotional loss. *See id.* But the Tennessee Supreme Court has allowed claims where the only loss alleged was a diminution in value. *See Morris v. Mack's Used Cars*, 824 S.W.2d 538, 538-39, 541 (Tenn. 1992) (allowing a Tennessee CPA claim to go forward where the seller did not disclose to the purchaser that the truck had been reconstructed and where the purchaser's only claim for damages was a diminution in the vehicle's fair market value); *see also Jones v. Buddy Gregg Motor Homes*, Inc., No. 3:08-CV-245, 2011 WL 111242, at *2 (E.D. Tenn. Jan. 13, 2011) (noting that Tennessee courts "measure the amount of damages [under the Tennessee CPA] by the diminution in value (to the item) caused by the defects"). New GM suggests that Tennessee's requirements of "actual harm" and "tangible economic value" exclude Plaintiffs' claims, but Plaintiffs' overpayment claims easily fit within the scope of damages cognizable under the Tennessee CPA. (*See e.g.*, 5ACC ¶ 1202). Moreover, the Tennessee Supreme Court has stated that "[t]he [Tennessee CPA] is to be liberally construed to protect consumers and others from those who engage in deceptive acts or practices." *Morris*, 824 S.W.2d at 540.

### xii. Washington

Under the Washington Consumer Protection Act ("Washington CPA"), "[a]ny person who is injured in his or her business or property by a violation of [the Washington CPA] . . . . [may] recover the actual damages sustained by him or her." Wash. Rev. Code Ann. § 19.86.090. The Washington Supreme Court has stated that the "property injuries compensable under the [Washington CPA] are relatively expansive," *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wash. 2d 412, 431 (2014), and that "the injury requirement is met upon proof the plaintiff's property interest or money is diminished because of the unlawful conduct even if the expenses caused by

the statutory violation are minimal," *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 57 (2009) (internal quotation marks and citations omitted).  New GM has cited and the Court has found no cases suggesting that the Washington CPA requires a manifested defect.  *Hangman Ridge Training Stables,* 719 P.2d at 539, merely states that the Washington CPA requires a "specific showing of injury."  Moreover, the Western District of Washington recently reviewed Washington law to determine whether a manufacturer could be held liable under the Washington CPA for a defect that did not manifest itself until after the expiration of the warranty period and found no such case law.  *See Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1135 (W.D. Wash. 2010).  "[A]bsent a signal from Washington courts," the district court refused to impose such a requirement.  This Court follows that court's lead.

### xiii.    West Virginia

The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") provides that "any person who purchases or leases goods or services and thereby suffers an ascertainable loss of money or property" may "recover actual damages."  W. Va. Code Ann. § 46A-6-106.  The West Virginia Supreme Court has held that, "[i]f the consumer proves that he or she has purchased an item that is different from or inferior to that for which he bargained, the 'ascertainable loss' requirement is satisfied."  *In re W. Va. Rezulin Litig.*, 214 W. Va. 52, 75 (2003) ("Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property.  That loss is ascertainable if it is measurable even though the precise amount of the loss is not known." (citing *Hinchliffe*, 184 Conn. at 613)).  At least one district court has held that a plaintiff "suffered a loss" under the West Virginia CCPA "when it purchased Revolution Helmets at an inflated price — relying on Riddell's safety claims — instead of purchasing the lower-priced traditional helmets."  *Midwestern Midget Football Club*

*Inc. v. Riddell, Inc.*, No. 2:15-CV-00244, 2016 WL 3406129, at *6 (S.D.W. Va. June 17, 2016).

Although the court did not analyze West Virginia law in so holding, its conclusion is consistent

with *In re W. Virginia Rezulin Litig.* and not inconsistent with any case law cited by New GM or

found by this Court.[6]  Moreover, the West Virginia Supreme Court has stated that the West

Virginia CCPA should be "liberally construed" because it is "a remedial statute intended to

protect consumers from unfair, illegal and deceptive business practices."  *Fleet v. Webber*

*Springs Owners Ass'n, Inc.*, 235 W. Va. 184, 192 (2015) (internal quotation marks omitted).

## 2. Fraudulent Concealment

Next, the Court turns to whether manifestation is required for Plaintiffs' common-law

fraud claims.  In its prior Opinions, the Court concluded that a plaintiff need not plead

manifestation to state a fraudulent concealment claim in a state where "benefit-of-the-bargain

damages are available" for fraud and there is no case law imposing "a manifest defect

requirement."  *See TACC Op.*, 2016 WL 3920353, at *40 (discussing Virginia law); *cf. FACC*

*Op.*, 257 F. Supp. 3d at 438 (noting that Pennsylvania case law "suggest[ed] that a plaintiff may

not even have standing to bring those claims in the absence of a manifested defect" and that

Plaintiffs had cited no Pennsylvania common-law fraud cases where "the loss of one's benefit of

the bargain suffice[d] as an injury").  Applying that logic here, the Court concludes that

manifestation is not required for fraud claims in the twenty-three disputed states.

---

[6]     New GM cites to two Southern District of West Virginia opinions regarding the same class action, *Belville v. Ford Motor Co.*, 13 F. Supp. 3d 528, 542-34 (S.D.W. Va. 2014) ("*Belville I*"), and *Belville v. Ford Motor Co.*, 60 F. Supp. 3d 690, 700 (S.D.W. Va. 2014) ("*Belville II*").  (New GM Br. 15).  But *Belville I* did not specifically address claims arising under any state's consumer protection statute, while *Belville II* explicitly "decline[d] to dismiss" such statutory claims because there was "too much variability in the [different states'] statutes for [the court] to broadly declare what must be alleged in order to state a claim."  60 F. Supp. 3d at 700.

For the following eighteen of those states, the Court need do little more than cite authority providing that benefit-of-the-bargain damages are available for common-law fraud claims (addressing any potentially contrary authority or authority on which New GM relies in the margin):

- **Alaska:** *In re May*, 1993 WL 337469, at *1 (9th Cir. 1993) (noting that the Alaska Supreme Court has found that in fraud cases a plaintiff is entitled to the benefit of the bargain or "the difference between the value of what he has parted with and the value of what he has received in the transaction"); *Turnbull v. LaRose,* 702 P.2d 1331, 1335-36 (Alaska 1985) (finding that where a seller misrepresented the rental prospects of a building, the buyer was entitled to "the benefit of the bargain").[7]

- **Arizona:** *Ulan v. Richtars*, 8 Ariz. App. 351, 358 (1968) (citing *Carrel v. Lux*, 101 Ariz. 430, 441 (1966); *Steele v. Vanderslice*, 90 Ariz. 277, 286 (1961); and *Lutfy v. R. D. Roper & Sons Motor Co.*, 57 Ariz. 495, 503 (1941)); *see also Smith v. Don Sanderson Ford, Inc*., 7 Ariz. App. 390, 392 (1968) ("The benefit of the bargain rule is the yardstick adopted by the Arizona courts in fraud cases.").[8]

- **Colorado:** *Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 677 (Colo. 1994) (en banc) (allowing "recovery in fraud . . . to the extent that the value of the contractual benefits conferred falls short of the value as represented" (footnote omitted)); *see also Niemi v. Lasshofer*, 770 F.3d 1331, 1355 (10th Cir. 2014) (noting that "the benefit of the bargain rule" provides "[t]he measure of damages" for fraud under Colorado law).[9]

- **Connecticut:** *Miller v. Appleby*, 183 Conn. 51, 57 (1981) ("The general rule in Connecticut in awarding damages [for fraud] is that the plaintiff purchaser is entitled to recover the difference in value between the property actually conveyed and the value of the property as it would have been if there had been no false representation,

---

[7] New GM cites *Jarvill v. Porky's Equip., Inc*., 189 P.3d 335, 336-37 (Alaska 2008), a case in which the Alaska Supreme Court held that the limitations period for tort claims of negligence and product defect did not begin to run until a boat's faulty hull actually cracked and the boat sank. But *Jarvill* is inapposite for the same reason that *Jones*, discussed above, was inapposite, and because the case did not involve allegations of fraud. New GM also cites *Shehata v. Salvation Army*, 225 P.3d 1106, 1114 (Alaska 2010), but that case simply holds that "damages" are an element of common-law fraud.

[8] New GM relies on *Nielson v. Flashberg*, 419 P.2d 514, 517-18 (Ariz. 1966), but that case merely holds that fraud requires "consequent and proximate injury."

[9] New GM's claim that fraud, under Colorado law, "requires that 'the reliance resulted in damage to the plaintiff,'" (New GM Br. 25 n.17 (citing *Bristol Bay Prods, LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013)), is not to the contrary.

i.e., 'the benefit of the bargain' damages, together with any consequential damages resulting directly from the fraud."); *accord Bailey Emp't Sys., Inc. v. Hahn*, 545 F. Supp. 62, 73 (D. Conn. 1982), *aff'd*, 723 F.2d 895 (2d Cir. 1983).[10]

- **Georgia:** *Mitchell v. Backus Cadillac-Pontiac, Inc.*, 274 Ga. App. 330, 333 (2005) (holding that the measure of "actual damages" in a fraud claim "is the difference between the actual value of the property at the time of purchase and what the value would have been if the property had been as represented"); *accord Millirons v. Dillon*, 28 S.E. 385, 385-86 (Ga. 1897); *see also, e.g.*, *Bennett v. D. L. Claborn Buick, Inc.*, 202 Ga. App. 308, 309-10 (1991) (rejecting an argument that the appellant had suffered no damages where he alleged that a car had been misrepresented to him as new when it in fact had 5,268 miles).[11]

- **Idaho:** *April Beguesse, Inc. v. Rammell*, 156 Idaho 500, 511 (2014) (collecting cases).[12]

- **Indiana:** *Sanchez v. Benkie*, 799 N.E.2d 1099, 1102 (Ind. Ct. App. 2003) ("Generally, the rule for the measure of damages for fraud in the sale or exchange of property is the difference between the market value of the property received by the party allegedly defrauded and the value of such property at the time, had it been as represented to be by the vender."); *Lightning Litho, Inc. v. Danka Indus., Inc.*, 776 N.E.2d 1238, 1242-43 (Ind. Ct. App. 2002) ("[W]e join those jurisdictions that measure damages in fraudulent inducement and fraudulent misrepresentation cases by the benefit of the bargain rule."); *see also, e.g.*, *See Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 137 (Ind. 1988) (affirming an award of damages in a case involving a claim of fraud based on the misrepresentation as "new" of an automobile that had in fact been previously damaged where the plaintiffs did not allege that the

---

[10]     New GM relies on *Sturm v. Harb Dev., LLC*, 2 A.3d 859, 872 (Conn. 2010), but it merely holds that a party must be "injur[ed]" by the defendant's alleged fraud to recover.

[11]     *Edel v. Southtowne Motors of Newnan II, Inc.* 789 S.E.2d 224, 228 (Ga. Ct. App. 2016), cited by New GM, supports that same conclusion.  In that case, the court rejected claims based on the sale of an allegedly unfair warranty where the plaintiffs failed to show any damages.  But the rejected claim was made under Georgia's Fair Business Practices Act, not common-law fraud.  By contrast, the court upheld the plaintiffs' claim that the car had been fraudulently sold to them where their only alleged injury was that "they would have never purchased the vehicle had they known it was a manufacturer buyback (that had previously been in an accident), and that the vehicle's market value was substantially impaired."  *Id.* at 376-77, 382.

[12]     New GM's cases do not support a manifestation requirement.  *See Country Cove Dev., Inc. v. May*, 150 P.3d 288, 293 (Idaho 2006) (stating that a plaintiff must prove "consequent and proximate injury" to sustain a fraud claim); *Jackson v. Wood*, 124 Idaho 342, 343 (1993) (holding, in a case involving a consumer protection statute, not common-law fraud, that the plaintiffs had failed to show an "ascertainable loss" where they resold fraudulently sold gasoline "for a profit").

previous damage manifested in any way and where the plaintiffs sought damages solely on the grounds that they purchased the truck under the belief it was a "new" truck and paid the "price of a new vehicle").[13]

- **Iowa:** *B & B Asphalt Co. v. T. S. McShane Co.*, 242 N.W.2d 279, 285 (Iowa 1976) (citing *LaMasters v. Springer*, 251 Iowa 69, 76-77 (1959)); *see also Midwest Home Distrib., Inc. v. Domco Indus. Ltd.*, 585 N.W.2d 735, 739 (Iowa 1998).[14]

- **Kansas:** *Walker v. Fleming Motor Co.*, 195 Kan. 328, 332 (1965); *see also K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1159 (10th Cir. 1985) ("Kansas follows the 'benefit of the bargain' rule in awarding damages for fraud."); *Hoffman v. Haug*, 242 Kan. 867, 872(1988) (same).[15]

- **Montana:** *Denny v. Brissonneaud*, 161 Mont. 468, 473 (1973); *see also Poulsen v. Treasure State Indus., Inc.*, 192 Mont. 69, 83 (1981) (holding that the fraud plaintiffs were entitled to the "benefit of their bargain that is, the benefit which defendants promised to deliver" (citing *Moore v. Swanson*, 171 Mont. 160 (1976)); *accord Bertram v. McCrea*, 299 Mont. 546 (2000) (unpublished opinion).[16]

- **Nebraska:** *Camfield v. Olsen*, 183 Neb. 739, 742-43 (1969); *see also Little v. Gillette*, 218 Neb. 271, 279, 354 N.W.2d 147, 153 (1984) (holding, in a fraudulent inducement case, that "the party's recovery is based on the difference in value of the property as fraudulently represented and its value in actuality").[17]

---

[13]    New GM's authority is not to the contrary. *Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind. 1996), merely states that "injury" is an element of fraud. And *Kantner v. Merck & Co., Inc*., No. 49D060411PL002185, 2007 WL 3092779 (Ind. Marion Cnty. Super. Ct. Apr. 18, 2007), concerns damages under Indiana's consumer-protection law — a context "in which 'harm' (or 'injury') is defined outside the common law." *FACC*, 257 F. Supp. 3d at 438.

[14]    New GM cites *LaMasters*, 251 Iowa at 72, but that case simply held that an action for fraud requires "resulting injury."

[15]    *Porter* , 2005 WL 3719630 cited by New GM, did not involve common-law fraud (and is inapposite for the reasons discussed above, in connection with the Kansas CPA). *Kelly v. VinZant*, 287 Kan. 509, 515 (2008), merely holds that damage is an element of fraud.

[16]    New GM relies on *Durbin v. Ross*, 287 Mont. 463. 469 (1996), but *Durbin* merely holds that common-law fraud requires "consequent and proximate injury caused by the reliance on the representation."

[17]    The one case New GM cites, *Four R Cattle Co. v. Mullins*, 253 Neb. 133, 134 (1997), simply states that a plaintiff bringing a common-law fraud claim must have "suffered damage as a result" of the fraud.

- **Nevada:** *Davis v. Beling*, 128 Nev. 301, 317 (2012); *Pro-Brokers, Inc. v. Muhlenberg*, 124 Nev. 1501(2008) (unpublished opinion); *Goodrich & Pennington Mortg. Fund, Inc. v. J.R. Woolard, Inc.*, 120 Nev. 777, 782-83 (2004).[18]

- **New Mexico:** *Register v. Roberson Const. Co.*, 106 N.M. 243, 245-46 (1987); *see also Advanced Optics Elecs., Inc. v. Robins*, 769 F. Supp. 2d 1285, 1304 (D.N.M. 2010) (holding, under New Mexico law, that "'[a] benefit of the bargain' award . . . properly compensates the defrauded party.").

- **Rhode Island:** *Kooloian v. Suburban Land Co.*, 873 A.2d 95, 100 (R.I. 2005) (approving a trial court's award of "the difference between the contract price and the market value of the property as of date of the breach, plus interest and reasonable expenses" in a fraud case (internal quotation marks omitted)); *Caseau v. Belisle*, No. PC 01-4441, 2005 WL 2354135, at *9 (R.I. Super. Sept. 26, 2005) ("It is axiomatic that the 'benefit of the bargain' rule is the proper measure of damages in a claim for fraud or misrepresentation." (citing *Bogosian v. Bederman*, 823 A.2d 1117, 1119 (R.I. 2003))); *Fleet Nat. Bank v. Anchor Media Television, Inc.*, 45 F.3d 546, 550 n.3 (1st Cir. 1995) ("Rhode Island law . . . applies the 'benefit of the bargain' rule in assessing damages for fraudulent misrepresentations inducing a party to contract for the purchase of property." (citing *Barnes v. Whipple*, 68 A. 430 (R.I. 1907)).[19]

- **South Dakota:** *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114, 119 (S.D. 1977); *see also In re Adelman*, 90 B.R. 1012, 1023 (Bankr. D.S.D. 1988) (noting that "the benefit-of-the-bargain rule" is "the proper measure of damages for deceit, fraud, and misrepresentation in South Dakota" (citing *Schmidt*, 261 N.W.2d at 119; *Ward v. Dakota Tele. and Elec. Co.*, 49 S.D. 135, 148-49 (1925); and *Hallen v. Martin*, 40 S.D. 343, 352-53 (1918)).[20]

- **Tennessee:** *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 233 (Tenn. Ct. App. 1976); *see also Haney v. Copeland*, No. E2002-845-COA-R3-CV,2003 WL 553548, at *3 (Tenn. Ct. App. Feb. 27, 2003) ("[T]he proper measure of the plaintiffs' general damages [in a fraudulent misrepresentation case] is the benefit of the bargain rule." (quoting *Haynes*, 546 S.W.2d at 233); *Ford Motor Co. v. Lonon*,

---

[18]    *Chen v. Nev. State Gaming Control Bd.*, 116 Nev. 282, 284 ( 2000), cited by New GM, merely states that common-law fraud requires that "the misrepresentation proximately caused damages."

[19]    *Zaino v. Zaino*, 818 A.2d 630, 638 (R.I. 2003), the one case cited by New GM, merely states that common-law fraud requires "that the plaintiff justifiably relied thereon [a representation of the defendant] to his or her damage."

[20]    The only authority that New GM cites is *BP Painting*, 2003 WL 26134396, which the Court finds inapposite substantially for the reasons discussed above, in connection with the South Dakota CPL, and *Kobbeman v. Oleson*, 574 N.W.2d 633, 635 (S.D. 1998), which merely states that "fraud require[s] damages."

217 Tenn. 400, 425 (1966) (holding that damages in a fraudulent misrepresentation case should include "the difference between the actual value of the product, and what it could have been worth as represented"), *abrogated on other grounds by First Nat. Bank of Louisville v. Brooks Farms*, 821 S.W.2d 925 (Tenn. 1991); *Shwab v. Walters*, 251 S.W. 42, 44 (Tenn. 1923) (holding, in a misrepresentation case, that "the measure of damages is the difference between the actual value of the thing sold and its value had the facts been as represented").[21]

- **Vermont:** *Conover v. Baker*, 134 Vt. 466, 471 (1976); *see also Cushman v. Kirby*, 148 Vt. 571, 578 (1987) (noting that "a party seeking damages for fraud is entitled to recover such damages as will compensate him for the loss or injury actually sustained and place him in the same position that he would have occupied had he not been defrauded," that is, "the benefit of [the] bargain" (internal quotation marks and ellipses omitted) (citing *Larochelle v. Komery*, 128 Vt. 262, 268 (1969))).[22]

- **Washington:** *McInnis & Co. v. W. Tractor & Equip. Co.*, 63 Wash. 2d 652, 658 (1964) (citing *Salter v. Heiser*, 39 Wash. 2d 826 (1951), and *Scroggin v. Worthy*, 51 Wash. 2d 119 (1957)); *see also Enger v. Richards*, 134 Wash. App. 1068, 2006 WL 2742513, at *4 (Wash. Ct. App. 2006) (unpublished opinion) ("[Washington] Courts generally apply the benefit of the bargain rule when plaintiffs seek recovery for general damages caused by misrepresentation or fraud.").[23]

The remaining five states require some additional discussion, to which the Court now turns.

### i. Minnesota

"Minnesota subscribes to the rule that in transactions giving rise to a misrepresentation action, the damages are . . . the difference between the actual value of the property received and the price paid for the property." *B.F. Goodrich Co. v. Mesabi Tire Co.*, 430 N.W.2d 180, 182 (Minn. 1988); *accord Strouth v. Wilkison*, 302 Minn. 297, 300 (1974). The rule — known as the "out-of-pocket" rule — "works well where the plaintiff has received property in reliance on the

---

[21] *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006), the only authority cited by New GM, merely states that an element of fraud is "injury caused by reasonable reliance on the representation."

[22] *Union Bank v. Jones*, 411 A.2d 1338, 1342 (Vt. 1980), the only case cited by New GM, merely states that common-law fraud requires "damage."

[23] *Baddeley v. Seek*, 138 Wash. App. 333, 339 (2007), cited by New GM, merely states that an element of fraud is that "the plaintiff had damages."

misrepresentation, as in sales of goods . . . and the property received serves as the reference point for measuring the damages." *B.F. Goodrich Co.*, 430 N.W.2d at 183. The out-of-pocket rule differs slightly from the benefit-of-the-bargain rule: Under the latter, a plaintiff may "recover the difference between the value of the property received and the value to plaintiff that the property *would have had* if the representation had been true," while under the former, a plaintiff may recover "the difference between the actual value of the property received and the *price paid* for the property." *Id.* at 182 (emphases added). But that difference is irrelevant to the manifestation inquiry because, either way, the plaintiff may recover for a difference in value between what was purchased and what was received.

New GM relies on *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 504 (8th Cir. 2009), in which the Eighth Circuit rejected the plaintiffs' argument that they had not received the benefit of the bargain where they had paid for a drop-side crib but the drop-side crib had been found to be unsafe. The court held that "because the O'Neils' crib ha[d] not exhibited the alleged defect, [the plaintiffs] ha[d] necessarily received the benefit of their bargain." *Id.* The case, however, did not involve any claims for common-law fraud. *See id.* at 503. Nor did it rely on any Minnesota case law; instead it cited to a number of federal cases, including *Briehl*, 172 F.3d at 630, that did not themselves analyze Minnesota case law. *Id.* Finally, this Court previously noted that some jurisdictions have recently "walked back their stance on the [manifestation] issue," *FACC Op.*, 257 F. Supp. 3d at 423, citing to a 2011 Eighth Circuit opinion, *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 608 (8th Cir. 2011). The *Zurn* Court rejected the defendants' argument that "the plaintiffs could not show a 'current harm' based on brass piping that 'contained a defect upon installation' because that defect had not yet 'caused external damage.'" *FACC Op.*, 257 F. Supp. 3d at 423 (quoting *Zurn*, 644 F.3d at 608). At issue in *Zurn*

were brass fittings used in plumbing systems that the plaintiffs argued were "doomed to leak . . . because of their susceptibility to stress corrosion cracking (SCC) which results from a combination of pressure and corrosion." *Zurn*, 644 F.3d at 608-09. The defendants argued that a group of plaintiffs known as the "dry plaintiffs" had suffered no cognizable injury because their fittings had not yet leaked. *Id.* at 616. The Eighth Circuit held, however, that "[t]he dry plaintiff claims are distinct from any brought by hypothetical 'no injury plaintiffs,' because the dry plaintiffs had alleged that their brass fittings exhibited a defect." *Id.* at 617. Indeed, "[t]he homeowners argue[d] that SCC inevitably beg[an] to affect Zurn's brass fittings upon their installation and exposure to water." *Id.* at 609. The Eighth Circuit sought to reconcile *Zurn* with *O'Neil* by reasoning that the plaintiffs in *Zurn* alleged an exhibited defect while the plaintiffs in *O'Neil* had not. *See id.* at 616. New GM relies on that reasoning, arguing that "all the products [in *Zurn*] had manifested a defect because the pipe fittings began corroding upon contact with water." (New GM Br. 7-8).

But even if New GM is right that the pipe fittings' immediate corrosion distinguishes *Zurn* from the present case, it is a distinction without a difference. States that require manifestation have equated the manifestation of a defect with the malfunctioning or failure to perform of the product. *See, e.g.*, *Angus v. Shiley Inc.*, 989 F.2d 142, 147 (3d Cir. 1993) ("[A] purchaser of a properly functioning product can[not] recover damages."); *Lee*, 950 F. Supp. at 171-74 (dismissing plaintiffs' claims of inherently defective detachable fiberglass roofs for failure to plead any damages beyond those that were economic in nature); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 603 (S.D.N.Y. 1982) (finding no cause of action for a defect when tires performed to the plaintiffs' satisfaction); *Pfizer v. Farsian*, 682 So. 2d 405, 407 (Ala. 1996) (holding that a plaintiff's belief that a product that is "presently functioning

normally" could fail in the future is not, without more, a legal injury sufficient to support plaintiff's claim). In *Zurn*, the dry plaintiffs did not allege that their pipe fittings had malfunctioned, even though they claimed they were inherently defective. So too, the plaintiffs in *O'Neil* did not claim that their crib had malfunctioned, even though they claimed that the crib contained inherently defective hardware, and Plaintiffs in this case allege that all vehicles contained an inherent defect, even though not all had manifested it. *Compare Zurn*, 644 F.3d at 622-23, *with O'Neil*, 574 F.3d at 502-03. The Court thus agrees with Judge Gruender's dissent in *Zurn* that *Zurn* represented a departure from *O'Neil*. *See* 644 F.3d at 622-23 (Gruender, J., dissenting) (noting that the O'Neils had in fact "expressly alleged" that their product was "defective" and finding that the claims of the O'Neils and "dry plaintiffs" were alike because their products "functioned as intended from the date of purchase to the date they filed this litigation").[24]

### ii. Mississippi

The Mississippi Supreme Court has held that "the measure of damages in fraud and deceit cases" is the "'benefit-of-the-bargain' rule." *Davidson v. Rogers*, 431 So. 2d 483, 485 (Miss. 1983); *see also Wall v. Swilley*, 562 So. 2d 1252, 1256 (Miss. 1990) ("In cases [involving material misrepresentation] . . . , the law seeks to place the victim in the economic position he would have enjoyed had he received what he bargained for."). Moreover, *Holman*, discussed

---

[24] Finally, New GM points to a Minnesota trial court opinion rejecting a common-law fraud claim where the plaintiff alleged that his bed "contain[ed] a defect that traps moisture and causes mold to grow." *Carey v. Select Comfort Corp.*, No. 27CV 04-015451, 2006 WL 871619, at *1 (Minn. Dist. Ct. Jan. 30, 2006). The judge in *Carey*, however, appeared to be driven by some skepticism that the product at issue was defective at all. *See id.* at *2 ("In fact, [the plaintiff's complaint] does not allege a specific instance of mold growth in any bed."). The Court thus gives little weight to the *Carey* opinion.

above, provides additional data suggesting that the state's highest court would not require manifestation for a common-law fraud claim. *See* 972 So. 2d at 568.

In arguing otherwise, New GM cites *Jarman*, 98 F. Supp. 2d at 758 (New GM Br. 8-9), but the Court declines to follow *Jarman*. Like the Seventh Circuit's decision in *Bridgestone/Firestone*, *Jarman* neither cited nor discussed any Mississippi state case law, relying instead on the Eighth Circuit's opinion in *Briehl*, which itself cited to just one federal case involving Mississippi law, *Lee*, 950 F. Supp. at 172. *Lee*, in turn, did not consider common-law fraud.[25] Furthermore, the courts in both *Jarman* and *Briehl* appear to have been driven by some skepticism that the products at issue were defective at all. *See Jarman*, 98 F. Supp. 2d at 767 (noting that the plaintiff had brought suit just eight days after purchasing the product although the product's label advised that results could take "1-4 months or longer" and that "nowhere in his complaint does plaintiff allege, other than conclusorily, either that the product actually failed to perform in the manner represented or that he suffered any damage as a consequence of his use of [the product]"); *Briehl*, 172 F.3d at 626 (noting that "[t]he Plaintiffs do not allege that the [brake system] is incapable of stopping the vehicles or that [the brake system] has violated any national safety standards" and finding that the plaintiffs had failed to calculate any damages due to lost resale value); *see also TACC Op.*, 2016 WL 3920353, at *34 (discussing and partially

---

[25] *Lee* considered claims of negligence and strict liability, and there is reason to think that these distinct torts should be treated differently when it comes to manifestation and the recovery of benefit-of-the-bargain damages. For instance, the court in *Lee* reasoned that the plaintiffs could not recover for purely economic loss because products liability and contract law had to be kept "in separate spheres [in order] to maintain a realistic limitation on damages." *Id.* at 172. But when it comes to fraud, parties' contractual allocations of risk need not be protected from the interference of tort law "because parties to a contract do not usually treat the chance that they are lying to each other as a subject for their contract to allocate." Restatement (Third) of Torts: Liab. for Econ. Harm § 9 (Tentative Draft No. 2 (April 7, 2014)). Hence, as this Opinion makes clear, many states, including Mississippi, allow recovery for benefit-of-the-bargain damages in the case of fraud.

discounting the persuasiveness of cases where the court was driven by skepticism that a defect existed at all). Finally, the single Mississippi Supreme Court case cited by New GM is not contrary to *Holman*. *See Spragins v. Sunburst Bank*, 605 So. 2d 777, 780 (Miss. 1992) (noting that "consequent and proximate injury" is an element of fraudulent concealment).

### iii. New Jersey

New Jersey courts measure damages in fraud cases by applying one of two methods: either the benefit-of-the-bargain rule or the out-of-pocket rule. *See, e.g.*, *Zeliff v. Sabatino*, 15 N.J. 70, 74 (1954). Both approaches "seek to make an injured party whole and . . . are designed to fairly and reasonably compensate that injured party for the damages or losses proximately caused by the alleged consumer fraud." *Romano v. Galaxy Toyota*, 399 N.J. Super. 470, 483 (App. Div. 2008) (internal quotation marks omitted). For the reasons discussed above, in connection with Minnesota law, the difference between the two does not matter to the manifestation inquiry.

The cases cited by New GM are inapplicable. Two of those cases — *In re Ford Motor Co. Ignition Switch Products Liability Litigation*, 2001 WL 1266317, at *22 (D.N.J. Sept. 30, 1997), and *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 460 (D.N.J. 1998) — lack any explicit discussion of New Jersey law. And the claims in *Walus v. Pfizer, Inc.*, 812 F. Supp. 41 (D.N.J. 1993), were brought under the New Jersey Products Liability Act, a statute that does not recognize claims that include pure economic loss. *See Crouch v. Johnson & Johnson Consumer Co.*, No. CIVA09-CV-2905 (DMC), 2010 WL 1530152, at *7 (D.N.J. Apr. 15, 2010). Finally, in *Yost v. General Motors Corp.*, 651 F. Supp. 656, 657 (D.N.J. 1986), the court noted that the "basic problem in this case is that plaintiff Yost has not alleged that he has suffered any damages" and held that Yost could not plead a fraud claim alleging a loss in value. But in so

finding, the court relied on no New Jersey decisional law and did not attempt to predict how the New Jersey Supreme Court might rule.

### iv. Oregon

The Oregon Supreme Court has held that "plaintiff's recovery is limited to that measured by the 'out-of-pocket' rule unless the actionable misrepresentation was a warranty of value, in which case plaintiff could recover under the 'benefit-of-the-bargain' rule." *Galego v. Knudsen*, 281 Or. 43, 51 (1978); *see also McCormick v. New England Life Ins. Co.*, No. 3:10-CV-00553-PK, 2012 WL 13054259, at *3 (D. Or. Oct. 12, 2012) ("There is no dispute that Oregon courts favor a flexible approach to fraud remedies, as necessary to compensate the plaintiff for whatever loss he has suffered."). As discussed with respect to Minnesota's requirements for fraud claims, however, the difference between the benefit-of-the-bargain and out-of-pocket rules does not matter to the manifestation inquiry. The single case cited by New GM does not suggest a manifestation requirement. *See U.S. Nat'l Bank of Or. v. Fought*, 630 P.2d 337, 348 (Or. 1981) (holding that common-law fraud requires plaintiff's "consequent and proximate injury").

### v. West Virginia

The West Virginia Supreme Court has held that, "[i]n an action for fraud . . . the true measure of damages is the difference between the value of the property actually received and its value had it been as represented." *Stout v. Martin*, 87 W. Va. 1, 1(1920). Thus, in a case involving an automobile sold as "new" even though it had been in a collision, the West Virginia Supreme Court affirmed a jury verdict for fraud where "the jury was presented with expert testimony on the difference in value of the automobile if it had been in a collision versus if it had not been damaged." *Horan v. Tpk. Ford, Inc.*, 189 W. Va. 621, 627 (1993). In arguing that manifestation is required, New GM cites *Belville I* and *Belville II*, in which the Southern District

of West Virginia dismissed diminished value claims due to a vehicle's acceleration defect because "only two of the twenty Plaintiffs named in the Complaint allege they actually experienced a sudden unintended acceleration, and neither of those Plaintiffs alleges they suffered any personal injuries or property damage as a result of those events." *Belville I*, 13 F. Supp. 3d at 535; *see also Belville II*, 60 F. Supp. 3d at 699-700. The *Belville* Court, however, did not actually address how West Virginia courts would treat common-law fraud: The plaintiffs brought common-law fraud claims under the laws of Florida, Illinois, Missouri, New York, North Carolina, Oklahoma, and Virginia — but *not* under the law of West Virginia. *See Belville I*, 13 F. Supp. 3d at 531 n.2. Moreover, the *Belville* Court did not analyze *any* state decisional law in dismissing the plaintiffs' fraud claims. *Belville II*, 60 F. Supp. 3d at 699-700.

### 3. Implied Warranty

Finally, the Court turns to Plaintiffs' implied warranty claims. This Court previously rejected New GM's argument that manifestation was required for an implied warranty claim under Michigan law. *See FACC Op.*, 257 F. Supp. 3d at 426. The Court based that decision on the fact that the Uniform Commercial Code ("UCC"), which has been adopted by Michigan, "'expressly provides' that a claim for the breach of an implied warranty 'accrues when the breach occurs' and that 'there is no requirement that [p]laintiffs demonstrate any injury to their person or property as a result of the breach, but only that they purchased an unmerchantable product.'" *Id.* (quoting *In re Bridgestone\Firestone, Inc. Tires Prods. Liab. Litig*. 155 F. Supp. 2d 1069, 1099 (S.D. Ind. 2001), *rev'd on other grounds*, 288 F.3d 1012 (7th Cir. 2002)). In the absence of contrary authority, that decision compels the Court to reject New GM's manifestation argument in any state that has adopted the UCC provision that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach

of warranty occurs when tender of delivery is made." *E.g.*, Alaska Stat. § 45.02.725. Moreover, the UCC provides for benefit-of-the-bargain damages, which, in the case of implied warranty as for fraud, is compelling evidence that manifestation is not required absent contrary authority.

New GM points instead to the Court's prior conclusion that manifestation is required for an implied warranty claim under Pennsylvania law. (New GM Br. 24-25). That conclusion was based in part on the fact that a plaintiff must prove that the product was "defective" to make out the last two elements of an implied warranty claim in Pennsylvania: "a causal connection between the defendant's breach and the plaintiff's injury," and "the extent of loss proximately caused by the defendant's breach." *FACC Op.*, 257 F. Supp. 3d at 439. Significantly, however, Pennsylvania's implied warranty statute does not follow the relevant UCC provisions discussed above. Moreover, the Court found Pennsylvania case law that clearly suggested a manifestation requirement for implied warranty claims. *See id.* (citing *Zwiercan v. Gen. Motors Corp.*, 58 D. & C. 4th 251, 2002 WL 31053838, at *3 (C. P. Phila. May 22, 2002); *Solarz v. DaimlerChrysler Corp.*, No. 2033, 2002 WL 452218, at *5 (Pa. Com. Pl. Mar. 13, 2002); and *Grant v. Bridgestone Firestone Inc.*, 57 Pa. D. & C 4th 72, 2002 WL 372941, at *5 (Com. Pl. Jan. 10, 2002)). For any state in which the UCC provisions apply, and neither New GM nor the Court has found any authority to suggest that the state would require manifestation, this Court will not impose such a requirement.

In light of the foregoing, the Court concludes that manifestation is not required for purposes of an implied warranty claim in the sixteen states in dispute. Once again, for most of those states, the Court need do little more than cite the relevant authority (and address any potentially contrary authority or authority on which New GM relies in the margin):

- **Alaska:** Alaska Stat. § 45.02.725; *see also Bendix Home Sys., Inc. v. Jessop*, 644 P.2d 843, 845 (Alaska 1982) (noting that "Article 2 of the Uniform Commercial Code . . . has been adopted in Alaska").[26]

- **Indiana:** Ind. Code Ann. § 26-1-2-725; *see also Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 952 (Ind. 2005) ("Indiana has adopted the Uniform Commercial Code . . . .").

- **Kansas:** Kan. Stat. Ann. § 84-2-725; *see Hodges v. Johnson*, 288 Kan. 56, 69 (2009) (noting that the "measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted" (citing Kan. Stat. Ann. § 84-2-714)); *Nieberding*, 302 F.R.D. at 612 (predicting that Kansas would not require manifestation for an implied warranty claim).[27]

- **Maine:** Me. Rev. Stat. tit. 11 § 2-725; *see Faulkingham v. Seacoast Subaru, Inc.*, 577 A.2d 772, 774 (Me. 1990) (citing of Me. Rev. Stat. tit. 11, § 2-714 and noting that Maine applies a "version of Article 2 of the Uniform Commercial Code"); *see also Nelson v. Leo's Auto Sales, Inc.*, 158 Me. 368, 373 (1962) (holding that a "defrauded party is entitled to the benefit of the bargain" and noting that this rule renders the "measure of damages in a tort action for fraud in the sale of personal property . . . the same as in actions for breach of warranty").[28]

- **Mississippi:** Miss. Code § 75-2-725; *see also Gast v. Rogers-Dingus Chevrolet*, 585 So. 2d 725, 730 (Miss. 1991) (noting that the "measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of

---

[26]    New GM arguably cites *Jarvill* for the proposition that Alaska requires manifestation for an implied warranty claim, (*see* New GM Br. 17-18; New GM Resp. 14), but any implied warranty claim had been dropped in *Jarvill* before the court reached its decision. *See* 189 P.3d at 337.

[27]    The cases cited by New GM hold only that "[t]o demonstrate a breach of the implied warranty of merchantability, plaintiff must show that the goods were defective … and that the defect caused the injury sustained by plaintiff." (New GM Br. 26 n.19 (citing *Dieker v. Case Corp.*, 73 P.3d 133, 146-47 (Kan. 2003); and *Am. Family Mut. Ins. Co. v. Sears, Roebuck & Co.*, 998 F. Supp. 1162, 1165 (D. Kan. 1998)).

[28]    New GM's case law is inapposite or unpersuasive. In *Muehlbauer v. Gen. Motors Corp.*, No. 05-C-2676, 2008 WL 4542650, at *5 (N.D. Ill. July 22, 2008), the district court held that the plaintiff had failed to demonstrate that he had in fact suffered economic damages as a result of the defendant's breach of implied warranty, not that such damages were unavailable. And while the lower court in *Everest v. Leviton Manufacturing Co.*, No. CV-04-612, 2006 WL 381832, at *2 (Me. Super. Ct. Jan. 13, 2006), did state in passing that, for theories such as "negligence, failure to warn, and breach of warranty . . . the product must malfunction before a cause of action lies," it provided neither citation nor explanation for that claim.

the goods accepted and the value they would have had if they had been as warranted" (citing Miss. Code. Ann. § 75-2-714)).[29]

- **Montana:** Mont. Code § 30-2-725; *see also Klinkenborg Aerial Spraying & Seeding Inc. v. Rotorcraft Dev. Corp.*, No. CV 12-202-M-DLC-JCL, 2014 WL 12725980, at *7 (D. Mont. Aug. 18, 2014) (citing Mont. Code Ann. § 30–2–714(2) and noting that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted"), *report and recommendation adopted*, No. CV 12-202-M-DLC, 2014 WL 12726047 (D. Mont. Dec. 8, 2014), *aff'd*, 690 F. App'x 540 (9th Cir. 2017); *Fire Supply & Serv., Inc. v. Chico Hot Springs*, 196 Mont. 435, 443 (1982) (citing Mont. Code Ann. § 30-2-714 and noting that the party was "entitled to recover any loss in value of the goods").

- **Nebraska:** Neb. Rev. Stat. Ann. § UCC § 2-725; *see also McCoolidge v. Oyvetsky*, 292 Neb. 955, 967 (2016) (noting that the "measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted" (citing Neb. Rev. Stat. Ann. § UCC § 2-714)).

- **Nevada:** Nev. Rev. Stat. Ann. § 104.2725; *see also Goodrich & Pennington Mortg. Fund*, 120 Nev. at 783 (noting that the "measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted" (citing Nev. Rev. Stat. Ann. § 104.2714)).

- **New Mexico:** N.M. Stat. Ann. § 55-2-725; *see also Badilla v. Wal-Mart Stores E. Inc.*, 357 P.3d 936, 941 (2015) (noting that the "measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted" (citing N.M. Stat. Ann. § 55-2-714)).

- **Rhode Island:** R.I. Gen. Laws § 6A-2-725; *see also Bergenstock v. Lemay's G. M. C., Inc.*, 118 R.I. 75, 87 (1977) (noting that R.I. Gen. Laws § 6A-2-714 measures damages for breach of warranty as "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted").[30]

---

[29]     For the reasons discussed in the context of Plaintiffs' fraudulent concealment claim, the Court is not swayed by New GM's citations to *Jarman*, 98 F. Supp. 2d at 768, and *In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1017.

[30]     *Plouffe v. Goodyear Tire & Rubber Co.*, 373 A.2d 492, 495 (R.I. 1977), upon which New GM relies, is inapposite. There, the court merely stated that the plaintiffs had the burden of proving that "the product was defective" and "that said defect is the proximate cause of the injury." *Id.* Here, Plaintiffs plausibly allege defects and claim that Plaintiffs "did not get the

- **South Dakota:** S.D. Codified Laws § 57A-2-725; *see also Durham v. Ciba-Geigy Corp.*, 315 N.W.2d 696, 700 (S.D. 1982) (noting that the "measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted" (internal quotation marks omitted) (citing S.D. Codified Laws § 57A-2-714)).[31]

- **Wyoming:** Wyo. Stat. Ann. § 34.1-2-725; *see also Albin Elevator Co. v. Pavlica*, 649 P.2d 187, 190 (Wyo. 1982) (noting that the "measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted" (citing Wyo. Stat. Ann. § 34.1-2-714)).[32]

Once again, a few other states call for additional discussion, to which the Court now turns.

### i. Colorado

Colorado has not adopted the relevant UCC warranty provisions, but the Colorado Supreme Court has nevertheless held that "the measure of damages recoverable for a breach of warranty is the difference between the actual value of the property at the time of sale and what its value would have been if it had been as warranted." *Glisan v. Smolenske*, 153 Colo. 274, 281 (1963); *see also Slack v. Sodal*, 190 Colo. 411, 414 (1976) (holding, in an implied warranty case, that "reasonable expenditures of a buyer to bring property into conformity with the implied warranty may be an accurate measure of the buyer's damages"). Additionally, New GM cites, and the Court has found, no cases suggesting that Colorado requires a manifested defect for

---

benefit of their bargain since the Defective Vehicles were worth less than they would have been without the defects." (*See e.g.*, 5ACC ¶ 1240).

[31] The only authority to the contrary cited by New GM is *BP Painting*, 2003 WL 26134396, which the Court addressed above in the context of South Dakota's consumer protection statute.

[32] New GM relies on *McLaughlin v. Michelin Tire Corp.*, 778 P.2d 59, 65-66 (Wyo. 1989), but the *McLaughlin* Court dismissed the plaintiff's implied warranty claim because the plaintiff had failed to prove the product at issue was defective at all.

purposes of an implied warranty claim. The Court thus finds that Plaintiffs need not plead manifestation to proceed with their implied warranty claims under Colorado law.

### ii. Delaware

Delaware has adopted the UCC provision that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made." Del. Code Ann. tit. 6, § 2-725. Moreover, under Delaware law, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Del. Code Ann. tit. 6, § 2-714; *see also Neilson Bus. Equip. Ctr., Inc. v. Italo V. Monteleone, M.D., P.A.*, 524 A.2d 1172, 1176 (Del. 1987).

New GM argues that *Dalton v. Ford Motor Co*., No. Civ.A. 00C-09-155 (WCC), 2002 WL 338081 (Del. Super. Ct. Feb. 28, 2002), "expressly held that a manifest defect is required for [an implied warranty claim]" under Delaware law. (New GM Br. 8). But the Court finds nothing express about it. The *Dalton* court dismissed the plaintiffs' implied warranty claim on the ground that it was barred by the statute of limitations. The court did hold that the plaintiffs' negligence claims required manifestation, but it never directly addressed whether the same was the case for their implied warranty claims. *Id.* at *5. It does not follow from the court's decision with respect to negligence, a claim grounded in tort, that manifestation would also be required for implied warranty, which the Delaware Supreme Court has characterized as part of "a

hybridization of tort and contract concepts [that] has occurred by virtue of the provisions of the U.C.C." *Cline v. Prowler Indus. of Md., Inc.*, 418 A.2d 968, 976 (Del. 1980).[33]

### iii. Ohio

As clarified in additional submissions to the Court, (*see* Docket Nos. 5924 ("GM Ohio Ltr."), 5925), Plaintiffs bring claims for implied warranty in tort — which, naturally, "sound in tort rather than contract." *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 46 (1989) (internal quotation marks omitted). "To prevail on a claim for tortious breach of warranty (also known in Ohio as strict liability or breach of implied warranty), the plaintiffs must prove" three elements: "(1) a defect existed in the product manufactured and sold by the defendant; (2) the defect existed at the time the product left the defendant's hands; and (3) the defect directly and proximately caused the plaintiff's injury or loss." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013). A defect is considered to exist in a product that is not "of good and merchantable quality, fit and safe for its ordinary intended use." *White v. DePuy, Inc.*, 129 Ohio App. 3d 472, 480 (1998) (internal quotation marks omitted). The Ohio Supreme Court has suggested that "an action in tort for breach of express or implied warranty, or an action in strict liability, may be maintained for purely economic loss" without requiring manifestation. *Chemtrol*, 42 Ohio St. 3d at 49 (noting

---

[33] By extension, the Court also finds unconvincing New GM's citation to *McCormick v. Remington Arms Co., Inc.*, No. CIV-12-215-R, 2012 WL 12862823 (W.D. Okla. Sept. 4, 2012), in which the Western District of Oklahoma cited *Dalton* in "predict[ing]" that "Delaware courts would align themselves with the majority position with regard to manifestation of the defect as a prerequisite for suit on a breach of implied warranty." *Id.* at *1. Additionally, New GM's citation to the elements of a successful breach of warranty claim, which include "(3) causing injury to the ultimate consumer; (4) the proximate cause of which was the defective nature of the goods" is not dispositive either way. (*See* New GM. 26 n.19). Plaintiffs allege economic injury proximately caused by the defective nature of their cars' ignition switches, whether or not that defect ever manifested itself. (*See e.g.*, 5ACC ¶ 1202).

that damages that were described by a previous Ohio Supreme Court case as "property" damage, and allowed to go forward, were in fact "merely defects in the product itself which reduced the product's value, *i.e.*, economic damages") (discussing *Iacono v. Anderson Concrete Corp.*, 42 Ohio St. 2d 88, 92 (1975)).

The Court is unconvinced by the cases cited by New GM. Most of New GM's authority does not address tortious implied warranty at all, *see Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St. 3d 329 (2015) (analyzing the Ohio Consumer Sales Practices Act); GM Ohio Ltr. 4 (listing cases with implied warranty in contract (not tort) claims), or does not analyze Ohio case law in imposing a manifestation requirement, *see Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, No. 1:02-CV-13 (JRA), 2005 WL 6778678, at *11 (N.D. Ohio Feb. 22, 2005). New GM cites only one case that both addresses requirements for implied warranty in tort and applies Ohio state law: a federal district court opinion that New GM claims expressly held that a "product must malfunction before a cause of action lies." (GM Ohio Ltr. 3 (citing *Hoffer v. Cooper Wiring Devices, Inc.*, No. 1:06-CV-763 (CAB), 2007 WL 1725317, at *7 (N.D. Ohio June 13, 2007))). This Court finds the court's statement less express than does New GM. While the *Hoffer* court noted that requiring a product malfunction was "persuasive," it also stated that "the economic loss alleged by Plaintiff must be connected to alleged damage to *or* decreased value of a defective product." *Hoffer*, 2007 WL 1725317, at *8 (emphasis added).

### iv. West Virginia

West Virginia has also adopted the UCC provision that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made." W. Va. Code Ann. § 46-2-725. Moreover, the West Virginia Supreme Court has held that, in a warranty case, "[t]he measure of damages is

the difference between the value of the vehicle as warranted or represented and the value of the vehicle in its actual condition at the time of the transaction." *Horan*, 189 W. Va. at 628 (citing W. Va. Code Ann. § 46-2-714). In arguing for a manifestation requirement, New GM once again cites the *Belville* cases. *See Belville I*, 13 F. Supp. 3d at 542; *Belville II*, 60 F. Supp. 3d at 700. As with common-law fraud, however, the *Belville* court did not specifically analyze West Virginia law in concluding that the state required manifestation for an implied warranty claim. *See Belville 1*, 13 F. Supp. 3d at 535 (citing a number of federal court opinions, including *Briehl*, and a few state court opinions — but only from Maryland, New York, California, and Alabama — to hold that warranty claims under the laws of West Virginia, Florida, Illinois, Maryland, Massachusetts, Missouri, New York, North Carolina, Oklahoma, Pennsylvania, South Carolina, Virginia, and Wisconsin would all require manifestation).

## B.  Lost Time

The Court turns next to the issue of whether, under the laws of forty-seven different states, Plaintiffs can recover "loss of time" damages for their consumer protection, common-law fraud, and breach of implied warranty claims. Traditionally, damages for "loss of time" have been synonymous with "some loss of advantages, benefits, or revenues that might have been produced by the profitable use and employment of such time." 25 C.J.S. Damages § 52. In other words, recovery for lost time has been connected to loss of earnings, wages, or other income, turning on whether one has lost time that one might otherwise have used to one's profit. New GM concedes that in nearly every state, Plaintiffs may recover for "lost time" understood as lost earnings or income. (*See* New GM Br. 35 ("[D]ozens of state court decisions are buttressed by federal court opinions holding that lost time is not recoverable unless, at a minimum, the plaintiff proves a direct loss of income.")). But Plaintiffs define lost time more broadly and seek recovery

not only for lost earnings or income, but also for lost *free* or *personal* time. (*See e.g.*, 5ACC, ¶ 1219 (alleging that Plaintiffs "had to spend their time and money to bring their Defective Vehicles in for repair"); New GM Br. 30 (noting that Plaintiffs' expert alleges damages based on "loss of income (or loss of free time)" and that "obtaining the repair" prevented plaintiffs "from another desired activity" (quoting E. Manuel Report ¶¶ 27, 63))). New GM insists that recovery for lost free or personal time is not recognized in any of the forty-seven states at issue. (*See* New GM Br. 30-31). Plaintiffs contend that, drawing all inferences in their favor, their requests for lost-time damages "cannot now be dismissed as a matter of law." (Docket No. 5192 ("Pls.' Resp."), at 1).

On the whole, New GM has the better of the argument. The Court finds that, as a matter of law, the overwhelming majority of states adhere to the view that lost-time damages are the equivalent of lost earnings or income. Indeed, "loss of time" appears to be something of a term of art: Courts often use the term without defining it, suggesting a broadly recognized and well-established meaning. Put another way, most states do not treat lost personal time as a compensable form of injury. *See* Leonard E. Gross, *Time and Tide Wait for No Man: Should Lost Personal Time Be Compensable?*, 33 RUTGERS L.J. 683, 684-85 (2002) (noting that historically courts have been "loath to award damages for lost personal time in breach of contract cases and in cases involving tortious interference with personal property"). The unwillingness to award damages for lost personal time may in part be a legacy of an era when personal time was not valued as highly as it is today, *see id.* at 684, but the role of a federal court sitting in diversity is to determine what state law is, not to change it.

Moreover, public policy counsels against compensating for lost personal time. Some courts have suggested, for example, that awarding compensation for lost time on the theory that

"time is money" invites litigation and prioritizes less-worthy claims over the more worthy. *See,*
*e.g.*, *Kleef v. Goodman Mfg. Co., L.P.*, No. 4:15-CV-00176 (BSM), 2015 WL 4512200, at *3
(E.D. Ark. July 24, 2015) (rejecting the plaintiff's "contention that he should be compensated for
the time lost in coordinating and waiting for repairs" and noting that, if the court held otherwise,
"consumers could bring a lawsuit every time they were on hold with a company's customer
service line while they waited to resolve a problem. Thus, to say that damages for lost time are
recoverable in a products liability action makes no sense, and it is not commercially
practicable."); *see also, e.g.*, *Cargill, Inc. v. City of Buffalo*, 388 F.2d 821, 825 n.8 (2d Cir. 1968)
("A driver who negligently caused such an accident would certainly be held accountable to those
physically injured in the crash. But we doubt that damages would be recoverable against the
negligent driver in favor of truckers or contract carriers who suffered provable losses because of
the delay or to the wage earner who was forced to 'clock in' an hour late.").

In many instances, Plaintiffs argue that a state would award damages for lost free time
based on authority from the state holding that plaintiffs may recover incidental, actual, or
consequential damages. (*See, e.g.*, Docket No. 5101 ("Pls.' Br."), at 52 (citing *Gyldenvand v.
Schroeder*, 90 Wis. 2d. 690, 698 (1979), for the proposition that plaintiffs "may recover such
consequential or special damages" as they are "able to prove with reasonable certainty")). But
that argument begs the question whether a state has recognized lost personal time as a
compensable form of damages. Put another way, the authorities upon which Plaintiffs rely do
not discuss, let alone answer, the question of whether lost free time falls within the scope of
legally cognizable incidental, actual, or consequential damages that may be recovered. In fact, in
at least some of the jurisdictions at issue, the law allows for the recovery of incidental or
consequential damages, such as loss of earnings, yet courts have nevertheless held that that lost

personal time is not compensable.  *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*, 2010 ME 93, ¶¶ 10, 16 (holding that plaintiffs could recover for loss of earnings but not for "the expenditure of time and effort alone"); *Newbury v. Virgin*, 2002 ME 119, ¶ 16 (describing lost earnings as consequential damages); *State v. Anderson*, 72 Wash. App. 253, 261-62 & n.17 (1993) (holding that the plaintiffs could recover for "loss of time" understood as loss of earnings, but not for loss of "the opportunity to be free to enjoy life"); *Sprague v. Sumitomo Forestry Co.*, 104 Wash. 2d 751, 761 (1985) (characterizing lost time understood as lost profits as consequential damages).  It follows, as a matter of both logic and law, that a state's recognition of incidental, actual, or consequential damages, by itself, does not support a holding that the state recognizes lost free time as compensable.[34]

The Court begins with those states that have limited recovery for lost-time damages to lost earnings or their equivalent.  Then, the Court turns to whether a person may recover for time lost from performing unpaid household work.[35]  Finally, the Court considers the few states where, often as a result of consumer protection statutes that provide for statutory damages and do not limit recovery to "loss of money or property," Plaintiffs may recover under a more expansive definition of lost time for at least some of their claims.

---

[34]    The Court acknowledges that its conclusions are in some tension with its previous observation that "some states do recognize 'lost time' as a valid theory of consequential damages."  *FACC Op.*, 257 F. Supp. 3d at 398.  But in that Opinion, the Court did not consider the precise meaning of "lost-time damages" and, as New GM points out, the cases cited by this Court either involved lost income or did not conclude that "lost time" would be recoverable, and thus did not specify what was meant by "lost time."  (*See* New GM Br. 45-46).

[35]    The parties' briefing did not address whether a person may recover for lost time from performing unpaid housework, but it is an issue that shows up in case law and that the Court determined should be addressed.  In the Proposed Order the parties are directed to submit applying the holdings of this Opinion, the parties shall address whether and how damages for lost time from performing unpaid housework apply to Plaintiffs in this case.

## 1. Lost Time as Lost Earnings

As noted, the Court begins with states that have limited recovery for lost-time damages to lost earnings or income.  Where a state has never considered lost personal time to be compensable, and the Court finds no reason to do otherwise, the Court concludes that the narrow construction of lost time applies across all substantive areas of law.[36]  As a result, the Court need not and does not generally differentiate between lost-time damages in the context of statutory consumer protection, common-law fraud, or implied warranty.

Based on the Court's research, forty-one of the contested states limit lost time damages to lost income or earnings.  The following is a list of those states along with relevant authority demonstrating that the state's courts have traditionally treated lost time as lost income.  Where the Court does not cite or discuss case law suggesting that a plaintiff may recover for lost *personal* time (as opposed to lost time from work or the pecuniary equivalent), the Court has found no such case law.  The Court provides additional explanation as warranted.

- **Alabama:** *Birmingham Ry., Light & Power Co. v. Nalls*, 188 Ala. 352, 354 (1914) ("[T]here was no error in refusing to instruct the jury that the plaintiff could not 'recover for any time, if any, he lost from work.'  That was an element of damages claimed in the complaint; and there was evidence tending to show the factum of the loss of time by reason of his injuries and to show the monetary equivalent or measure thereof."); *accord Mackintosh Co. v. Wells*, 218 Ala. 260, 265, (1928); *see also Walker Cty. v. Davis*, 221 Ala. 195, 199 (1930) (refusing to allow recovery for loss of time from work where the plaintiff failed to demonstrate a consequent "financial loss").

---

[36]     At times, Plaintiffs argue that New GM has conceded that lost-time damages may be awarded for consumer protection, fraudulent concealment, or implied warranty claims because New GM has not cited case law regarding lost-time damages specific to those areas of law.  (*See, e.g.*, Pls.' Br. 5 n.6).  The Court, however, understands New GM's argument to be that where a state has never recognized damages for lost personal time, it will not recognize such damages in any area of law today.  That is, New GM's argument traverses substantive areas of law, except in rare instances when New GM argues that a certain state's consumer protection statute would not recognize lost-time damages even when defined as lost income.  (*See* New GM Br. 38-44).

- **Alaska:** *Alaska Airlines, Inc. v. Sweat*, 584 P.2d 544, 549 n.20 (Alaska 1978) ("In order to recover for lost time and decreased earning capacity, the plaintiff must carry the burden of establishing that his injury did bring about a loss of time and impairment of earning capacity, and he must prove the extent and probable duration of that impairment." (citation and internal quotation marks omitted)); *Sisters of Providence in Washington v. A.A. Pain Clinic, Inc.*, 81 P.3d 989, 1008 (Alaska 2003) (explaining that "loss of professional time" is a "compensable injury" and citing to a case allowing recovery for "loss of time").[37]

- **Arizona:** *Valley Transp. Sys. v. Reinartz*, 67 Ariz. 380, 383 (1948) ("The general rule seems to be that [c]ompensation for . . . loss of time . . . is to be measured by the amount of money which the injured man might reasonably have earned in the same time by the pursuit of his ordinary occupation, which may be ascertained from a consideration of the wages actually lost by him or by his average earnings, or from a consideration of his general qualities and his qualifications for any particular business in which he may be engaged." (internal quotation marks omitted)); *Fleitz v. Van Westrienen*, 114 Ariz. 246, 251 (Ct. App. 1977) ("The only evidence regarding her lost time was Mrs. Fleitz's testimony that she had missed 'about six or seven working weeks' since the accident but could not state when.").[38]

---

[37]    The Court has found just one case that could conceivably be read to suggest recovery for lost personal time. In *G & A Contractors, Inc. v. Alaska Greenhouses, Inc.*, 517 P.2d 1379 (Alaska 1974), the Alaska Supreme Court held that a company could recover for the time spent by its owner in trying to solve a problem involving trespass to real property. In so holding, the court quoted a treatise for the proposition that "the plaintiff may properly claim as an item of damages the value of his own personal time and services expended in prudent efforts to reduce the loss resulting from defendant's wrongdoing." *Id.* at 1387 (quoting McCormick on Damages § 42, at 155 (1935)). Nonetheless, the court made clear that it valued the owner's lost time based on what he might have earned. *See id.* at 1387 (noting that "Leiser charges out time for his services at $25 per hour" and that had the trial court looked to the impact on the company's income, the proper measure would have been the difference between what the company's income was and what it might have been had "[the owner]'s time been otherwise spent."). Ultimately, then, *Alaska Greenhouses* does not deviate from the rule.

[38]    Moreover, Arizona courts recognize pecuniary damages alone for common-law fraud claims. *See* 37 Am. Jur. 2d Fraud and Deceit § 267 (defining "pecuniary damages" as "any loss of money or loss of something that money could acquire"). Thus, lost personal time would not be compensable for Plaintiffs' fraud claims even were it recognized in other areas of law. *See Med. Lab. Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 30 F. Supp. 2d 1182, 1200 (D. Ariz. 1998) ("[O]nly pecuniary damages are allowed for fraud under Arizona law."), *aff'd*, 306 F.3d 806 (9th Cir. 2002); *Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 501 (1982) ("[I]t is true, as defendants contend, that the Restatement (2d) of Torts contemplates recovery in fraud actions only for pecuniary loss.") (citing Restatement (Second) of Torts §§ 525, 546, 549 (1977)).

- **Arkansas:** *Yost v. Studer*, 227 Ark. 1000, 1001-02 (1957) ("In order to recover for loss of time, a professional man must prove the amount he would have earned in the practice of his profession during the time in question." (internal quotation marks omitted)); *McGee v. Smitherman*, 69 Ark. 632 (1901) ("The instruction to the jury to assess damages for the 'loss of time' from business or occupation was not prejudicial . . . . The undisputed evidence shows that appellant lost time from his business or occupation."); *Lockley v. Deere & Co.*, 933 F.2d 1378, 1388 (8th Cir. 1991) ("[O]ne of the elements of damage the jury could consider was the loss of time needed to receive necessary medical treatment . . . [based on] testimony that the value of Walter Lockley's time spent away from his farm to receive such treatments is $70 a day.").[39]

- **Connecticut:** *Nistico v. Stephanak*, 140 Conn. 547, 551 (1954) ("An allegation that the plaintiff is engaged in a particular kind of work or business, and that his injuries have prevented him from continuing it, is a sufficient allegation of damages for time lost or for loss of earning capacity."); *Hayes v. Morris & Co.*, 119 A. 901, 902 (Conn. 1923) ("Under our law the essential question is what is the pecuniary value of time lost in consequence of the injury; the salary or wages earned at the time of the injury are [] evidential facts relevant to that inquiry."). Moreover, the Connecticut Supreme Court has specified that "[t]he pecuniary value of time lost by plaintiff in consequence of the injury is a proper element of recovery," *Hayes*, 119 A. at 902, and has defined "[p]ecuniary injuries [as] such as can be, and usually are, without difficulty estimated by a money standard. Loss of real or personal property or of its use, loss of time, and loss of services, are examples of this class of injuries," *Broughel v. S. New England Tel. Co.*, 48 A 751, 754 (Conn. 1901); *see also Gilbert v. Beaver Dam Ass'n of Stratford Inc.*, 85 Conn. App. 663, 674 (2004) (same).

- **Delaware:** *Robinson v. Simpson*, 32 A. 287, 287 (Del. Super. Ct. 1889) (holding that a plaintiff can recover "loss of time in his employment, estimating it according to the proof"); *Sears, Roebuck & Co. v. Facciolo*, 320 A.2d 347, 350 (Del. 1974) (discussing

---

[39] The one "lost time" case cited by Plaintiffs is not to the contrary. In *Wilson v. Marquette Electronics, Inc.*, 630 F.2d 575 (8th Cir. 1980), the Eighth Circuit held that the plaintiff could not recover "lost time" damages where there was no evidence that the plaintiff paid its employee extra for the additional time the employee spent dealing with the defendant's product malfunction, *id.* at 586. The Eighth Circuit thus required a pecuniary equivalent to lost income. Moreover, in a case involving allegations of damages for plaintiff's lost time "spent coordinating and waiting for repairs," and where the plaintiff's only argument for damages appeared to be "the axiom of 'time is money,'" the Eastern District of Arkansas held that the plaintiff could not recover for lost time because allowing such recovery would mean that "consumers could bring a lawsuit every time they were on hold with a company's customer service line while they waited to resolve a problem. *Kleef*, 2015 WL 4512200, at *3. Admittedly, the *Kleef* Court did not specifically cite to Arkansas state law, but its reasoning is in line with the practice of Arkansas courts to award lost-time damages only in the case of lost income.

the proof required to measure the "value of time lost by a self-employed person" and equating the task with "assessing damages for loss of earning capacity").[40]

- **District of Columbia:** *Weisman v. Middleton*, 390 A.2d 996, 999 (D.C. 1978) ("The jury awarded the tenant compensatory damages of $104.25 for loss of time from work."); *Boiseau v. Morrissette*, 78 A.2d 777, 781 (D.C. 1951) (finding that the plaintiff could recover damages for his time spent on a trip to retrieve his property); *Morrissette v. Boiseau*, 91 A.2d 130, 131 (D.C. 1952) (confirming an award of "$87.20 for [the plaintiff's] five days' loss of time from work").

- **Florida:**[41] *S. A. Freel Distrib. Co. v. Lenox*, 147 Fla. 550, 551 (1941) (noting that the plaintiff had "suffered no loss of time" in the context of describing the effect of the injury on the plaintiff's employment); *Fain v. Cartwright*, 132 Fla. 855, 863 (1938) (finding that the plaintiff could recover, for the two weeks his injuries prevented him from working, "thirty-five dollars a week as damages for loss of time"); *Louisville & Nashville R.R. Co. v. Frank*, 76 Fla. 384, 385-86 (1918) (reciting a jury charge in which an element of damages was "any loss of time which the plaintiff may have suffered from his business on account of the defendant's negligence").[42]

---

[40] The Court has found no Delaware cases suggesting that a plaintiff may recover damages for lost personal time except for one Court of Common Pleas case awarding a higher damages award "[i]n lieu of awarding . . . additional damages for the inconvenience and the personal time and labor expended by the plaintiff herself" to repair damage to her home. *Hazell v. Heating & Air Conditioning, Inc.*, No. 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, 1985 WL 444642, at *1 (Del. Ct. Com. Pl. Dec. 5, 1985). The Court is not bound by that decision, however, and declines to follow it as it fails to offer any explanation or authority for the award. Moreover, historically, courts have been more likely to award inconvenience damages in cases involving the loss of enjoyment of one's personal residence or real property. *See* Gross, 33 RUTGERS L.J at 684-85.

[41] Plaintiffs concede that lost-time damages are unavailable for their consumer-protection claims in Florida and do not plead implied-warranty claims under Florida law. (*See* Pls.' Br. 12 n.18). That leaves only common-law fraud claims.

[42] Plaintiffs cite two Florida cases that, at first glance, might appear to allow recovery for lost time beyond lost income. In both, lost-time damages are mentioned without any indication of what the courts mean by the term. *See WSG W. Palm Beach Dev., LLC v. Blank*, 990 So. 2d 708 (Fla. Dist. Ct. App. 2008); *Normius v. Eckerd Corp.*, 813 So. 2d 985, 987 (Fla. Dist. Ct. App. 2002). But neither opinion establishes that Florida courts would recognize claims for lost personal time. For one, it is not unusual for courts to discuss "loss of time" damages without specifying that such damages are defined by lost earnings or income. The failure of courts to define "loss of time" demonstrates that "loss of time" is in effect a term of art whose meaning is broadly recognized. Moreover, contrary to Plaintiffs' contentions, (*see* Pls.' Br. 12), lost-time damages were in fact denied in *WSG West Palm Beach*. *See* 990 So. 2d at 712 ("The trial court denied the tenant's request for . . . lost revenue for time spent by the tenant in the move and the lawsuit."). And while the court in *Normius* did not specify what it meant by "lost time," it cited

- **Georgia:**[43] *Atlanta & W. Point R.R. Co. v. Haralson*, 65 S.E. 437, 440 (1909) (affirming jury instruction that "a right to recover on account of permanent impairment of capacity to labor, in the absence of proof as to earning capacity, did not authorize a recovery of anything on the latter ground, or for loss of time"); *Nipper v. Collins*, 90 Ga. App. 827, 829-30 (1954) ("The evidence showed that the plaintiff lost one day's time from his work on the date of his injury and was not paid for the time lost, but the record is silent as to the amount of the plaintiff's earnings at any time.").

- **Hawaii:** There is little case law in Hawaii regarding lost-time damages, but where Hawaii courts have discussed lost-time damages, they have equated lost time with lost income. *See Leong Sam v. Keliihoomalu*, 24 Haw. 477, 480 (1918) (describing a jury instruction allowing damages for "loss of time while incapacitated for business"); *Reinhardt v. Maui Cty.*, 23 Haw. 524, 525-26 (1916) (affirming recovery for "lost time from [the plaintiff's] occupation").[44]

- **Idaho:** *Lambert v. Hasson*, 121 Idaho 133, 140 (Ct. App. 1991) (noting that jury instructions to allow recovery for both "lost time" and "lost earnings" could "yield a duplicative award of damages" and that counsel had made clear that "the claim for lost time was the same thing as the claim for lost earnings."); *Clark v. Int'l Harvester Co.*, 99 Idaho 326, 347 (1978) (discussing two ways to compute the plaintiffs' damages for "lost profits," also described as "lost time," due to a defective tractor); *Graham v. Cœur d'Alene & St. Joe Transp. Co.*, 149 P. 509, 510 (Idaho 1915) (affirming the trial court's instruction that there could be no recovery for "loss of time or for loss of earning capacity" where no financial loss had been alleged).

- **Illinois:** *Kayman v. Rasheed*, 2015 IL App (1st) 132631 ¶¶ 70-71(holding that the plaintiff could not recover for lost-time damages where her claim was "supported merely by [her] time spent obtaining medical treatment" without any evidence of a "calculable

---

to *S.H. Kress & Co. v. Powell,* 132 Fla. 471, 486 (1938), which in turn cited to *Smith v. Bagwell*, 19 Fla. 117, 119 (1882), for the proposition that recoverable damages in a false-imprisonment action included loss of time. From context, it is clear that "loss of time" in *Smith* related to labor and employment. *See Smith*, 19 Fla. at 119 (holding that, in awarding damages, a jury may estimate "the loss of time and labor from the time the assault and battery was committed, and the value of his services as proved").

[43]     Plaintiffs concede that lost-time damages are not recoverable in Georgia for their consumer-protection claims, and they do not bring implied-warranty claims under Georgia law. (*See* Pls.' Br. 13 n.21).  That leaves only common-law fraud claims.

[44]     Additionally, the Hawaii Supreme Court has stated that damages for fraud are limited to pecuniary damages, defined as damages "which can be accurately calculated in monetary terms such as loss of wages and cost of medical expenses."  *Ellis v. Crockett*, 51 Haw. 45, 52 (1969); *see also Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 320 (2002) ("[P]laintiffs suing in fraud are required to show . . . that they suffered actual pecuniary loss.").

loss of monetary compensation or employment benefits"); *Lewis v. Avila*, No. 1-09-2957, 2011 WL 9933753, at *10 (Ill. App. Ct. Feb. 1, 2011) (affirming the trial court's decision not to instruct the jury on the value of "lost time" where the plaintiff had "presented no evidence as to what job opportunities she had forfeited as a result of her injuries, nor what she would have earned but for [her] accident"); *Chicago & Erie R.R. Co. v. Meech*, 163 Ill. 305, 313 (1896) ("When the complainant states facts showing that the injury has been such as to render it impossible for the injured party to pursue his ordinary business, and damages are claimed for the loss of time in such business, the plaintiff should be permitted to show . . . what damages he has suffered by reason of inability to pursue [his business]." (internal question marks and citations omitted)); *Danzico v. Kelly*, 112 Ill. App. 2d 14, 15 (1969) ("The amount of the jury award in this case is less than the damages incurred by the plaintiff for his paid medical expenses and lost time from work.").[45]

- **Indiana:** *Kawneer Mfg. Co. v. Kalter*, 118 N.E. 561, 563 (Ind. 1918) (approving recovery for "loss of time with reference to [the plaintiff's] condition and ability to earn money in his business or calling" where there was evidence of the plaintiff's "inability to do the work required of him as a plasterer and brick mason" and that "he was earning $5 per day" at the time of injury); *Rieth-Riley Constr. Co. v. McCarrell*, 163 Ind. App. 613, 618-19 (1975) ("The time belonged to the plaintiff, who had a right to work and to earn money."); *Crenshaw v. McMinds*, 456 N.E.2d 433, 434 n.1 (Ind. Ct. App. 1983) ("[W]here the concern is earnings lost between the date of injury and the date of trial, the damage element is loss of time."); *see also, e.g.*, *Wickens v. Shell Oil Co.*, No. 1:05-CV-645 (SEB), 2006 WL 3254544, at *11 (S.D. Ind. Nov. 9, 2006) (noting an absence of "[Indiana] authority entitling Plaintiffs to receive as damages an award to compensate them for the personal time" they had devoted to resolving a contract dispute).[46]

---

[45]     In *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018), the Seventh Circuit held that plaintiffs in a data breach suit had standing "because the data theft may have led them to pay money for credit-monitoring services, because unauthorized withdrawals from their accounts cause a loss (the time value of money) even when banks later restore the principal, *and because the value of one's own time needed to set things straight is a loss from an opportunity-cost perspective*. These injuries can justify money damages, just as they support standing." *Id.* at 828 (emphasis added). Although the italicized text could conceivably be read to endorse a broader view of lost time, the Court declines to read it that way, as the text is both *dictum* and ambiguous. Moreover, it cites no Illinois authority — which is not surprising as Illinois courts have long limited lost time to lost earnings.

[46]     The Court has found just one case suggesting that Indiana courts might recognize recovery for lost personal time. In 2009, the Indiana Court of Appeals affirmed a trial court's award of consequential damages for "the value of the time spent killing insects" that entered the plaintiffs' home as a result of the defendant's defective product. *See Irmscher Suppliers, Inc. v. Schuler*, 909 N.E.2d 1040, 1049 (Ind. Ct. App. 2009). The appellate court, however, neither analyzed Indiana's lost-time case law nor relied on any decision suggesting that a plaintiff could

- **Iowa:** *Hopping v. Coll. Block Partners*, 599 N.W.2d 703, 706 (Iowa 1999) ("We have . . . held that it is competent for the trier of fact to include in the damages assessed the reasonable value of a plaintiff's loss of time in that person's occupation."); *Miller v. McCoy Truck Lines*, 243 Iowa 483, 491 (1952) ("The measure of damage for loss of time is the value of Plaintiff's time due to inability to work."); *Smith v. Pine*, 234 Iowa 256, 260 (1943) (allowing recovery for loss of time where the plaintiff showed "that he was incapacitated for more than four months and that his services were worth $100 to $125 per month"); *see also Papenheim v. Lovell*, 530 N.W.2d 668, 674 (Iowa 1995) (noting that the court knew "of no authority or precedent to allow the award of damages to plaintiff for time spent dealing with matters related to the accident" but allowing the trial court's award of $100 to stand because the defendant had not challenged it).[47]

- **Kansas:** *Shirley v. Smith*, 261 Kan. 685, 693 (1997) ("'[L]oss' of time is tied to earning capacity."); *Rupp v. Norton Coca-Cola Bottling Co.*, 187 Kan. 390, 393 (1960) (affirming a damages award where the record demonstrated "loss of time from work"); *Cleveland v. Wong*, 237 Kan. 410, 419-20 (1985) (discussing plaintiffs' damages for "lost time or wages lost" in connection with the value of the time the plaintiff had lost in connection with a "laundry and dry cleaning establishment" operated by the plaintiff and his wife).

- **Kentucky:** *Gassaway Constr. Co. v. Gentry*, 264 S.W.2d 658, 659 (Ky. 1954) ("While it is true there was some evidence on [the lost-time] theory of damage, such evidence was sparse and only indicated a temporary loss of time and failed to show any loss of specific earnings as a result of her injury."); *Wrenn v. Burch*, 314 Ky. 844, 847 (1951) ("Mr. Burch was earning approximately $50 per week at the time he was injured. He had been unable to work for sixteen months previous to the trial. It is obvious that $2,940.00 is not excessive for loss of time."); *Hellmueller Baking Co. v. Risen*, 174 S.W.2d 134, 137 (Ky. 1943) (approving a jury instruction that authorized a finding of "loss of time . . . only in case the proof showed that [the plaintiff] did lose time depriving him of earning capacity").[48]

---

recover for lost personal time, and this Court has found no other case that follows *Irmscher* to allow recovery for lost personal time.

[47]     Additionally, in Iowa, "fraud is an economic tort which only protects pecuniary losses," *Bates v. Allied Mut. Ins. Co.*, 467 N.W.2d 255, 260 (Iowa 1991).

[48]     Plaintiffs cite two cases in support of a more expansive definition of "lost time" under Kentucky law, neither of which is persuasive. In awarding "inconvenience" damages in *Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897 (Ky. 2008), the Kentucky Supreme Court focused on the impact of the inconvenience on the plaintiffs' jobs. *See id.* at 907 (noting that one plaintiff "had to miss work and suffered difficulties at her job caused by constant telephoning and trips to the dealership" and that the other also had to "miss work"). And in *Gibson v. Kentucky Farm Bureau Mutual Insurance Co.*, 328 S.W.3d 195 (Ky. Ct. App. 2010), the plaintiffs' recovery for investigation costs involved compensation for the expense paid by an insurance company to an

- **Maine:**[49] *Hannaford* , 2010 ME 93, ¶¶ 10, 16 (holding that "the expenditure of time and effort alone does not represent a cognizable injury recoverable in implied contract" based in part on the fact that, in negligence cases, "loss of time" was cognizable only where it "related to loss of earning capacity or wages," because in such cases "the time in question could be assigned a value reflecting a loss of earnings or earning opportunities").

- **Maryland:** *Burke v. United States*, 605 F. Supp. 981, 997 (D. Md. 1985) ("Generally, loss of time or earnings compensates for regular wages lost." (describing Maryland law)); *Jordan v. Yankey*, 260 Md. 237, 239 (1971) ("The evidence established . . . [that the plaintiff] lost time from his job."); *Petrol Corp. v. Curtis*, 190 Md. 652, 660 (1948) (noting that the trial court instructed the jury properly as to the measure of damages where the plaintiff introduced evidence as to the "extent of his injuries" and "the amount of time he lost from employment").[50]

- **Massachusetts:** *Mahoney v. Bos. Elevated Ry.*, 221 Mass. 116, 117 (1915) (discussing "loss of time" in connection with the amount a plaintiff loses from one's wages or salary due to an injury); *Sibley v. Nason*, 196 Mass. 125, 131 (1907) ("The value of [the plaintiff's] time, while prevented from working by reason of the negligence of the defendant, is a proper element to be considered in fixing the damages.").[51]

---

investigator.  *See id.* at 204-05.  That is irrelevant to whether a plaintiff may recover for his or her personal time.

[49]     Plaintiffs concede that lost-time damages are not available for Plaintiffs' consumer-protection or common-law fraud claims in Maine.  (*See* Pls.' Br. 21 n.40).

[50]     Plaintiffs' two cases do not suggest that a plaintiff can recover for lost personal time in Maryland.  First, in *Smallwood v. Bradford*, 352 Md. 8, 25-26 (1998), the court merely stated that "lost time" could be recovered in a survivorship action, and provided no reason to think that "lost time" had anything but its traditional meaning.  And the discussion of "loss of time" in *Adams v. Benson*, 208 Md. 261, 270 (1955), takes place in the context of whether the plaintiff was "unable to work as a domestic servant after the accident."

[51]     Plaintiffs cite *Gray v. Boston Elevated Railway Co*., 215 Mass. 142 (1913), but that case provides only further support for the proposition that "loss of time" means "lost income."  In *Gray*, the plaintiff's "loss of time" was discussed in connection with his failure to execute on a "profitable contract" due to his injury.  *Id.* at 146.  *Kuhn v. Capital One Fin. Corp.*, 67 Mass. App. Ct. 1111 (2006) (mem.), in which the court found compensable "the "considerable time" the plaintiff spent "making long distance calls [and] contacting . . .  various credit rating agencies," is arguably more persuasive.  But the Court is not persuaded by *Kuhn*, which discusses the issue only briefly and without any citation to Massachusetts precedent or any indication of how the time would be valued.  As the Maine Supreme Judicial Court put it in *Hannaford*, "a passing mention of loss of time without adequate facts to demonstrate how those

- **Michigan:** *Draisma v. United States*, 492 F. Supp. 1317, 1322 (W.D. Mich. 1980) ("According to Michigan law a Plaintiff is entitled to recover from a tortfeasor damages for impairment in earning capacity caused by the tort. This broad area of damages is typically bifurcated into loss of time and decreased earning capacity with the time of trial dividing the two."); *Kinney v. Folkert*s, 84 Mich. 616, 624 (1891) ("The actual loss of time while he was sick and unable to work should be awarded to him."); *Gilson v. City of Cadillac*, 134 Mich. 189, 192 (1903) ("We think the jury were given to understand very clearly that it was only for loss of time in connection with her own business she was entitled to recover."); *Lepan v. MacKinnon Boiler & Mach. Co.*, 178 Mich. 18, 28 (1913) ("[Plaintiff's] loss of time at 90 cents a day is the only item of damages in the case.").

- **Minnesota:** *Cox v. Chi. Great W. R.R. Co.*, 176 Minn. 437, 440 (1929) ("Loss of time and loss of earnings, as covering the same period of time, are a duplication."); *Gilbert v. Megears*, 192 Minn. 495, 502 (1934) ("[I]t was the loss of plaintiff's own earnings resulting from his disability, or, in other words, the value of the time lost by him that should measure his special damages."); *see also, e.g.*, *Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018, 1020-21 (D. Minn. 2006) ("Plaintiffs contend that the time and money they have spent monitoring their credit suffices to establish damages. However, a plaintiff can only recover for loss of time in terms of earning capacity or wages."); *Fischer v. Div. W. Chinchilla Ranch*, 310 F. Supp. 424, 431 (D. Minn. 1970) (refusing to award lost-time damages for the time the plaintiffs had spent working with chinchillas for their chinchilla ranch because the plaintiffs had not given up any time from their regular employment, and noting that while "plaintiffs had less leisure time for other hobbies or activities . . . the court . . . cannot ascribe any monetary value to this.").[52]

- **Mississippi:** *Hotel Markham, Inc. v. Patterson*, 202 Miss. 451, 460 (1947) (describing a barber's testimony regarding his "loss of time" due to the loss of his barber tools, which made it difficult to get work); *Winston v. Cannon*, 430 So. 2d 413, 417 (Miss. 1983) (noting the value of the "loss of 62 work days as a bus driver" and appellee's objection that evidence did not show that "the time lost" was proximately caused by the accident).

- **Montana:** *Irving v. Town of Stevensville*, 149 P. 483, 484 (Mont. 1915) (on the issue of "loss of time," noting that evidence showed that the "plaintiff lost $200 on account of the time he was unable to devote to his ordinary business"); *Morrow v. Bank of Am., N.A.*, 375 Mont. 38, 53 (2014) (noting that the plaintiff's claim for "lost time from [his] accounting work" was a question for the finder of fact).

---

damages were being measured is insufficient to persuade . . . that the expenditure of time and effort alone is a [recoverable] harm." 2010 ME 93, ¶ 13.

[52]     Additionally, to bring a claim for fraud in Minnesota, a party must suffer pecuniary damage. *See Nodland v. Chirpich*, 307 Minn. 360, 368 (1976); *Angeles v. Medtronic, Inc.*, 863 N.W.2d 404, 422 (Minn. Ct. App. 2015).

- **Nebraska:** *Singles v. Union Pac. Ry. Co.*, 173 Neb. 91, 94 (1962) (holding that "loss of time" and "diminished earning capacity" cannot both be recovered during the same period, suggesting that the two are equivalent); *Buchanan v. Prickett & Son, Inc.*, 203 Neb. 684, 687 (1979) ("He has suffered additional damages by reason of pain and suffering and time lost from his regular employment as an electrical lineman and a moonlighting job in a feed mill."); *Hellmeier v. Policky*, 178 Neb. 170, 173 (1965) ("As to time lost, plaintiff testified as to the rate of pay of a cement finisher and stated he lost [four] weeks['] time because of injuries sustained in the accident.").[53]

- **Nevada:** *Cahow v. Michelas*, 62 Nev. 295, 306, 311-12 (1944) (discussing whether damages awarded to the plaintiff for "loss of time" were excessive and equating "loss of time" with "loss of wages"); *Peterson v. Wiesner*, 62 Nev. 184, 204 (1944) (rejecting the plaintiff's claim for "loss of time" where "he did not even tell the court what, or approximately what, wages he would have received had he been employed during the time he lost").

- **New Hampshire:** *Connell v. Putnam*, 58 N.H. 534, 534-35 (1879) (holding that where the "plaintiff left his work" to care for his son, the plaintiff could recover for the "time and labor . . . diverted from his ordinary avocations"); *Ellsworth v. Watkins*, 101 N.H. 51, 54-55 (1957) (discussing whether a plaintiff could recover for "the loss of his time" and equating "loss of time" with loss of "earning capacity").

- **New Jersey:** *Alexander v. Cheaster*, 110 N.J.L. 95, 97-98 (N.J. 1933) ("One who is injured . . . by the wrongful act of another may recover for any loss sustained through being temporarily deprived of his capacity to perform his ordinary labor, or to attend to his ordinary business; that is, he may recover for any loss of time, and consequent loss of earnings."); *Greenberg v. Great Am. Ins. Co.*, 158 N.J. Super. 223, 239 (N.J. Sup. Ct. App. Div. 1978) ("Although not generally articulated, the loss of earnings before trial is merely a part of the recoverable element of lost time, lost wages being merely evidential of the value of a party's lost time."), *aff'd*, 79 N.J. 399 (1979); *see also Tenore v. Nu Car Carriers, Inc.*, 67 N.J. 466, 477 (1975) (describing "loss of time" as a "pecuniary loss[]").[54]

---

[53] Plaintiffs claim that *Singles* "stands for the inapposite and undisputed proposition that a plaintiff injured by an employer cannot double recover (future earnings and future loss of time) for the same loss." (*See* Pls.' Br. 28-29 & n.57). In so claiming, Plaintiffs effectively concede that "lost time" is equivalent to "lost earnings," for if "lost time" also encompassed lost *personal* time, recovery for both "lost earnings" and "lost time" would not necessarily be duplicative.

[54] New GM appears to suggest that Plaintiffs cannot recover *any* lost-time damages under the New Jersey CFA. (*See* New GM Br. 38 (citing *Dibenedetto v. Sparta Transmissions & Auto Repair, Inc.*, No. A-0899-06T1, 2007 WL 2580506, at *6 (N.J. Super. Ct. App. Div. Sept. 10, 2007)). The court in *Dibenedetto* held that the plaintiffs had "failed to establish that they suffered an ascertainable loss" because the only damage they suffered was the "inconvenience" of having to go in "two different directions to go to work." 2007 WL 2580506, at *6. Nowhere did the court suggest that had the plaintiffs suffered lost time in the form of lost income they

- **New Mexico:** *Schmidt v. Sw. Brewery & Ice Co.*, 107 P. 677, 679 (N.M. 1910), *aff'd sub nom. Sw. Brewery & Ice Co v. Schmidt*, 226 U.S. 162 (1912) (finding that the plaintiff was owed compensation for "loss of time" because the payment made by the defendant to the plaintiff was consideration for a release, not wages); *Nava v. City of Santa Fe*, 136 N.M. 647, 653 (holding that the plaintiff presented no evidence of concrete damages such as "lost time from work"); *Montgomery v. Vigil*, 65 N.M. 107, 110 (1958) (noting that special damages included compensation for medical bills and "time lost from work").[55]

- **North Carolina:** *Mintz v. Atl. Coast Line R. Co.*, 233 N.C. 607, 610 (1951) ("[I]f he recovers at all, he recovers compensation for his loss of time, which is the equivalent of wages."); *Kim v. Hansen*, 86 N.C. App. 629, 631-32 (1987) (describing the "element of loss of time" as consisting of losses due to "the impairment of plaintiff's earning capacity" that have "accrued up to the time of trial"); *Ponder v. Budweiser of Asheville, Inc.*, 30 N.C. App. 200, 203 (1976) ("[T]he earnings of the business may afford a reasonable criterion to the owner's earning power" and hence "the pecuniary value of loss of time.").

- **North Dakota:** *Weeks v. Great N. Ry. Co.*, 175 N.W. 726, 727 (N.D. 1919) (holding that while the plaintiff could recover "the value of [] time lost," he was "not entitled to damages for inconvenience, loss of time, or fatigue, unless some pecuniary damage or personal loss [] resulted therefrom"); *Heddon v. N.D. Workmen's Comp. Bureau*, 189 N.W.2d 634, 635 (N.D. 1971) (explaining that the state's disability insurance statute provides for "compensation for loss of earning power during disability, or otherwise stated, compensation for . . . loss of time").

- **Oregon:** *Baxter v. Baker*, 253 Or. 376, 386, 451 P.2d 456, 460 (1969) (en banc) ("It is . . . for [the jury] to use the evidence of the wages lost as a measure of the value of the time of which they have so found the plaintiff to have been deprived." (internal quotation marks and citation omitted)), *overruled on other grounds by Conachan v. Williams*, 266 Or. 45, 511 P.2d 392 (1973); *McKay v. Pac. Bldg. Materials Co.*, 156 Or. 578, 595 (1937) (affirming a jury instruction that "if you conclude that the plaintiff is entitled to damages, then you may consider compensation for the loss of time resulting from

---

would be unable to recover under the New Jersey CFA, and neither of the other two cases cited by New GM — *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783 (N.J. 2005) and *DepoLink Court Reporting & Litig. Support Servs. v. Rochman*, 64 A.3d 579 (N.J. Super. Ct. App. Div. 2013) — imply such a conclusion.

[55]     Plaintiffs cite case law suggesting that a plaintiff could recover for lost vacation time under the New Mexico UTPA.  *See Hale v. Basin Motor Co.*, 110 N.M. 314, 321 (1990) (noting that the court may have looked favorably on a claim for lost vacation time).  Vacation time, however, is an alternative form of wages.  *Cf. Obenauf v. Frontier Fin. Grp., Inc.*, 785 F. Supp. 2d 1188, 1223 (D.N.M. 2011) (noting that "vacation time is personal property" and therefore recoverable under the New Mexico UTPA).

personal injury and measure it by the amount of money which the plaintiff might reasonably have earned in the same time by the pursuit of his ordinary occupation"); *Fields v. W. Union Tel. Co.*, 68 Or. 209, 217-18 (1913) (equating loss of time with loss of earnings).

- **Pennsylvania:** *Leonard v. Balt. & O. R. Co.*, 259 Pa. 51, 56 (1917) ("[W]here the action is for injuries to the person the jury may consider . . . loss of time for inability to work at the usual occupation of the injured person."); *Zamojc v. Fisher*, 127 Pa. Super. 171, 172 (1937) ("The amount of the verdict was not enough to reimburse plaintiff for his time lost from work because of the accident."); *see also* 1 Summ. Pa. Jur. 2d Torts § 9:45 (2d ed.) ("Compensation for loss of time is measured by the amount of money that the injured person might reasonably have earned in the same time by the pursuit of her or his ordinary calling.").

- **Rhode Island:** *Whitlock v. Mungiven*, 90 A. 756, 758 (R.I. 1914) (noting that "loss of time from business" is an element of special damages); *Brody v. Cooper*, 124 A. 2, 3 (R.I. 1924) (holding that a traveling salesman was entitled to recover "reasonable compensation" for the time he lost "before he was fitted to resume his occupation"); *Pimental v. Butterfield*, 120 R.I. 410, 415 (1978) (approving an award of $600 for the plaintiff's "lost time from his customary summer employment").

- **South Carolina:** *Cannon v. Pulliam Motor Co.*, 230 S.C. 131, 139 (1956) (holding, with respect to a breach of warranty claim, that the plaintiff's "inconvenience" in traveling back and forth to the car dealership was not an element of damages); *Rimer v. State Farm Mut. Auto. Ins. Co.*, 248 S.C. 18, 26-27 (1966) (holding that while a plaintiff might be able to recover for time lost in defending himself against an insurer's attachment of his property where a "loss of earnings" was involved, the plaintiff could not recover for his lost "personal time"); *see also Milhous v. Atl. Coast Line R. Co.*, 55 S.E. 764, 765 (S.C. 1906) (discussing whether the plaintiff "was entitled to recover for lost time, or what he could have earned in the time he was out of the use of his baggage"); *Rhodes v. Spartanburg Cty.*, 262 S.C. 644, 651 (1974) (discussing whether an error had operated to the plaintiff's prejudice in the assessment of the amount awarded for "loss of time from her employment."); *Davis v. Tripp*, 338 S.C. 226, 232 (Ct. App. 1999) ("[I]f the party was employed at the time of the injury, his earnings are evidence of the value of his lost time." (citing 22 Am. Jur. 2d Damages § 156 (1988))).

- **South Dakota:** *Byre v. Wieczorek*, 88 S.D. 185, 195 (1974) (noting that "the value of the lost time" is determined by "what the plaintiff's services would have been worth during the time he was incapacitated by the injury"); *Strait v. City of Eureka*, 96 N.W. 695, 696 (S.D. 1903) (finding that testimony regarding lost-time damages was "fatally incompetent" where the evidence showed that the injury did not keep "plaintiff from his place of business or materially interfere[] with his usual employment."); *cf. Stene v. Hillgren*, 77 S.D. 165, 169 (1958) ("The trial court was justified in believing plaintiff's injuries to be inconsequential. He neither lost time from his business nor was he put to more than a few dollars of expense.").

- **Tennessee:** *Acuff v. Vinsant*, 59 Tenn. App. 727, 733 (1969) ("It is not loss of time or earnings, but loss of the power to earn that constitutes this element of damages."); *Yellow Bus Line v. Brenner*, 31 Tenn. App. 209, 220-21 (1948) ("Compensation for [] loss of time . . . is to be measured by the amount of money which the injured man might reasonably have earned in the same time by the pursuit of his ordinary occupation, which may be ascertained from a consideration of the wages actually lost by him or by his average earnings, or from a consideration of his general qualities and his qualifications for any particular business in which he may be engaged.").

- **Vermont:** *Moore v. Grand Trunk Ry. Co.*, 108 A. 334, 337 (Vt. 1919) ("The jury were instructed that it was proper for them to consider plaintiff's loss of time, not only up to the time of the trial, but also such inability and incapacity to work in the future, as they should find established by the evidence."); *Duchaine v. Ray*, 6 A.2d 28, 32 (Vt. 1939) (finding that a verdict was not excessive where the plaintiff "lost time from work for one month at $11 per week"); *see also Halloran v. New Eng. Tel. & Tel. Co.*, 115 A. 143, 144 (Vt. 1921) (describing "loss of time" as a "pecuniary loss[]").

- **Washington:** *Carr v. Martin*, 35 Wash. 2d 753, 756 (1950) (affirming jury instructions that a plaintiff may recover "the reasonable value of the time lost, if any, by reason of inability to pursue his occupation as a result of [his or her] injuries"); *Kubista v. Romaine*, 14 Wash. App. 58, 62 (1975) (stating that, when a plaintiff "is unable to continue earning his prior wages," he or she may recover "lost time," meaning that the plaintiff is entitled to "compensation for regular wages lost because of the disability"), *aff'd*, 87 Wash. 2d 62 (1976); *see also Anderson*, 72 Wash. App. at 261-62 & n.17 (holding that the plaintiffs could recover for "loss of time" understood as loss of earnings, and noting that the parties "all cite various authorities that tend to equate lost time with lost earnings," but that the plaintiffs could not recover for loss of "the opportunity to be free to enjoy life" under loss of time).[56]

- **West Virginia:**[57] *Holtman v. Norfolk & W. Ry. Co.*, 136 S.E. 855, 857 (W. Va. 1927) (affirming a verdict where the jury had been instructed "to consider the [plaintiff's] loss

---

[56]    Additionally, it is plain that the Washington CPA does not allow a plaintiff to recover for lost personal time because it requires proof of injury "to business or property." *Bigelow v. Nw. Tr. Servs.*, No. C14-5798BHS, 2016 WL 4363199, at *4 (W.D. Wash. Aug. 16, 2016) ("The [Washington CPA]'s requirement that injury be to business or property excludes personal injury, 'mental distress, embarrassment, and inconvenience.' . . . Bigelow's damages of loss of time with family, loss of time to pursue personal activities, and other emotional damages do not meet the injury element of a [Washington CPA] claim." (quoting *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn. 2d 412, 431 (2014))).

[57]    Plaintiffs concede that "loss of time" is not a cognizable injury under the West Virginia CCPA, but seek lost-time damages for common-law fraud and breach of implied warranty. (Pls.' Br. 51-52).

of time at his occupation" in estimating the plaintiff's damages); *Payne v. Kinder*, 147 W. Va. 352, 364 (1962) (observing that a married woman "may recover for loss of time . . . if she avers and proves that she employed her time, or some material part of it, in her own separate earnings or business").

- **Wisconsin:** *Kowalke v. Farmers Mut. Auto. Ins. Co.*, 3 Wis. 2d 389, 406 (1958) ("The measure of damages for loss of time is the value of the plaintiff's time while prevented from working . . . the true test being what the plaintiff's services might be worth to him in his ordinary employment."); *Strelecki v. Firemans Ins. Co. of Newark*, 88 Wis. 2d 464, 481 (1979) (noting that "relevant factors to the question of pecuniary damages" included "evidence of the deceased's recurring hospitalization . . . contributing to his loss of time from employment"); *Burlison v. Janssen*, 30 Wis. 2d 495, 504 (1966) (affirming an award of "lost time" damages based on a carpenter and contractor losing months of time "in which he could not work" and where he had "to hire an additional employee in 1962, who remains on the payroll today, to do the work he would have ordinarily done himself"); *see also Chiconas v. LaPorte*, 1997 WL 784123, at *3 (Wis. Ct. App. Dec. 23, 1997) (per curiam) (noting that the plaintiffs had cited no authority for their argument that "the fair monetary value of their personal time and effort was a recoverable loss").

- **Wyoming:** *Mahoney v. Pearce*, 265 P. 446, 447 (Wyo. 1928) (noting that "the earnings of the past furnish the proper basis for estimating the value of lost time"); *Hanson v. Shelburne*, 153 P. 899, 901 (Wyo. 1915) (noting that "the time lost by plaintiff" was "about ten days" where the plaintiff "was unable to work for ten days").

## 2. Lost-Time Damages for Household Work

Strictly limiting compensation to lost income or earnings obviously places those who work in the home without pay — historically, a group disproportionately comprised of women — at a disadvantage. That said, perhaps mindful that household services can be given a pecuniary value, *see Michigan Cent. R.R. Co. v. Vreeland*, 227 U.S. 59, 71 (1913) (noting that the concept of "pecuniary loss" is "not so narrow as to exclude damages for the loss of services of the husband, wife, or child"), some states — including some that generally limit compensation to lost income or earnings — nevertheless recognize a person's right to recover for loss of time performing household labor. By itself, that does not suggest that the state would allow a plaintiff to recover for lost *free* or lost *personal* time; it merely suggests a more capacious understanding of income or the equivalent to include the value of household work, even if unpaid.

The following is a list of states that allow a plaintiff to recover for the loss of his or her *own* household services, with citations to relevant authority:[58]

- **Alabama:** *City of Birmingham v. Carlson,* 209 Ala. 428, 430 (1923) (affirming a judgment in which the only "claim for loss of time" was the plaintiff's "lost time from her household duties" (internal quotation marks omitted)).

- **Alaska:** *Dura Corp. v. Harned*, 703 P.2d 396, 411-12 (Alaska 1985) (affirming a jury verdict awarding damages for the extra time required for plaintiff to perform his household duties where an economist "calculated the value of the[] non-market services at $352,394").

- **Arizona:** *City of Phoenix v. Khan*, 72 Ariz. 1, 7 (1951) (suggesting that "a housewife . . . may recover damages for loss of earning capacity although she had never received any compensation for household work, but the value of such services is capable of being ascertained").

- **Arkansas:** *Butler Cty. R. Co. v. Lawrence*, 250 S.W. 340, 352 (Ark. 1923) (holding that it "was not improper for the jury to consider loss of time" in terms of "pecuniary compensation . . . for being incapacitated from going about the usual household duties").

- **Connecticut:** *Marri v. Stamford St. R. Co.*, 78 A. 582, 586 (Conn. 1911) (holding that a wife had the right to recover for impairment of her "capacity for service and usefulness" and questioning the validity of any "distinction between a wife's capacity for productive service in employment or business and capacity for service within the domain of domestic helpfulness and assistance"), *overruled on other grounds by Hopson v. St. Mary's Hosp.*, 176 Conn. 485 (1979).

- **Florida:** *City of Key W. v. Baldwin*, 69 Fla. 136, 152 (1915) (holding that damages could be "measured by [] loss of time" where a plaintiff could no longer perform her household work as she had before her injury).

- **Idaho:** *Sanchez v. Galey*, 112 Idaho 609, 624 (1986) (approving testimony on the economic value of the loss of the plaintiff's own household services).

---

[58]     Many of the opinions cited below were written at times when men and women were thought to occupy "separate spheres," with unpaid household work being deemed "women's work." *See, e.g.*, Janet Halley & Kerry Rittich, *Critical Directions in Comparative Family Law: Genealogies and Contemporary Studies of Family Law Exceptionalism*, 58 AM. J. COMP. L. 753, 756 (2010). Hence, many cases speak archaically of an injured "housewife" who may receive compensation for her inability to perform her "household duties." Needless to say, such gender norms are no longer acceptable. Accordingly, in those states that have recognized damages for a person's own loss of time devoted to household services, the Court finds that any plaintiff (without regard for gender or marital status) may, with proper proof, recover damages for the loss of time from his or her unpaid household work.

- **Indiana:** *Cole Motor Car Co. v. Ludorff*, 111 N.E. 447, 451 (Ind. Ct. App. 1916) (affirming "loss of time" jury instructions where the plaintiff was a housekeeper who "did her own sewing" and was "rendered permanently unable to perform any household duties" after her injury).

- **Kentucky:** *Schulz v. Chadwell*, 558 S.W.2d 183, 189 (Ky. Ct. App. 1977) (holding that an "impairment of a person's ability to perform household tasks" would be included within a claim for "impairment of earning capacity").

- **Massachusetts:** *Rodgers v. Boynton*, 315 Mass. 279, 281-82 (1943) (stating that a plaintiff can recover damages for the inability "to perform [one's] household duties").

- **Nevada:** *Yamaha Motor Co., U.S.A. v. Arnoult*, 114 Nev. 233, 250 (1998) (affirming an award for the loss of the plaintiff's own "past and future household services" as a "separate compensable economic loss").

- **New Hampshire:** *Panas v. Harakis*, 129 N.H. 591, 606 (1987) (finding it proper for the trial court not to consider the value of a plaintiff's "homemaker services" where the plaintiffs provided no evidence by which to value those services, implying such recovery would be possible upon proper proof).

- **New Mexico:** *McNeely v. Henry*, 100 N.M. 794, 797 (Ct. App. 1984) ("[T]he trial court properly permitted the jury to consider the economic value of plaintiff's loss of ability as a single person to perform household services, and her impairment of ability to do necessary household work is an aspect of the total damages for which plaintiff is entitled to seek recovery."); *Corlett v. Smith*, 107 N.M. 707, 714 (Ct. App. 1988) (noting that household services have value because, when performed, "other income-producing activity [can]not be undertaken" and "specific costs would be incurred if someone else were retained to perform them").

- **North Carolina:** *Helmstetler v. Duke Power Co.*, 224 N.C. 821, 824 (1945) (stating that "a married woman is now entitled to recover in tort for all pecuniary loss sustained by her, including . . . loss from inability to perform labor or to carry on her household duties"), *overruled on other grounds by Nicholson v. Hugh Chatham Mem'l Hosp., Inc.*, 300 N.C. 295 (1980).

- **South Carolina:** *Lane v. Gilbert Const. Co.*, 383 S.C. 590, 598, 601 (2009) (affirming a decision where the plaintiff had recovered for loss of his own services to his family).

- **West Virginia:** *Johnson v. Buckley*, No. 11-0060, 2011 WL 8199962, at *2 (W. Va. Nov. 28, 2011) (affirming a jury award for the value of the lost household services of the plaintiff, who had been a stay-at-home parent for fourteen years).

- **Wyoming:** *Fox v. Fox*, 75 Wyo. 390, 414-15 (1956) (suggesting that a woman may recover lost-time damages for "loss or impairment of [her] ability to perform ordinary duties of the home").

In a related vein, many states prohibit a person from recovering lost-time damages for his or her *own* unpaid household work, but allow a person to recover lost-time damages for the work of *another* — namely, a spouse or next of kin. *See, e.g.*, *Colorado Springs & Interurban Ry. Co. v. Nichols*, 41 Colo. 272, 275 (1907) ("[A married woman] may not recover for loss of time from her household duties, for such loss is an element of damage which the husband alone may recover."); *see also, e.g.*, *Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 584-85 (1974) (holding that a spouse's universally recognized ability to recover for the loss of his or her spouse's support includes "the monetary value of services" "performed at home" by the injured or deceased spouse). No doubt, that practice is rooted at least in part in archaic gender norms.[59] But, at a theoretical level, it can be justified on the ground that unpaid household work can be assigned a concrete value to others who live in that household (namely, the cost of replacing that work with paid labor). The following is a list of states that allow a plaintiff to recover for the loss of *another's* household services, with citations to relevant authority:

- **Colorado:** *Colorado Springs & Interurban Ry. Co.*, 41 Colo. at 275 ("[A married woman] may not recover for loss of time from her household duties, for such loss is an element of damage which the husband alone may recover.").

- **Delaware:** *Estate of Rae v. Murphy*, 956 A.2d 1266, 1272 (Del. 2008) (affirming a jury award where the jurors had been instructed that they could consider the loss of "household services" in an action by a decedent's survivors).

---

[59]    Indeed, for much of American history, the husband alone had a right to compensation for the lost services of his injured or deceased wife because the husband was considered to have an entitlement to his wife's "labor, companionship, [and] society." *Gregory v. Oakland Motor Car Co.*, 181 Mich. 101, 110 (1914); *see also Hackford v. Utah Power & Light Co.*, 740 P.2d 1281, 1284 (Utah 1987). In 1950, the District of Columbia Circuit challenged "the traditional right-to-services basis" of the husband's loss-of-consortium action, and held that "the wife had an equal interest in the marital relationship and an equal right to sue for" the loss of her spouse's consortium and services. *Hackford*, 740 P.2d at 1284 (discussing *Hitaffer v. Argonne Co.,* 183 F.2d 811 (D.C. Cir.), *overruled on other grounds by Smither and Co. v. Coles,* 242 F.2d 220 (D.C. Cir. 1957)). The logic of *Hitaffer* caused an "almost universal extension" to the wife for the loss of consortium and services of her husband. *Id.*

- **District of Columbia:** *D.C. v. Hawkins*, 782 A.2d 293, 303 (D.C. 2001) ("In addition to allowing recovery for pecuniary losses resulting from the loss of financial support the decedent could have been expected to provide his next of kin, recovery is allowed for the value of services the decedent would have provided."); *Johnson v. Baltimore & Potomac R.R. Co.*, No. 29497, 1887 WL 12649, at *2 (D.C. Dec. 17, 1887) ("For injuries of this kind to a married woman two actions will lie — one for injuries to the person only, and one by the husband alone for loss of services, expenses, etc.").

- **Georgia:** *Georgia R. & Banking Co. v. Tice*, 124 Ga. 459 (1905) ("[D]amages for the loss of services of plaintiff's wife . . . [include] her services within the household."); *Brock v. Wedincamp*, 253 Ga. App. 275, 279 (2002) (describing with favor an appellate court decision affirming "a $10,000 verdict when the husband testified that his late wife did all the house-work, nursed his baby, cooked his food, and did the sewing for the household, and, in addition to all this, helped him in his store, and that it would cost him $766 per year to replace these services" (internal quotation marks and citation omitted)).

- **Hawaii:** *Young v. Honolulu Const. & Draying Co.*, 34 Haw. 426, 451-52 (1938) (a husband or wife may bring an action for the "loss of services" of his or her spouse).

- **Illinois:** *City of Bloomington v. Annett*, 16 Ill. App. 199, 202-03 (1885) (holding that the husband alone could recover if his wife had "lost time by being unable to attend to her household duties").

- **Iowa:** *Elenz v. Conrad*, 88 N.W. 337, 337 (Iowa 1901) (granting lost-time damages to a woman's husband for "the value of the time she was unable to perform her household duties"); *Schmitt v. Jenkins Truck Lines, Inc.*, 170 N.W.2d 632, 662 (Iowa 1969) ("While Dorothy washed, ironed, cooked, sewed, cared for the garden, helped her husband paint the home interior and did the housecleaning, less sums were drawn from the family budget. . . . [T]his constituted financial support to the family.").

- **Kansas:** *City of Wyandotte v. Agan*, 15 P. 529, 531 (Kan. 1887) ("[T]he services of the wife in the household, in the discharge of her domestic duties, still belong to the husband . . . . So far as she is injured so as to be disabled to perform such services for her husband, the loss is his, and not hers."); *Cerretti v. Flint Hills Rural Elec. Coop. Ass'n*, 251 Kan. 347, 362-65 (1992) (upholding awards to a surviving husband and his children based in part on testimony of an economist regarding the value of lost household services (including those of "dietitian, chauffeur, buyer, cook, dishwasher, housecleaner, [and] laundress")).

- **Maine:** *Britton v. Dube*, 154 Me. 319, 323 (1958) ("We have then the picture of a wife active on the family farm who must now curtail in large measure the performance of her household duties. The plaintiff['s] husband is entitled to recover compensation for the loss to him of such services.").

- **Maryland:** *United States v. Searle*, 322 Md. 1, 7 (1991) (holding that a spouse may receive "compensation for the loss of domestic services . . . . These are services that can

be performed by domestic workers and their replacement value is measured by prevailing wage rates for such services.").

- **Michigan:** *Scurlock v. Peglow*, 263 Mich. 658, 665 (1933) (approving an award where there was "[p]roof of the reasonable value of the kind of services [the deceased] gave to her husband"); *Dewey v. Perkins*, 295 Mich. 611, 616-17 (1940) (noting that competent proof of recoverable damages for the value of the deceased's household services included "testimony of an operator of a local domestic employment bureau . . . concerning the prevailing wage rate for domestic help").

- **Minnesota:** *Busch v. Busch Const., Inc.*, 262 N.W.2d 377, 399 (Minn. 1977) (finding that the value of the household services of the deceased could "be measured with a degree of objective certainty," including through the use of an employment specialist who "determined the reasonable value of [the] services" of the deceased).

- **Mississippi:** *Miss. Baptist Health Sys., Inc. v. Kelly*, 88 So. 3d 769, 779 (Miss. Ct. App. 2011) (describing an expert's testimony "regarding the value of [] household services" and his explanation that "the physical activities a mother does for her family, such as cleaning the house, traveling, buying groceries, and taking care of the children, can be quantified"); *Tribble v. Gregory*, 288 So. 2d 13, 17 (Miss. 1974) (awarding recovery for "services performed by the husband for the wife which have a monetary value").

- **Montana:** *Kuhnke v. Fisher*, 210 Mont. 114, 127 (1984) (observing that proof of the reasonable value of household services of the deceased "may be supplied by testimony from qualified persons or experts as to the reasonable costs in the community for such services as a cook, housekeeper, babysitter, gardener, and so on, assuming of course, foundation for those items").

- **Nebraska:** *Cent. City v. Engle*, 91 N.W. 849, 849 (Neb. 1902) (per curiam) ("The plaintiff was not entitled to recover for her decreased earning capacity in relation to her ability to perform satisfactorily her household duties. Such damages accrued, if at all, to her husband, who was charged with the duty of her care and maintenance.").

- **New Jersey:** *Johnson v. Dobrosky*, 187 N.J. 594, 610 (2006) (holding that a spouse or next of kin may recover the market value of lost household services).

- **New York:** *Broadnax v. Gonzalez,* 2 N.Y.3d 148, 155 n.3 (2004) (holding that a husband may bring a claim for "loss of services" where his wife has a cause of action for her injuries).

- **North Dakota:** *Milde v. Leigh*, 75 N.D. 418, 423-24 (1947) ("For an injury to the wife, either intentionally or negligently caused, which deprives her of the ability to perform services, or lessens that ability, the husband may maintain an action for the loss of service.").

- **Ohio:** *Davis v. Guarnieri*, 45 Ohio St. 470 (1887) (noting that a husband could expect to recover the pecuniary value of the services of the deceased wife); *Miller v. State*, No.

13AP-849, 2014 WL 4245913, at *6, *20 (Ohio Ct. App. Aug. 28, 2014) (affirming a verdict of damages for loss of the deceased's household services based on an economist's testimony as to their value).

- **Oklahoma:** *Long v. McWilliams*, 69 P. 882, 883 (Okla. 1902) ("The general rule is that a married woman engaged in the household duties for her husband cannot recover for loss of time, but that the husband may recover for such loss.").

- **Oregon:** *Prauss v. Adamski*, 195 Or. 1, 23-24 (1952) (finding that the "pecuniary loss" suffered by the beneficiaries of the deceased included her "husband's loss of her services in the household").

- **Pennsylvania:** *Walton v. Avco Corp.*, 383 Pa. Super. 518, 548 (1989) (noting that expert testimony at trial "established the figure of $43,428.00 as a reasonable value for the loss of [the] household services" of the plaintiff's husband), *aff'd in part, rev'd in part on other grounds*, 530 Pa. 568 (1992).

- **Rhode Island:** *Golden v. R.L. Greene Paper Co.*, 116 A. 579, 579 (R.I. 1922) ("We think from the testimony that the sum of $1,200 will amply cover the plaintiff's damages due to the loss of his wife's services and to the expense to which he has been or will be put by reason of said injuries to his wife.").

- **South Dakota:** *Binegar v. Day*, 80 S.D. 141, 145 (1963) ("The cause of action in favor of the husband is not for the injury to the wife but for the damage to the husband on account of the loss of the wife's services.").

- **Tennessee:** *Taylor v. Beard*, 104 S.W.3d 507, 509 (Tenn. 2003) (observing that an action for loss of consortium "include[s] recovery for the loss of the wife's services . . . due to tortious injury").

- **Utah:** *Paul v. Kirkendall*, 1 Utah 2d 1, 5 (1953) ("As to the basis of the jury award of $5,000 to Mr. Paul for loss of his wife's services, the jury could properly consider . . . the household help necessary up to the date of the trial.").

- **Vermont:** *Lindsey v. Town of Danville*, 46 Vt. 144, 145-46 (1873) (affirming an instruction to the jury that they "were to ascertain by the evidence what part of the wife's services the plaintiff had lost by reason of the injury, and what that part was worth; that the plaintiff was entitled to recover a sum equal to such value; and that, to determine the amount, they might consider what the plaintiff had been obliged to pay for help to do the housework for his family since said injury"); *Gilman v. Gilman*, 115 Vt. 49, 51 (1947) ("[A plaintiff's husband] may maintain an action in his own name for . . . the loss of [his wife's] services.").

- **Virginia:** *Pugh v. Yearout*, 212 Va. 591, 596 (1972) (approving recovery for loss of the deceased's services where there was evidence that "she cooked, washed, ironed, cleaned and took care of the house for her husband and child" and "that it would cost from $50 to $60 a week to employ and compensate someone to render these services").

- **Washington:** *Lundgren v. Whitney's, Inc.*, 94 Wash. 2d 91, 94 (1980) (en banc) ("The husband's right to damages for loss of consortium was recognized in two early Washington cases in which the courts permitted damages to a husband for loss of an injured wife's 'services' in the household.").

- **Wisconsin:** *Lambert v. Wrensch*, 135 Wis. 2d 105, 125 (1987) ("The services rendered by Plaintiff in her capacity as a homemaker were certainly valuable. But the substance of the services and duties which she was unable to perform during her period of recovery, and for which she seeks recovery, overlaps with the types of duties incorporated in the phrase, 'material services,' as used in the jury instruction on her husband's loss of consortium claim.").

### 3. States Allowing Recovery for Lost Time Beyond Lost Earnings

Although the vast majority of states limit lost-time damages to lost earnings or income (including, in some instances, the value of unpaid housework), the Court concludes that six states — Colorado, New York, Ohio, Oregon, Utah, and Virginia — may allow a plaintiff to recover for lost free or personal time, at least for some claims. Of these states, Oklahoma appears to be the most permissive, as there is authority indicating that a plaintiff may recover for lost free time under both the state's consumer protection statute and at common law. In the other five states, damages for lost free time do not appear to be available with respect to Plaintiffs' common-law claims of fraud and implied warranty; but there is authority supporting such damages under the states' consumer-protection statutes. The Court will discuss each state in turn.

### i. Colorado

Colorado plaintiffs bring claims for common-law fraud, for breach of implied warranty, and for violations of the Colorado CPA. (*See* 5ACC ¶¶ 1790-1837). Like the states discussed above, Colorado has historically equated "lost time" damages with "lost income" at common law. *See Nevin v. Bates*, 141 Colo. 255, 258 (1959) (determining a plaintiff's "loss of time" damages according to the value of her daily income as a beauty operator); *Schell v. Navajo Freight Lines, Inc.*, 693 P.2d 382, 385 (Colo. App. 1984) (holding that a tenant farmer's "loss of income or

profits [was] admissible to show the pecuniary value of lost time"); *Goetz v. Sec. Indus. Bank*, 508 P.2d 410, 411-12 (Colo. App. 1973) (holding that the plaintiff could recover for "damages for the time he lost from working" due to the time he "spent attempting to convince the bank that it had the wrong property"); *Houser v. Eckhardt*, 506 P.2d 751, 756-57 (Colo. App. 1972) (holding that "[l]oss of time," measured on the basis of lost income, "was a proper element of plaintiff's damages" where the plaintiff "approximated the loss of time from his self-employed, one-man air-conditioning business, and . . . testified as to the amount per hour that he charged his customers").[60]

Plaintiffs may, however, recover for lost personal time under the Colorado CPA. The Colorado CPA provides that "an actual or potential consumer . . . [who] is injured as a result of [a] deceptive trade practice" may recover "actual damages" *or* statutory damages of "[f]ive hundred dollars." Colo. Rev. Stat. Ann. § 6-1-113. As the Colorado Supreme Court noted in *Crowe v. Tull*, 126 P.3d 196 (Colo. 2006), "[t]he [Colorado CPA] does not specify which injuries it is intended to prevent," but in considering the types of injuries that would suffice to maintain a

---

[60]     Plaintiffs cite to a Colorado case suggesting that, at common law, a plaintiff can recover for the "loss of use" of his or her vehicle. (*See* Pls.' Br. 8 (citing *Wagner v. Dan Unfug Motors, Inc.*, 35 Colo. App. 102, 107 (1974) (noting that "damages for loss of use of a personal vehicle are allowable" and that an award for one month's car rental was not unreasonable)). But "loss of use" and "loss of time" are two different types of damages. While loss of time compensates for the value of one's lost time, and is typically measured by lost income, loss of use compensates for the loss of one's use of his or her vehicle, and is typically measured by rental value. *See, e.g.*, *Koninklijke Luchtvaart Maatschapij, N. V. v. United Techs. Corp.*, 610 F.2d 1052, 1056 (2d Cir. 1979) (noting that "[t]he theory behind the allowance of damages for loss of use is that it is not the actual use but the [r]ight to use that is compensable" and that in determining damages for loss of use of a vehicle, "a court will inquire into its rental value during the time it is out of use for repairs"); *Indus. Supply Co. v. Goen*, 58 N.M. 738, 744 (1954) (noting that lost-use damages are "generally computed by rental value, — by the expense of hiring a substitute" (quoting Babbit, Motor Vehicle Law (4th ed.), § 2330, p. 1691) (internal quotation marks omitted)). Plaintiffs do not plead "loss of use" claims under Colorado law.

private claim for relief under the CPA, the *Crowe* Court pointed to an earlier case in which a person who had "expended time and effort considering [a] retailer's advertised merchandise" was deemed to be an "affected consumer[]" within the meaning of the Colorado CPA. *Id.* at 209-10. While the cited case involved the civil penalty provision of the Colorado CPA, the *Crowe* Court did not suggest that such an injury would be insufficient to maintain a private claim. Thus, under the Colorado CPA, Plaintiffs may recover statutory damages for lost personal time.[61]

### ii. New York

New York Plaintiffs bring claims for common-law fraud, for breach of implied warranty, and for violations of General Business Law ("GBL") Sections 349 and 350, which generally prohibit "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349; *see also* N.Y. Gen. Bus. Law § 350. (*See* 5ACC ¶¶ 5133-88). New York courts have historically equated "lost time" with "lost income" for purposes of common-law claims. *See, e.g.*, *Kies v. Binghamton R. Co.*, 177 A.D. 242, 243-44 (N.Y. App. Div. 1917) (stating that, although the plaintiff had been unable to return to her work at a restaurant she owned, "[n]o evidence was given or offered tending to show the receipts or the expenses of her business, the value of her time or what she was earning from her business"); *Pickett v. Town of W. Monroe*, 47 A.D. 629, 630-31 (N.Y. App. Div. 1900) ("'Loss of earning capacity,' when used as here, must be deemed to mean the same as loss of capacity to earn, loss of services, loss of time."); *Berlinski v. Congregation Emanuel of City of N.Y.*, 29 A.D.2d 1036, 1036 (1968) ("There was no lost time (wages) on and after April 8, 1957 until May 18, 1965.").

---

[61] As noted above, New GM argues that the Colorado CPA does not provide remedies to class members. (New GM Br. 48 n.39). The Court defers that issue to a later day.

The Court concludes, however, that Plaintiffs may recover for lost *personal* time under the GBL. Section 349 of the GBL provides that "any person who has been injured by reason of any violation of [the statute] may bring an action . . . to recover his actual damages or fifty dollars, whichever is greater." Section 350-e of the GBL provides similarly that "[a]ny person who has been injured by reason of any violation of [Section 350] may bring an action . . . to recover his or her actual damages or five hundred dollars, whichever is greater." The standards that apply to claims under Sections 349 and 350 are identical. *See, e.g.*, *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (2002). New York courts have held that a consumer must prove "'actual' injury" under Section 349 (and hence Section 350), *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000), but need not establish "actual damages" under Section 350 (and hence Section 349), *Geismar v. Abraham & Strauss*, 109 Misc. 2d 495, 499 (N.Y. Dist. Ct. 1981). A plaintiff can show "actual injury" merely by proving that he or she was "misled or deceived by an advertisement which is misleading in a material way." *Id.* Thus, for example, a person who "traveled to defendant's showroom on the basis of a misleading and deceptive ad . . . suffered injury" was entitled to recover statutory damages of fifty dollars. *Beslity v. Manhattan Honda, a Div. of Dah Chong Hong Trading Corp.*, 120 Misc. 2d 848, 854 (N.Y. App. Term 1983). So too, Plaintiffs here may be entitled to statutory damages.

The Court is unpersuaded by New GM's contention that "New York law would not allow lost time damages for vehicle repairs even if the plaintiff lost time from work." (New GM Br. 35). In support of that contention, New GM cites a single case from a New York City civil court that involved warranty claims and claims under New York's Used Car Lemon Law, N.Y. Gen. Bus. Law § 198-b. *See Williams v. Planet Motor Car, Inc.*, 738 N.Y.S.2d 170 (N.Y. Civ. Ct. 2001). The *Williams* Court did indeed hold that "lost time for repairs is not compensable," *id.* at

33, but it provided no reasoning and cited no authority in support of that broad claim, which flies in the face of the precedent cited above. Moreover, at most, the *Williams* Court's holding would apply to Plaintiffs' implied warranty claims. Indeed, New York's Used Car Lemon Law is wholly distinct from the consumer protection statutes invoked by Plaintiffs here — most significantly in that it does not provide for statutory damages. *See* N.Y. Gen. Bus. Law § 198-b. Finally, other New York courts have in fact contemplated recovery for lost-time damages in the case of warranty claims. *See Nassau Suffolk White Trucks, Inc. v. Twin Cty. Transit Mix Corp.*, 62 A.D.2d 982, 984 (N.Y. App. Div. 1978). The Court thus concludes that New York Plaintiffs may recover for lost-time damages understood as the equivalent of lost earnings for their fraud and implied-warranty claims, and for "loss of time," expansively defined, under GBL Sections 349 and 350.

### iii. Ohio

Ohio Plaintiffs bring claims for common-law fraud, for implied warranty in tort, and for violations of the Ohio CSPA. (*See* 5ACC ¶¶ 5519-69). Historically, Ohio courts have also equated "lost time" with "lost income" under the common law. *See A.F. Waite Taxi & Livery Co. v. McGrew*, 16 Ohio App. 219, 223 (1922) ("[L]oss of time and loss of earnings ordinarily mean the same thing."); *Vieira v. Addison*, No. 98-L-054, 1999 WL 689932, at *2 (Ohio Ct. App. Aug. 27, 1999) ("Compensatory damages for injuries include direct pecuniary loss, such as . . . loss of time or money . . . . Some of these elements of damages, such as the costs and expenses of the injury and loss of time from employment, entail only the rudimentary process of accounting to calculate."); *Rutherford v. Ohio Fin. Co.*, 69 Ohio Law Abs. 417, 417-18 (Ohio Com. Pl. 1954) ("Loss of time and consequent loss of earnings . . . are proper elements of damages for the consideration of the jury in personal injury actions." (internal quotation marks

and citations omitted)).  And at least one Ohio court has suggested that damages for lost personal time are not cognizable in the case of a common-law tort claim.  *See Arrowood v. Ohio Dep't of Transp.*, No. 2004-04183-AD, 2004 WL 1587304, at *1 (Ohio Ct. Claims June 15, 2004) (finding, in an action for negligence, that "all the trouble that [the plaintiff] went through to get two damage estimates, the accident report, all gas used and time lost" were "not recognizable elements of damages") (internal quotation marks omitted).

There is, however, reason to believe that lost personal time may be recoverable under the Ohio CSPA.[62]  Under the Ohio CSPA, a plaintiff may recover "an amount not exceeding five thousand dollars in noneconomic damages."  Ohio Rev. Code Ann. § 1345.09(A), (B).  Noneconomic damages have been awarded under the Ohio CSPA for "inconvenience, aggravation, frustration, and humiliation."  *Whitaker v. M.T. Auto., Inc.*, 111 Ohio St. 3d 177, 183 (2006) (collecting cases).  That suggests that the Ohio Supreme Court would recognize a claim for lost personal time under the Ohio CSPA.  In response, New GM cites an intermediate appellate court case holding that "the inconvenience of transporting [the plaintiff's] granddaughters to school" was "not a pecuniary loss compensable under the [Ohio CSPA]." *Snyder v. Watkins*, No. 08CA3006, 2008 WL 4376830, at *2 (Ohio Ct. App. Sept. 23, 2008).  But that statement is nothing more than a tautology: inconvenience is, by definition, not a form of "pecuniary" loss.  The Court does not appear to have considered whether the plaintiffs' inconvenience could be compensable under the Ohio CSPA as a form of noneconomic damage.

---

[62]    Like its Colorado counterpart, the "the [Ohio CSPA] does not entitle a *class* of Ohio consumers to recover noneconomic damages; it entitles them to recover *actual damages*." *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 681 (6th Cir. 2017) (first emphasis added).  Once again, however, the Court defers to another day whether that limits Plaintiffs' relief here.

### iv.    Oklahoma

Oklahoma Plaintiffs bring claims for common-law fraud, for breach of implied warranty, and for violations of the Oklahoma Consumer Protection Act ("Oklahoma CPA").  (*See* 5ACC ¶¶ 5671-5720).  Although the issue is a close one, the Court concludes that Oklahoma is an outlier and that Plaintiffs should be permitted to pursue relief for lost free or personal time for all of their claims under Oklahoma law.  In a 1916 action for wrongful attachment, the Oklahoma Supreme Court held that the defendants could recover for the "loss of time" associated with three trials.  *Reliable Mut. Hail Ins. Co. v. Rogers*, 160 P. 914 (Okla. 1916).  Significantly, in elaborating on that lost time, the court noted that the plaintiffs "were required to travel long distances and appear in court several times" and did not mention anything about wages or earnings.  *Id.* at 917.  And while, as acknowledged above, it is not unusual for courts to mention "loss of time" without mentioning lost earnings or wages, it is unusual for courts to elaborate on the meaning of "loss of time" without discussing lost earnings or wages.  On top of that, Oklahoma intermediate courts have cited *Reliable* in holding that a plaintiff may recover damages for "lost time," expansively defined, under the Oklahoma CPA.  In *Fuller v. Sight 'N Sound Appliance Centers, Inc.*, 982 P.2d 528 (1999), for example, the Oklahoma Court of Civil Appeals discussed the plaintiffs' recovery for "loss of time" damages in connection with their recovery for "inconvenience, travel and telephone expenses, and ruined food."  *Id.* at 533 (citing *Reliable*, 61 Okla. 226); *see also Brashears v. Sight 'N Sound Appliance Centers, Inc.*, 981 P.2d 1270, 1274 (1999) (same).  By pairing "loss of time" with damages for "inconvenience, travel, and telephone expenses, and ruined food," and making no mention of lost wages or earnings, these decisions suggest that Oklahoma Plaintiffs may recover for lost free or personal time.

Citing *Tibbetts v. Sight 'n Sound Appliance Centers, Inc*., 77 P.3d 1042 (2003), New GM argues that recovery is limited under the Oklahoma CPA to "loss of money or property." (New GM Br. 40 & n.32). The *Tibbetts* Court did state that "actual monetary damages, i.e., actual injury, was an essential element of the private right of action under the [Oklahoma CPA]." *Id.* at 1051. Strictly speaking, however, the question presented in *Tibbetts* was whether the plaintiffs, who prevailed at trial but were awarded zero damages, were entitled to attorney's fees; thus, the court did not have occasion to survey the full range of damages available under the Oklahoma CPA. Notably, the court assumed without deciding that plaintiffs were correct in arguing (in reliance on *Brashears*) "that monetary damages may be awarded in a private [Oklahoma CPA] case for things such as loss of time, inconvenience, and travel and telephone expenses." *Id.* at 1050 n.10. In fact, to the Court's knowledge, no court has cast doubt on the notion that *Reliable*, *Fuller*, and *Brashears* authorize recovery for lost free or personal time. Accordingly, the Court concludes that Oklahoma Plaintiffs may pursue such damages for all of their claims.

### v. Utah

Utah Plaintiffs bring claims for common-law fraud and for violations of the Utah Consumer Sales Practices Act ("Utah CSPA"). (*See* 5ACC ¶¶ 6663-6710). With respect to the former, Utah courts have followed the majority rule in historically equating "lost time" with "lost income." *See Littledike v. Wood*, 69 Utah 323 (1927) (holding that there was no evidence by which compensation for "loss of time" could be measured where "no evidence was given as to the occupation or earning capacity or earnings of the respondent, nor as to the value of the time lost or as to what earnings, or the amount or value thereof, were lost by him"); *Corbett v. Seamons*, 904 P.2d 229, 235 (Utah Ct. App. 1995) ("The owner is entitled to damages only for the reasonable value of working time lost to date . . . ."). Nevertheless, the Court concludes that

Utah courts may allow Plaintiffs to recover for lost personal time under the Utah CSPA, which provides that "[a] consumer who suffers *loss* as a result of a violation of [the Utah CSPA] may recover . . . actual damages *or* $2,000, whichever is greater." Utah Code Ann. § 13-11-19(2) (emphases added). The case law on damages under the Utah CSPA is sparse, but the Utah Court of Appeals engaged in a thorough analysis of the statutory language and concluded that the statute's provision of "$2,000" for a "loss" in violation of the Utah CSPA was "essentially a civil penalty in the amount of $2000 where the consumer's actual damages may otherwise be de minimis, speculative, or too difficult to prove, but where the consumer can show that a loss has been suffered as a result of a violation of the [Utah CSPA]." *Andreason v. Felsted*, 137 P.3d 1, 5 (Utah Ct. App. 2006). In light of that authority and the statutory language, the Court concludes — for much the same reasons it concluded similarly as to New York's consumer protection statutes —that damages for lost personal time are recoverable under the Utah CSPA.[63]

### vi. Virginia

Virginia Plaintiffs bring claims for common-law fraud, for breach of implied warranty, and for violations of the Virginia Consumer Protection Act ("Virginia CPA"). (*See* 5ACC ¶¶ 6891-6938). Again, Virginia courts have historically equated "lost time" with "lost income" for purposes of the common law. *See Hoge v. Anderson*, 200 Va. 364, 368 (1958) ("The measure of damages for loss of time is the value of the plaintiff's time while prevented from working . . . , the true test being what his services might be worth to him in his ordinary employment or business." (internal quotation marks and citation omitted)); *Nat'l Cab Co. v. Thompson*, 208 Va.

---

[63] Similar to its Colorado and Ohio counterparts, the Utah CSPA states that "[a] consumer who suffers loss . . . may recover, *but not in a class action*, actual damages or $2,000, whichever is greater, plus court costs." Utah Code Ann. § 13-11-19 (emphasis added). The Court defers to another day whether the provision limits Plaintiffs' relief here.

731, 736-37 (1968) (reversing a verdict as to damages in part because there was no evidence that the plaintiff's injury had caused any "loss of time from work"); *Reynolds v. Pionear, LLC*, No. 3:15-CV-209, 2016 WL 1248866, at *3 (E.D. Va. Mar. 25, 2016) (noting that the plaintiff had suffered "loss of time" where the plaintiff alleged that "her promotion [was] delayed while her current employer investigated her with respect to [the defendant's] false statements about her prior employment" (bracket in original)); *see also Moore v. Lewis*, 201 Va. 522, 527, 111 S.E.2d 788, 792 (1960) (finding that there was "no evidence of the plaintiff's 'loss of time' or 'deprivation from carrying on her normal activities'" and that any "inconvenience" suffered by the plaintiff was instead compensable "as a form of her mental suffering").  Like Utah's consumer protection statute, however, the Virginia CPA provides that "[a]ny person who suffers loss as the result of a violation of the [statute] shall be entitled to initiate an action to recover actual damages, or $500, whichever is greater."  Va. Code Ann. § 59.1-204(A).  As far as the Court can tell, the Virginia courts have provided little guidance with respect to the meaning of "loss" under the Virginia CPA.  In light of the similarities in language between the Utah and Virginia consumer protection statutes, this Court concludes that Virginia Plaintiffs may recover under a more expansive definition of loss of time under the Virginia CPA.[64]

## C. Unjust Enrichment

The final issue addressed by the parties is whether Plaintiffs may bring claims for unjust enrichment.  As it did with respect to the jurisdictions at issue in the earlier motions to dismiss, New GM raises two kinds of arguments with respect to those claims: first, that a plaintiff may

---

[64]     The Virginia CPA also provides that "[a] consumer who suffers loss . . . may recover, *but not in a class action*, actual damages or $2,000, whichever is greater, plus court costs."  Utah Code Ann. § 13-11-19 (emphasis added).  Yet again, the Court defers to another day whether the provision limits Plaintiffs' relief here.

not maintain an unjust enrichment claim where there exists a valid contract (such as a warranty) and, second, that a plaintiff may not maintain an unjust enrichment claim where there is an adequate remedy at law, whether it sounds in contract, fraud, or tort. (*See* New GM Br. 49-55). Notably, Plaintiffs concede that they are barred from bringing unjust enrichment claims in the majority of remaining states. (*See* Parties' Stipulation). Thus, "only" ten states remain in dispute: Arizona, Connecticut, Mississippi, New Hampshire, New Jersey, New Mexico, Oregon, Rhode Island, South Carolina, West Virginia. The Court concludes that New GM's arguments are largely right. First, in nine out of the ten states (all but Connecticut), a plaintiff may plead "unjust enrichment" in the alternative only where the validity or enforceability of a contract is in question.[65] And second, in seven out of the ten states (all but Connecticut, New Hampshire, and Rhode Island), a plaintiff may not maintain an unjust enrichment claim if he or she has an adequate remedy at law. The Court will discuss each state in turn.

### i. Arizona

Under Arizona law, a plaintiff may pursue an unjust enrichment theory "as an alternative theory of recovery in conjunction with [a] breach of contract claim," but only where the validity of the contract is in dispute or the plaintiff may be deemed to be the breaching party. *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 202 Ariz. 535, 542-43 (Ct. App. 2002), *as corrected* (June 19,

---

[65] As the Court previously noted, the question of whether a plaintiff may pursue an unjust enrichment claim where there is a valid contract "is a substantive one — namely, what it takes, as a matter of state law, to allege a plausible claim of unjust enrichment (or to negate an otherwise valid claim thereof)." *FACC Op.*, 257 F. Supp. 3d at 415 n.13. Thus, if the allegations in the operative Complaint (or the lack thereof) "render a particular claim implausible, the claim is subject to dismissal, even though a plaintiff is entitled under Rule 8(d)(3) of the Federal Rules of Civil Procedure to 'state as many separate claims . . . as it has, regardless of consistency.' It is for that reason that Plaintiffs' unjust enrichment claims must be considered on a state-by-state basis — and that the Court's conclusions as to those claims varies somewhat by state." *Id.*

2002) (holding that a party may not seek "to avoid possible contractual limitations on its recovery by resorting to an unjust enrichment cause of action"); *see also Gerlach v. Uptown Plaza Assocs., LLC*, No. 1 CA-CV 14-0684, 2016 WL 359494, at \*4 (Ariz. Ct. App. Jan. 28, 2016) (holding that, where a valid contract exists, unjust enrichment may not be pleaded in the alternative); *Seaboard Sur. Co. v. Grupo Mexico, S.A.B. de C.V.*, No. 06-CV-0134-PHX-SMM, 2009 WL 4827029, at \*13-14 (D. Ariz. Dec. 15, 2009) (same); *Maricopa Inv. Team, LLC v. Johnson Valley Partners LP*, No. 1 CA-CV 12-0047, 2012 WL 5894849, at \*3 (Ariz. Ct. App. Nov. 23, 2012) (same); *Emery v. Mission View Mgmt., Inc.*, No. 2 CA-CV 2009-0104, 2010 WL 520570, at \*3 (Ariz. Ct. App. Feb. 12, 2010) (noting that the *Trustmark* Court distinguished between situations where "the invalidation of a disputed contract would eliminate" a remedy at law, in which case a plaintiff may plead unjust enrichment in the alternative, and situations where a party's obligation arose out of contract, in which case a plaintiff may not).

Plaintiffs rely on two federal court opinions — *Arnold & Assocs., Inc. v. Misys Healthcare Sys.,* 275 F. Supp. 2d 1013, 1030 (D. Ariz. 2003); and *Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000) — to argue that the existence of a contract "does not automatically invalidate an unjust enrichment alternative theory of recovery." (Pls.' Resp. 5). In *Trustmark*, however, the court read *Adelman* to allow pleading of unjust enrichment in the alternative only where the validity of the contract was at issue or where the plaintiff had herself breached the contract and so could not recover under it. *See Trustmark*, 202 Ariz. at 542-43. Other Arizona courts have done the same. *See, e.g., Jonovich Cos., Inc. v. City of Coolidge*, No. 2 CA-CV 2011-0029, 2011 WL 5137180, at \*5 (Ariz. Ct. App. Oct. 31, 2011); *Aldabbagh v. First Am. Title Ins. Co.*, No. 1 CA-CV 06-0708, 2008 WL 4069204, at \*11 (Ariz. Ct. App. Mar. 6, 2008); *see also Seaboard Sur. Co.*, 2009 WL 4827029, at \*14 (finding that *Trustmark* and

*Brooks*, and not *Adelman*, were controlling).  *Arnold*, meanwhile, relied primarily on *Adelman* and on *USLife Title Co. of Ariz. v. Gutkin*, 152 Ariz. 349, 355 (Ct. App. 1986), in which the court barred the plaintiff from receiving compensation under a theory of unjust enrichment because a binding agreement existed between the parties.  Thus, neither *Adelman* nor *Arnold* supports a different conclusion.

In any event, to bring an unjust enrichment claim under Arizona law, "a party must show 'the absence of any remedy at law.'"  *Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, 211 (Ct. App. 2010) (quoting *Mousa v. Saba*, 222 Ariz. 581, 588 (Ct. App. 2009)); *see also Dig. Sys. Eng'g, Inc. v. Bruce-Moreno*, No. 1 CA-CV 09-0574, 2010 WL 5030808, at *4 (Ariz. Ct. App. Nov. 16, 2010) (holding that a plaintiff was precluded from obtaining judgment on an unjust enrichment claims where the plaintiff also brought a fraud claim against the same parties on the same substantive facts).  Moreover, a plaintiff need not be guaranteed success for a legal remedy to be "adequate."  *See Trustmark*, 202 Ariz. at 541 n.5 ("Although Trustmark framed the issue using the terminology of an 'adequate' remedy at law, a party's right to seek unjust enrichment is not controlled by whether the party has an 'adequate' remedy at law — in the sense of providing all the relief the party desires — but by whether there is a contract which governs the relationship between the parties.").

### ii.    Connecticut

The parties agree that, under Connecticut law, an express contract does not bar an unjust enrichment claim that is not inconsistent with the contract.  (*See* New GM Resp. 23 n.14; Parties' Stipulation).  Nevertheless, New GM argues "that unjust enrichment is not available where plaintiffs allege an adequate legal remedy."  (New GM Br. 49 & n.40).  Connecticut courts have indeed held that equitable relief "is unavailable if there is an adequate remedy at law," *Town of*

*Plainville v. Almost Home Animal Rescue & Shelter, Inc.*, 182 Conn. App. 55, 68-69 (2018), but they have not exactly been models of clarity with respect to whether unjust enrichment constitutes "equitable" relief. Some courts have declared that unjust enrichment is an "equitable" remedy. *See, e.g.*, *Meaney v. Conn. Hosp. Ass'n, Inc.*, 250 Conn. 500, 511 (1999) ("A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another."); *Gagne v. Vaccaro*, 80 Conn. App. 436, 441 (2003) ("[T]he Connecticut decisions referring to [an unjust enrichment] claim as 'equitable' are numerous."). But the Connecticut Supreme Court has characterized an unjust enrichment claim seeking monetary relief as "an action at law," *Misisco v. La Maita,* 150 Conn. 680, 684 (1963) ("Although the right of recovery is based on equitable principles, it is nevertheless an action at law, the purpose of which is to prevent unjust enrichment."), and lower Connecticut courts have followed suit, *see e.g.*, *Gagne*, 80 Conn. App. at 443 ("As the court here found money damages to be an adequate remedy, and in light of [] the *Misisco* precedent . . . , we conclude that this particular action for restitution more aptly is characterized as legal, rather than equitable, in nature."); *Dicin Elec. Co., Inc. v. O & G Indus., Inc.*, No. HHDCV166070813S, 2017 WL 2764752, at *2 (Conn. Super. Ct. May 25, 2017) (finding that a claim for unjust enrichment does not depend on whether a plaintiff has an adequate remedy at law); *Rapoport v. Southfield Point Ass'n*, No. CV020188888, 2004 WL 2222383, at *9 (Conn. Super. Ct. Sept. 2, 2004) (same).[66] Thus, the Court concludes that an adequate legal remedy does not bar a damages claim for unjust enrichment under Connecticut law.

---

[66] The Court declines to follow the lower court cases New GM cites — *U.S. Fid. & Guar. Co. v. Metro. Prop. & Liab. Ins.* Co., 10 Conn. App. 125, 127-28 (1987), and *Oddo v. Warren*,

### iii. Mississippi

In Mississippi, unjust enrichment "applies only where no legal contract exists." *Willis v. Rehab Sols.*, PLLC, 82 So. 3d 583, 588 (Miss. 2012); *accord Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005). Hence, "when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under an unjust enrichment or quasi-contract theory, because the parties to the contract should be bound by their express agreements." *Beau Rivage Resorts, Inc. v. Bel-Aire Prods., Inc.*, No. 1:07CV49WJG-JMR, 2008 WL 3978099, at *3 (S.D. Miss. Aug. 20, 2008) (citing *Ellis v. Anderson Tully Co.,* 727 So. 2d 716, 719 (Miss. 1998)). Quoting from *Union National Life Insurance Co. v. Crosby*, 870 So. 2d 1175, 1181 (Miss. 2004), Plaintiffs counter that unjust enrichment claims "may proceed in the face of a valid contract upon proof 'that [the defendant] breached the contract.'" (Pls.' Br. 24). *Crosby* does indeed suggest that an unjust enrichment claim can be brought based on a defendant's breach of a contract alone, but its thinly reasoned conclusion runs counter to the weight of Mississippi authority. As such, the Court declines to rely on it here. In any event, all of the Mississippi Plaintiffs' unjust enrichment claims fail for a separate reason: Because they have adequate remedies at law. Under Mississippi law, "unjust enrichment is an equitable claim," *Willis* 82 So. 3d at 588; *see also Germany v. Germany*, 123 So. 3d 423, 431 (Miss. 2013) ("This Court has made it clear that the remedies of constructive trust and unjust enrichment are equitable."), and "equitable relief is unavailable if there exists an adequate remedy at law." *Joel v. Joel*, 43 So. 3d 424, 430 n.10 (Miss. 2010) (alterations in the original omitted). Further, to be "adequate" a remedy need not

---

No. CV075003533S, 2008 WL 224077, at *17 (Conn. Super. Ct. Jan. 3, 2008 — because, among other things, they do not cite or discuss the Connecticut Supreme Court's decision in *Misisco*.

be successful.  *See, e.g.*, *Edward Hines Yellow Pine Trs. v. Knox*, 108 So. 907, 910-11 (Miss. 1926); *Farmer v. State Dep't of Pub. Safety*, 907 So. 2d 981, 984 (Miss. Ct. App. 2005).

### iv.    New Hampshire

New Hampshire courts do not allow "recovery under a theory of unjust enrichment when there is a valid, express contract covering the subject matter at hand."  *Axenics, Inc. v. Turner Const. Co.*, 164 N.H. 659, 669 (2013); *Barlo Signs Int'l, Inc. v. GCD Inc.*, No. 2017-0589, 2018 WL 3237974, at *2 (N.H. June 29, 2018) ("[U]njust enrichment is an equitable remedy that is available only in the absence of an enforceable contract governing the matter."); *Yorgo Foods, Inc. v. Orics Indus., Inc.*, No. 08-CV-438-SM, 2011 WL 4549392, at *11 (D.N.H. Sept. 29, 2011) ("A cause of action for unjust enrichment does not lie when a valid unrescinded contract governs the rights of the parties." (applying New Hampshire law)).  Where courts applying New Hampshire law have allowed alternative claims for breach of contract and unjust enrichment, the underlying contract's validity has been in dispute.  *See e.g.*, *Animal Hosp. of Nashua, Inc. v. Antech Diagnostics*, No. 11-CV-448-SM, 2012 WL 1801742, at *6 (D.N.H. May 17, 2012) (holding that the plaintiff could pursue a claim for unjust enrichment "as an alternative theory of liability, in case the court ultimately finds that no enforceable contract existed between the parties"); *Aftokinito Props., Inc. v. Millbrook Ventures, LLC*, No. 09-CV-415-JD, 2010 WL 3168295, at *5-6 (D.N.H. Aug. 9, 2010) (allowing a plea of unjust enrichment in the alternative where there was a dispute as to whether a valid contract existed); *cf. Moulton v. Bane*, No. 14-CV-265-JD, 2015 WL 7274061, at *8 (D.N.H. Nov. 16, 2015) ("Parties may seek restitution under alternative theories, quantum meruit and unjust enrichment, when there is no claim for breach of contract." (citing *Gen. Insulation Co. v. Eckman Constr.*, 159 N.H. 601, 611 (2010))).

It is true, as Plaintiffs note (Pls.' Br. 31), that the New Hampshire Supreme Court has stated in passing that "[u]njust enrichment may be available to contracting parties where the contract was breached, rescinded, or otherwise made invalid, or where the benefit received was outside the scope of the contract," *Clapp v. Goffstown Sch. Dist*., 159 N.H. 206, 211 (2009), thus suggesting that a plaintiff may bring an unjust enrichment claim so long as he or she alleges a breach of contract.  But, consistent with case law from other jurisdictions, the Court reads that language to suggest only that a plaintiff may plead unjust enrichment where she seeks to invalidate the contract or she breached the contract herself and is thus left without a contractual remedy.  *See Axenics*, 164 N.H. at 670-71; *see also Camden Nat'l Bank v. Greystone Select Holdings, LLC*, No. 17-CV-272-JL, 2017 WL 5146166, at *4 (D.N.H. Nov. 3, 2017) (noting that the Restatement section cited by *Clapp* cautions that restitution claims "occur at the margins, when a valuable performance has been rendered under a contract that is invalid, or subject to avoidance, or otherwise ineffective to regulate the parties' obligations").  To read the *Clapp* Court's language more broadly would swallow its own rule that a court "cannot allow recovery under a theory of unjust enrichment where there is a valid, express contract covering the subject matter at hand."  *Clapp*, 159 N.H. at 210-11.

Unlike most of the other states addressed here, however, New Hampshire does not bar a plaintiff from bringing unjust enrichment claims just because an adequate remedy at law exists.  Faced with the argument that a trial court's grant of an equitable remedy was improper because an adequate legal remedy existed, the New Hampshire Supreme Court held that a court could provide a plaintiff "with an option to choose between an equitable remedy or a legal remedy."  *Motion Motors, Inc. v. Berwick*, 150 N.H. 771, 781 (2004).  The district court cases cited by New GM for the opposite proposition, *see Mangiardi Bros. Trucking v. Dewey Envtl., LLC*, No. 12-

CV-481-JD, 2013 WL 1856338, at *3 (D.N.H. Apr. 30, 2013); *E. Elec. Corp. v. FERD Const., Inc.*, No. CIV. 05CV303JD, 2005 WL 3447957, at *3 (D.N.H. Dec. 15, 2005), rely on a New Hampshire Supreme Court case, *Exeter Realty Corp. v. Buck*, 104 N.H. 199, 201 (1962), the holding of which is ambiguous at best. In *Exeter Realty*, the New Hampshire Supreme Court stated that "equity need not intervene" where no injury would result that was not compensable in damages, suggesting not that inaction was required, but that action was not. 104 N.H. at 201. Furthermore, the *Exeter Realty* Court itself stated that "the division line between equity and law is not precise and that trial courts have considerable discretion in determining whether equity should intervene to aid litigants in the protection of their legal rights." *Id.* at 200.

### v. New Jersey

New Jersey courts do not allow "recovery under unjust enrichment . . . when a valid, unrescinded contract governs the rights of the parties." *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982) (applying New Jersey law); *see also Moser v. Milner Hotels, Inc.*, 6 N.J. 278, 280-81 (1951) ("Having pleaded an express contract, the plaintiff cannot without showing a rescission, recover on quasi contract."). While a few federal district courts have suggested that a plaintiff may plead unjust enrichment and contract claims in the alternative, *see, e.g., Palmeri v. LG Elecs. USA, Inc.*, No. CIV.A. 07-5706 (JAG), 2008 WL 2945985, at *6 (D.N.J. July 30, 2008); *S. Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370, 386 (D.N.J.), *aff'd in part*, 258 F. App'x 466 (3d Cir. 2007), the weight of authority indicates that that is the case only when the existence of a valid contract is disputed, *see, e.g., Goldsmith v. Camden Cty. Surrogate's Office*, 408 N.J. Super. 376, 385-86 (App. Div. 2009); *Winslow v. Corp. Express, Inc.*, 364 N.J. Super. 128, 143 (App. Div. 2003); *Century 21-Main St. Realty, Inc. v. St. Cecelia's Church*, No. L-4635-15, 2017 WL 3880454, at *5 (N.J. Super. Ct. App. Div. Sept. 6, 2017); *Kinney Bldg.*

*Assocs., L.L.C. v. 7-Eleven, Inc.*, No. 2:15-CV-7917-SDW-LDW, 2016 WL 2855063, at *5

(D.N.J. May 16, 2016); *Fintech Consulting v. ClearVision Optical Co.*, No. 12-CV-4956 (DMC)

(JAD), 2013 WL 1845850, at *5 (D.N.J. Apr. 30, 2013); *Galayda v. Wachovia Mortg., FSB*, No.

CIV.A. 10-1065 (FLW), 2010 WL 5392743, at *14 (D.N.J. Dec. 22, 2010); *Schweikert v. Baxter

Healthcare Corp.*, No. CIV.A. 12-5876 (FLW), 2013 WL 1966114, at *6 (D.N.J. May 10, 2013);

*Ctr. for Special Procedures v. Conn. Gen. Life Ins. Co.*, No. CIV.A. 09-6566 (MLC), 2010 WL

5068164, at *5 (D.N.J. Dec. 6, 2010).[67]  In any event, as many New Jersey appellate decisions

have held, "[r]estitution for unjust enrichment is an equitable remedy" and is thus "available only

when there is no adequate remedy at law."  *Nat'l Amusements, Inc. v. N.J. Turnpike Auth.*, 619

A.2d 262, 267 (N.J. Super. Ct. L. Div. 1992); *accord D.R. Horton Inc.-N.J. v. Dynastar Dev.,

LLC*, No. MER-L-1808-00, 2005 WL 1939778, at *18 (N.J. Super. Ct. L. Div. Aug. 10, 2005);

*Bondi v. Citigroup, Inc.*, No. BER-L-10902-04, 2005 WL 975856, at *19 (N.J. Super. Ct. L. Div.

Feb. 28, 2005).  Thus, Plaintiffs may not bring unjust enrichment claims under New Jersey long

if an adequate legal remedy exists.

### vi.    New Mexico

"New Mexico law strongly disfavors unjust enrichment claims when remedies exist

under contract law."  *Steadfast Ins. Co. v. Legacy Safety & Consulting, LLC*, No. 15- CV-00218

(WJ), 2015 WL 12803775, at *4 (D.N.M. June 25, 2015) (citing *Dydek v. Dydek*, 288 P.3d 872,

---

[67]     Citing *Power-Matics, Inc. v. Ligotti*, 191 A.2d 483, 490 (N.J. App. Div. 1963), Plaintiffs argue that "the existence of an express contract is not an outright bar to an unjust enrichment claim" under New Jersey law.  (Pls.' Br. 32).  But the question in *Power-Matics* was whether the defendant had a duty to pay for a service rendered by the plaintiff where the duty did not arise under the terms of a governing contract.  *See Power-Matics*, 79 N.J. Super. at 306; *see also U.S. Accu-Measurements, LLC v. Ruby Tuesday, Inc.*, No. CIV. 10-5011 (KM), 2014 WL 197878, at *4 (D.N.J. Jan. 14, 2014) (discussing *Power-Matics*).

883 (N.M. Ct. App. 2012); *Ontiveros Insulation Co. v. Sanchez*, 129 N.M. 200, 204 (2000); and

*Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1116-17 (10th Cir. 2005)). Courts

have thus dismissed unjust enrichment claims where valid contracts existed. *See Abraham v.*

*WPX Energy Prod., LLC*, 20 F. Supp. 3d 1244, 1276, 1284-85 (D.N.M. 2014) (dismissing an

unjust enrichment claim against a third party where the plaintiff did not plead an obstacle to

recovery under contract); *Anderson Living Tr. v. XTO Energy, Inc*., No. 11- CV-0959 (JCH),

2013 WL 12241198, at *7 (D.N.M. Mar. 28, 2013) (dismissing an unjust enrichment claim

where a valid contract covered the subject matter); *ABQ Uptown, LLC v. Davide Enters*., *LLC*,

2015 WL 8364799, at *31 (D.N.M. Oct. 19, 2015) ("Indeed, where a contractual relationship

exists with applicable contractual provisions, unjust enrichment claims — which arise in equity

— must be dismissed."). Where the New Mexico Supreme Court has allowed an unjust

enrichment claim to go forward despite a contract, the contract was "concededly unenforceable."

*Armijo v. FedEx Ground Package Sys., Inc.*, 285 F. Supp. 3d 1209, 1217-18 (D.N.M. 2018)

(citing *Danley v. City of Alamogordo*, 91 N.M. 520, (1978); and *Platco Corp. v. Shaw*, 78 N.M.

36 (1967)).

Plaintiffs argue that New Mexico recognizes a "fraud" exception that allows them to

pursue overlapping unjust enrichment and contract claims. (*See* Pls.' Br. 33-34 (quoting *Arena*

*Res., Inc. v. OBO, Inc*., 148 N.M. 483, 487 (Ct. App. 2010) ("A court of equity . . . is bound by a

contract as the parties have made it and has no authority to substitute for it another and different

agreement, and should afford relief only where obviously there is fraud, real hardship,

oppression, mistake, unconscionable results, and the other grounds of righteousness, justice and

morality.")). But where a plaintiff alleges a fraudulently induced contract, the remedy is not

unjust enrichment; it is rescission or reformation of the contract — a remedy that Plaintiffs do

not pursue here.  *See Arena Res., Inc.*, 148 N.M. at 487 (holding that the equitable exception allows the court to "*substitute* for [the contract] another and different agreement" (emphasis added)); *Winrock Inn Co. v. Prudential Ins. Co. of Am.*, 122 N.M. 562, 570 (1996) ("In the absence of fraud, . . . New Mexico courts do not have discretion either to *relieve* parties . . . of their contractual obligations or to interfere with contractual rights." (emphasis added)); *W. Commerce Bank v. Gillespie*, 108 N.M. 535, 538 (1989) ("This is a simple contract issue, not one in which a settlement agreement is to be *set aside* on the basis of misrepresentation, fraud, undue influence, coercion or mutual mistake." (emphasis added)).

In any event, unjust enrichment is an equitable remedy, *see, e.g.*, *Ontiveros Insulation Co.*, 129 N.M. at, 203-04, and the New Mexico Supreme Court has held that equitable relief should be denied where there is an adequate remedy at law, *see, e.g.*, *Sims v. Sims*, 122 N.M. 618, 624 (1996) ("[E]quity will not act if there is a complete and adequate remedy at law." (internal quotation marks omitted)); *General Tel. Co. of Sw. v. State Tax Comm'n*, 69 N.M. 403, 408 (1962) ("The general equity jurisdiction of the trial court is not available, although properly pleaded, because appellee in fact had an adequate remedy at law.").  Accordingly, New Mexico Plaintiffs may not bring claims for unjust enrichment where either a valid contract or adequate legal remedy exists.

### vii.    Oregon

The Oregon Supreme Court has held that a plaintiff "may plead alternatively on an express contract and in *quantum meruit*," but that the unjust enrichment claim must be stricken once the parties concede the existence of a valid and enforceable contract.  *Kashmir Corp. v. Patterson*, 289 Or. 589, 592-94 (1980); *see also Walters v. Vitamin Shoppe Indus., Inc.*, 701 F. App'x 667, 669 (9th Cir. 2017) ("Under Oregon law, once a court determines that a valid

contract exists, an unjust enrichment claim must fail."); *Prestige Homes Real Estate Co. v. Hanson*, 151 Or. App. 756, 762 (1997) (affirming dismissal of plaintiff's *quantum meruit* claim where a valid contract covered defendant's obligation). As they did for New Mexico, however, Plaintiffs argue that there is a fraud exception to that rule under Oregon law. (Pls.' Br. 40). In support of that argument, Plaintiffs cite *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115 (2017), a case in which the owner of a foster home for the elderly sought restitution based on an allegation that the defendant had acquired a lower Medicaid rate through fraud and should have been charged the higher rate applied to private-pay patients. But the defendant in *Larisa's Home Care* did not argue before the Oregon Supreme Court that the plaintiff could not recover in unjust enrichment because of a valid contract, and the Court therefore never addressed the issue.[68] In light of Oregon case law holding that a plaintiff may not maintain an unjust enrichment claim where there is a valid contract and that the remedy for fraudulent inducement of a contract is rescission of the contract, *see Generaux v. Dobyns*, 205 Or. App. 183, 194 (2006) ("[F]raud[] is a well-recognized equitable ground for rescission of a contract or other instrument."), the Court declines to read *Larisa's Home Care* to hold that a plaintiff may plead both contract and unjust enrichment claims as long as fraud is alleged. In any event, Oregon courts hold that "unjust enrichment is an equitable doctrine," *see Wilson v. Gutierrez*, 261 Or. App. 410, 411 (2014); *accord Evans Prods. Co. v. Jorgensen*, 245 Or. 362, 372 (1966), and that

---

[68]     Instead, the defendant "briefly reassert[ed]" an argument that the plaintiff was bound by its contract to accept the contracted rate. *Larisa's Home Care*, 362 Or. at 142. The Oregon Supreme Court declined to reach that argument and directed the Court of Appeals to consider it on remand, but noted that the defendant failed to explain why the plaintiff would be so bound "in the context of a recipient's fraudulent receipt of the Medicaid rate." *Id.* Put differently, the Court suggested that the contractual provision might not be valid in light of the fraud.

"[e]quitable relief does not lie if there is an adequate remedy at law," *Alsea Veneer, Inc. v. State of Oregon*, 318 Or. 33, 43 (1993) (citation omitted); *accord Johnson v. Steen*, 281 Or. 361, 371 (1978).  Moreover, as in other states discussed above, a plaintiff need not be guaranteed success in that remedy.  *See Alsea Veneer, Inc.*, 281 Or. at 43 (noting that whether equitable relief was available turned on whether a "remedy at law . . . could . . . , as a practical matter, recompense plaintiffs for their losses.").

### viii.    Rhode Island

New GM effectively concedes that an adequate remedy at law does not necessarily preclude an unjust enrichment claim under Rhode Island law, (New GM Br. 51 n.44), but argues that Plaintiffs may not plead unjust enrichment where a valid contract exists.  That question is a closer one for Rhode Island than for many of the other states at issue here, if only because case law points in both directions.  *Compare Cappalli v. BJ's Wholesale Club, Inc.*, No. CV 10-407S, 2011 WL 2606912, at *3 (D.R.I. June 30, 2011) ("[I]t is permissible under Rhode Island law to plead an equitable cause of action in the alternative where an express contract exists."), *with Mehan v. Gershkoff*, 102 R.I. 404, 407 (R.I. 1967) ("It is well settled that where there is an express contract between the parties referring to a subject matter, there can be no implied contract arising by implication of law governing that same subject.").  On balance, however, the Court concludes that the weight of authority supports New GM's argument that an unjust enrichment claim can be pleaded in the alternative only where the existence of an express contract is in doubt.  *See, e.g.*, *Pickett v. Ditech Fin., LLC*, No. CV 17-467 (JJM), 2018 WL 3688486, at *4 (D.R.I. Aug. 3, 2018); *Rocha v. Wells Fargo Bank, N.A.*, No. CV 16-600 (WES), 2018 WL 1934191, at *5 (D.R.I. Apr. 24, 2018); *TG Plastics Trading Co. v. Toray Plastics (Am.), Inc.*, No. CV 09-336M, 2012 WL 12964795, at *3 (D.R.I. Mar. 21, 2012); *Café La*

*France, Inc. v. Schneider Sec., Inc.*, 281 F. Supp. 2d 361, 375 (D.R.I. 2003); *Cazabat v. Metro. Prop. & Cas. Ins. Co.*, No. C.A. KC99-0544, 2000 WL 1910089, at *7 (R.I. Super. Ct. Apr. 24, 2000). Ultimately, the Court is unpersuaded by those cases suggesting that a plaintiff may plead overlapping claims of unjust enrichment and contract, either because the courts did not explicitly consider whether the two claims could be brought together, *see Cappalli v. BJ's Wholesale Club, Inc.*, 904 F. Supp. 2d 184, 198 (D.R.I. 2012); *Hasbro, Inc. v. Mikohn Gaming Corp.*, 491 F. Supp. 2d 256, 263-64 (D.R.I. 2007); *Process Eng'rs & Constructors, Inc v. DiGregorio, Inc.*, 93 A.3d 1047 (R.I. 2014); *Richmond Square Capital Corp. v. Ins. House*, 744 A.2d 401, 402 (R.I. 1999) (mem.), or because the existence or validity of an express contract was actually in doubt, *see K & K Constr. Inc. v. City of Warwick*, 693 A.2d 1038, 1039 (R.I. 1997) (mem.).

### ix. South Carolina

As in Rhode Island, courts in South Carolina have expressed conflicting views on whether a plaintiff may plead both unjust enrichment and contract claims. *Compare, e.g.*, *Swanson v. Stratos*, 350 S.C. 116, 122 (Ct. App. 2002) ("If the tasks the plaintiff is seeking compensation for under a *quantum meruit* theory are encompassed within the terms of an express contract which has not been abandoned or rescinded, the plaintiff may not recover under *quantum meruit*."), *with Ellsworth v. Infor Glob. Sols. (Mich.), Inc.*, No. CA 6:12-2867 (HMH), 2012 WL 6641648, at *6 (D.S.C. Dec. 20, 2012) ("One may assert a claim of quantum meruit as an alternative remedy even though an express contract is found to exist."). Once again, however, the Court concludes that the weight of authority supports the conclusion that alternative pleading is permitted only where it is uncertain whether a valid and enforceable contact exists. *See, e.g.*, *Franke Assocs. by Simmons v. Russell*, 295 S.C. 327, 332 (1988); *Weimer v. Jones*, 364 S.C. 78, 81 (Ct. App. 2005); *see also, e.g.*, *Eldeco, Inc. v. LPS Constr. Co.*, No. C.A. 3:08-2295 (CMC),

2009 WL 4586003, at *5 (D.S.C. Dec. 1, 2009) (finding that a party could not maintain a quasi-

contractual claim where the existence of an express contract was undisputed).  Plaintiffs cite

*Earthscapes Unlimited, Inc. v. Ulbrich*, 390 S.C. 609 (2010), and its progeny to argue that South

Carolina allows a plaintiff to plead breach of contract and *quantum meruit* in the alternative even

where an express contract exists.  (*See* Pls.' Br. 43-44).  In *Earthscapes*, however, the existence

of an express contract was in fact in dispute.  While the lower court found that there was a valid

contract between the parties and "chose the theory of *quantum meruit* as an alternate remedy,"

the Supreme Court itself did not determine whether an express contract existed.  *Earthscapes*,

390 S.C. at 617 n.4; *see id.* at 617 ("Because we affirm the circuit court on the quantum meruit

claim, it is not necessary to determine whether there was an express contract.").  In this Court's

judgment, therefore, the courts that have cited *Earthscapes* for the proposition that a quasi-

contractual claim can always be pleaded alongside a contract claim read too much into its

holding.  *See e.g.*, *Ellsworth*, 2012 WL 6641648, at *6; *JASDIP Props. SC, LLC v. Estate of

Richardson*, 395 S.C. 633, 639 (Ct. App. 2011).

    In any event, South Carolina law provides both that "[u]njust enrichment is an equitable

doctrine," *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 383 S.C. 115, 123 (2009), and that

"equity will not intervene" where a plaintiff "possesses an adequate remedy at law," *Van

Robinson Ins. Agency, Inc. v. Harleysville Mut. Ins. Co.*, 272 S.C. 127, 128-29 (1978); *see also,

e.g.*, *EllisDon Constr., Inc. v. Clemson Univ.*, 391 S.C. 552, 555 (2011) ("[E]quity is only

available when a party is without an adequate remedy at law."); *Barrett v. Miller*, 283 S.C. 262,

264 (Ct. App. 1984) (noting that unjust enrichment is an equitable doctrine and that "[w]here a

plaintiff has an adequate remedy at law, equitable relief is not normally in order").  Moreover, to

be adequate, a legal remedy need not guarantee success.  *See EllisDon Constr., Inc.*, 391 S.C. at

555 ("A party failing to fulfill the requirements of its legal remedy cannot later come to the courts complaining of hardship, seeking an equitable remedy.").

### x.   West Virginia

In the final state in dispute, West Virginia, "an implied contract and an express one covering the identical subject-matter cannot exist at the same time.  If the latter exists, the former is precluded." *Marshall v. Elmo Greer & Sons, Inc.*, 193 W. Va. 427, 430 (1995) (alterations omitted).  Thus, "when there is a valid contract governing a transaction, a party may not sue for unjust enrichment related to that transaction." *Smith v. 21st Century Nat. Fuels, LLC*, No. CV 3:14-12507, 2016 WL 1465431, at *5 n7 (S.D. W. Va. Apr. 14, 2016); *see, e.g.*, *Ash v. Allstate Ins. Co.*, No. 12-1533, 2013 WL 5676774, at *5 (W. Va. Oct. 18, 2013) ("From the face of petitioner's complaint, it is clear that his unjust enrichment claim arises from an express contract . . . .  Therefore, we see no error in the circuit court's conclusion that petitioner's unjust enrichment claim must be dismissed.").  Plaintiffs present, and this Court has found, no case law suggesting that a plaintiff may maintain a claim for unjust enrichment where the existence of an express contract is undisputed.  At most, Plaintiffs point to a case in which the West Virginia Supreme Court held that a claim for unjust enrichment must be based on fraud, suggesting the existence of a "fraud exception" to the rule.  (Pls.' Br. 50 (citing *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 231 W. Va. 577, 587-88 (2013)).  But *Gaddy* is inapposite as it involved a dispute over real property and did not address whether an unjust enrichment claim could be maintained in the face of an express contract.  In any event, in West Virginia, unjust enrichment claims are "equitable in nature," *Absure, Inc. v. Huffman*, 213 W. Va. 651, 655 (2003); *accord Dunn v. Rockwell*, 225 W. Va. 43, 54 (2009), and the West Virginia Supreme Court has held that a court of equity is without jurisdiction to entertain a suit where there is a

"plain, adequate and complete" remedy at law, whether or not the plaintiff is guaranteed success, *Mountain State Coll. v. Holsinger*, 230 W. Va. 678, 687 (2013).

## CONCLUSION

In short, for all jurisdictions in dispute, the Court finds that manifestation is not required to bring statutory consumer protection, common-law fraud, and implied warranty claims. Second, for all but six of the jurisdictions in dispute, the Court finds that Plaintiffs may recover lost-time damages where "lost time" is understood as lost earnings or its equivalent, but not where "lost time" is understood as "lost personal time." In Colorado, New York, Ohio, Utah, Virginia, however, Plaintiffs may also recover lost personal time under the states' consumer protection statutes, and in Oklahoma, Plaintiffs may recover lost personal time for all claims. Finally, in every one of the ten still-disputed jurisdictions other than Connecticut, a plaintiff may plead unjust enrichment in the alternative only where the validity or enforceability of a contract is in question, and in seven out of the ten jurisdictions (all but Connecticut, New Hampshire, and Rhode Island), a plaintiff may not maintain an unjust enrichment claim if he or she has an adequate remedy at law.

Attached as Exhibit A is a chart summarizing the Court's conclusions of law for all jurisdictions. The parties are directed to meet and confer and, **within thirty days of the date of this Opinion and Order**, shall jointly submit a stipulation and proposed order applying the Court's conclusions to the Plaintiffs and claims in the 5ACC.

SO ORDERED.

Dated: September 12, 2018
      New York, New York

_____
JESSE M. FURMAN
United States District Judge

Exhibit A

# Summary Chart of the Court's Conclusions[1]

| Jurisdiction | Manifest Defect for Consumer Protection | Manifest Defect for Fraudulent Concealment | Manifest Defect for Implied Warranty | Unjust Enrichment | Lost Time |
|---|---|---|---|---|---|
| **Alabama** | N/A[2] | N/A | N/A | N/A | **LE Available; LPT Not Available**[3] |
| **Alaska** | **Not Required** | **Not Required** | **Not Required** | Agreed Is Not Available | **LE Available; LPT Not Available** |
| **Arizona** | **Not Required** | **Not Required** | N/A | **Not Available** | **LE Available; LPT Not Available** |
| **Arkansas** | Agreed Is Required | Agreed Is Required | Agreed Is Required | Agreed Is Not Available | **LE Available; LPT Not Available** |
| **Colorado** | **Not Required** | **Not Required** | **Not Required** | Agreed Is Not Available | **LE Available; LPT available for statutory consumer protection** |
| **Connecticut** | **Not Required** | **Not Required** | N/A | **Available** | **LE Available; LPT Not Available** |
| **Delaware** | Agreed Is Required | Agreed Is Required | **Not Required** | Agreed Is Not Available | **LE Available; LPT Not Available** |
| **District of Columbia** | N/A | N/A | N/A | N/A | **LE Available; LPT Not Available** |
| **Florida** | N/A | N/A | N/A | N/A | **LE Available; LPT Not Available** |
| **Georgia** | Agreed Is Required | **Not Required** | N/A | Agreed Is Not Available | **LE Available; LPT Not Available** |
| **Hawaii** | Agreed Is Not Required | Agreed Is Not Required | Agreed Is Not Required | Agreed Is Not Available | **LE Available; LPT Not Available** |

---

[1]      Bold indicates an issue decided by the Court in this Opinion and Order.

[2]      "N/A" means "Not Applicable" because the issue was included in prior motion-to-dismiss briefing or the plaintiffs do not bring the claim for the jurisdiction in question.

[3]      "LE" means "Lost Time as Lost Earnings (or the equivalent)"; "LPT" means "Lost Personal Time."

| Jurisdiction | Manifest Defect for Consumer Protection | Manifest Defect for Fraudulent Concealment | Manifest Defect for Implied Warranty | Unjust Enrichment | Lost Time |
|---|---|---|---|---|---|
| **Idaho** | Agreed Is Required | **Not Required** | N/A | Agreed Is Not Available | **LE Available; LPT Not Available** |
| **Illinois** | N/A | N/A | N/A | N/A | **LE Available; LPT Not Available** |
| **Indiana** | Agreed Is Required | **Not Required** | **Not Required** | Agreed Is Not Available | **LE Available; LPT Not Available** |
| **Iowa** | **Not Required** | **Not Required** | N/A | Agreed Is Not Available | **LE Available; LPT Not Available** |
| **Kansas** | **Not Required** | **Not Required** | **Not Required** | Agreed Is Not Available | **LE Available; LPT Not Available** |
| **Kentucky** | **Not Required** | Agreed Is Required | N/A | Agreed Is Not Available | **LE Available; LPT Not Available** |
| **Maine** | **Not Required** | Agreed Is Not Required | **Not Required** | Agreed Is Not Available | **LE Available; LPT Not Available** |
| **Maryland** | N/A | N/A | N/A | N/A | **LE Available; LPT Not Available** |
| **Massachusetts** | N/A | N/A | N/A | N/A | **LE Available; LPT Not Available** |
| **Michigan** | N/A | N/A | N/A | N/A | **LE Available; LPT Not Available** |
| **Minnesota** | Agreed Is Required | **Not Required** | Agreed Is Required | Agreed Is Not Available | **LE Available; LPT Not Available** |
| **Mississippi** | **Not Required** | **Not Required** | **Not Required** | **Not Available** | **LE Available; LPT Not Available** |
| **Montana** | **Not Required** | **Not Required** | **Not Required** | Agreed Is Not Available | **LE Available; LPT Not Available** |
| **Nebraska** | **Not Required** | **Not Required** | **Not Required** | Agreed Is Not Available | **LE Available; LPT Not Available** |
| **Nevada** | **Not Required** | **Not Required** | **Not Required** | Agreed Is Not Available | **LE Available; LPT Not Available** |
| **New Hampshire** | Agreed Is Required | Agreed Is Required | Agreed Is Required | **Not Available if valid contract;** | **LE Available; LPT Not Available** |

| Jurisdiction | Manifest Defect for Consumer Protection | Manifest Defect for Fraudulent Concealment | Manifest Defect for Implied Warranty | Unjust Enrichment | Lost Time |
|---|---|---|---|---|---|
| | | | | Available otherwise | |
| New Jersey | Not Required | Not Required | Agreed Is Required | Not Available | LE Available; LPT Not Available |
| New Mexico | Not Required | Not Required | Not Required | Not Available | LE Available; LPT Not Available |
| New York | N/A | N/A | N/A | N/A | LE Available; LPT available for statutory consumer protection |
| North Carolina | Agreed Is Required | Agreed Is Required | Agreed Is Required | Agreed Is Not Available | LE Available; LPT Not Available |
| North Dakota | Agreed Is Required | Agreed Is Required | Agreed Is Required | Agreed Is Not Available | LE Available; LPT Not Available |
| Ohio | Not Required | Agreed Is Required | Not Required | Agreed Is Not Available | LE Available; LPT available for statutory consumer protection |
| Oklahoma | N/A | N/A | N/A | N/A | LE Available; LPT available in all areas of law |
| Oregon | Not Required | Not Required | N/A | Not Available | LE Available; LPT Not Available |
| Pennsylvania | N/A | N/A | N/A | N/A | LE Available; LPT Not Available |
| Rhode Island | Not Required | Not Required | Not Required | Not Available if valid contract; Available otherwise | LE Available; LPT Not Available |
| South Carolina | Agreed Is Required | Agreed Is Required | Agreed Is Required | Not Available | LE Available; LPT Not Available |
| South Dakota | Not Required | Not Required | Not Required | Agreed Is Not Available | LE Available; LPT Not Available |
| Tennessee | Not Required | Not Required | N/A | Agreed Is Not Available | LE Available; LPT Not Available |

| Jurisdiction | Manifest Defect for Consumer Protection | Manifest Defect for Fraudulent Concealment | Manifest Defect for Implied Warranty | Unjust Enrichment | Lost Time |
|---|---|---|---|---|---|
| **Utah** | Agreed Is Required | Agreed Is Required | Agreed Is Required | Agreed Is Not Available | **LE Available; LPT available for statutory consumer protection** |
| **Vermont** | Agreed Is Not Required | **Not Required** | N/A | Agreed Is Not Available | **LE Available; LPT Not Available** |
| **Virginia** | N/A | N/A | N/A | N/A | **LE Available; LPT available for statutory consumer protection** |
| **Washington** | **Not Required** | **Not Required** | N/A | Agreed Is Not Available | **LE Available; LPT Not Available** |
| **West Virginia** | **Not Required** | **Not Required** | **Not Required** | **Not Available** | **LE Available; LPT Not Available** |
| **Wisconsin** | N/A | N/A | N/A | N/A | **LE Available; LPT Not Available** |
| **Wyoming** | Agreed Is Required | Agreed Is Required | **Not Required** | Agreed Is Not Available | **LE Available; LPT Not Available** |